# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SANTA ANA

---

**United States of America**
**Plaintiff**
v.
**Yan Sui**
**Defendant**

---

FILED

CLERK, U.S. DISTRICT COURT

SEP 27, 2024

CENTRAL DISTRICT OF CALIFORNIA

BY ____ rrp ____ DEPUTY

DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

---

**Yan Sui**
**Cross-Plaintiff**
v
**United States of America**
**Cross-Defendants, does 1-10**

---

**Case No.: 8:24-cr-0048-JAK**
**2:24-cr-0498-JAK**

---

**Assigned to Hon. District Judge**

**John A. Kronstadt**

---

## DEFENDANT'S EXHIBIT LISTS

---

YAN SUI
27694 Emerald
Mission Viejo
CA92691
Defendant/Cross-Plaintiff
Tel: 949-903-6378
Email:
dancalmlaoxu951@gmail.com

**DEFENDANT'S EXHIBIT LIST**

**Case Name:  United States of America v. Yan Sui**

**Yan Sui v. United States of America, does 1-10**

**Case No.: 8:24-cr-0048-JAK; 2:24-cr-0498-JAK**

| No. of Exhibit | Description | Stip to Authen | Stip to Admiss | Date Identified | Date admitted |
|---|---|---|---|---|---|
| 1 | Claim Registry in Chapter 7 | | | | |
| 2 | Sui Objection to HOA POC of June 27, 2012 | | | | |
| 3 | Sui Objection to Scottsdale POC of June 11, 2012 | | | | |
| 4 | Hearing Transcript before Bankr. Judge Robert Kwan Nov. 1, 2011 in defendant Chapter 7 case: 8:11-bk-20448-CB | | | | |
| 5 | HOA's Oppositions to Yan Sui's Motion to Dismiss Chapter 7 Bankruptcy Case; Declaration of its counsel - James C. Harkins III in Support Thereof of Oct. 26, 2011 | | | | |

| No. of Exhibit | Description | Stip to Authen | Stip to Admiss | Date Identify | Date Admitted |
|---|---|---|---|---|---|
| 6 | Trustee's Opposition to Yan Sui Motion to Dismiss Chapter 7 of Oct. 17, 2011 | | | | |
| 7 | Consolidated Opposition of Trustee and Goodrich to Yan Sui Motion to Dismiss Chapter 7 of March 28, 2012 | | | | |
| 8 | Consolidated Opposition of Trustee and Goodrich to Yan Sui Motion to Dismiss Chapter 7 of Aug. 7, 2012 | | | | |
| 9 | Hearing Transcript before Ninth Circuit BAP in CC-12-1231/1366/1367 of Feb. 20, 2013 | | | | |
| 10 | Hearing Transcript before Ninth Circuit BAP in CC-13-1572 of Sept. 18, 2014 | | | | |
| 11 | Memorandum of Ninth Cir. BAP in CC-13-1572 of Nov. 10, 2014 | | | | |
| 12 | Email of June 30, 13 between Yan Sui and Trustee | | | | |
| 13 | Emails of Dec. 3rd & 4th of 2014 | | | | |

| No. of Exhibit | Description | Stip to Authen | Stip to Admiss | Date Identify | Date Admitted |
|---|---|---|---|---|---|
| 14 | Yan Sui's email to Marshals urging not to involve in the eviction of Dec. 26, 2014 | | | | |
| 15 | Yan Sui's email to Trustee et al to stay the eviction until their claims were determined of Dec. 20, 2024 | | | | |
| 16 | Peiyu Yang's answer to Trustee Adversary of 8:11-ap-1356-CB of Sept. 23, 2011 | | | | |
| 17 | Peiyu Yang's Opposition to Trustee Motion for Summary Adjudication of Feb. 19, 2013 | | | | |
| 18 | 8:15-cv-0059-JAK(AJW) (In Chambers) Order re: Motion for Court's Clarification of May 18, 2015 | | | | |
| 19 | 8:18-cv-2291-MWF Order Remanding of March 5, 2020 | | | | |
| 20 | Bankruptcy Court's Tentative Denying Trustee's Motion for Leave to sue of Jan. 7, 2022 | | | | |
| 21 | Bankruptcy Court's Tentative Denying Yan Sui's Motion for Relief of Jan. 7, 2022 | | | | |

| No. of Exhibit | Description | Stip to Authen | Stip to Admiss | Date Identify | Date Admitted |
|---|---|---|---|---|---|
| 22 | Bankruptcy Court's Tentative Denying Trustee's Motion for Setoff of Aug. 19, 2020 | | | | |
| 23 | Yan Sui's Motion for Order with Bankruptcy Court of Sept. 22, 2020 | | | | |
| 24 | Omnibus Opposition of house Purchaser Paul M. Krusey of Oct. 5, 2020 | | | | |
| 25 | Yan Sui's Reply to Krusey Opposition of Oct. 8, 2020 | | | | |
| 26 | Trustee's Judicial Admission of May 2, 2019 | | | | |
| 27 | United States Bankruptcy Court Hearing Transcript of Jan. 10, 2022 | | | | |
| 28 | United States Bankruptcy Court Order Continuing Sanction on Wells Fargo Bank, N.A. of Feb. 2, 2022 | | | | |
| 29 | Wells Fargo Bank, N.A's Notice of Motion and Motion for Relief from Automatic Stay under 11 11 U.S.C. § 362 (with Supporting Declarations) Regarding Real Property of Oct. 14, 2011 | | | | |

| No. of Exhibit | Description | Stip to Authen | Stip to Admiss | Date Identify | Date Admitted |
|---|---|---|---|---|---|
| 30 | Proceedings: Status Conference re Order to Show Cause re Contempt of June 6, 2024 | | | | |
| 31 | Government's Status Report of June 17, 2024 | | | | |
| 32 | Status Conference re: Order to Show Cause re: Contempt of June 20, 2024 | | | | |
| 33 | Order re Status Report of Aug. 19, 2024 | | | | |
| 34 | Yan Sui's email to DHS Investigation Maghan Madden of Aug. 14, 2024 | | | | |
| 35 | Yan Sui's email to DHS Investigation Maghan Madden of Aug. 28, 2024 | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

## PROOF OF SERVICE

## Court Case No. 8:24-cr-0048-JAK

I am a resident in the County of Orange, State of California. I am over the age of 18 and not a party of the action. My residence address is: 27694 Emerald, Mission Viejo, CA92691.

The following document described as "**DEFENDANT'S EXHIBIT LISTS ''** will be served or was served on the plaintiff in this action through email address of: dancalmlaoxu951@ gmail.com.

On 9/1/2024, I served the following person (s) and/or entities at their known email addresses as listed in the Service List. Transmission time is before 11:58 a.m. of today's date:

1. Mathew Coe-Odess, Assistant Attorney of United States
   312 N. Spring Street, Suite 1200,
   Los Angeles, CA90012;
   Tel: 213-894-2400;
   email address: matt.coe@usdoj.gov

2. Meghan Madden, Special Agent
   222 N. PCH, Suite 400
   El Segundo, CA90249
   Tel: 562-225-1782 (cel)
   Email: Meghan A. Madden@hsi.dhs.gov

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 1st  day of Sept. 2024, in Mission Viejo, California.

By: / s /   Cindy Sui

_____

CINDY SUI

5

Exh. List 1

CM/ECF - U.S. Bankruptcy Court (v5.1 - LIVE)                                    Page 1 of 4

# Central District Of California
# Claims Register

8:11-bk-20448-CB Yan Sui **Converted** 04/20/2012

| | |
|---|---|
| **Judge:** Catherine E. Bauer | **Chapter:** 7 |
| **Office:** Santa Ana | **Last Date to file claims:** |
| **Trustee:** Richard A Marshack (TR) | **Last Date to file (Govt):** |

| *Creditor:* (31397624)<br>Quantum3 Group LLC as agent for<br>Capio Partners LLC<br>PO Box 788<br>Kirkland, WA 98083-0788 | **Claim No: 1**<br>*Original Filed*<br>*Date:* 02/25/2012<br>*Original Entered*<br>*Date:* 02/25/2012 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Dhar Sandhu<br>*Modified:* |
|---|---|---|

| Amount | claimed: | $205.80 |
|---|---|---|
| Secured | claimed: | $0.00 |
| Priority | claimed: | $0.00 |

*History:*

| Details | 1-1 | 02/25/2012 | Claim #1 filed by Quantum3 Group LLC as agent for, Amount claimed: $205.80 (Sandhu, Dhar ) |
|---|---|---|---|

*Description:* (1-1) Medical Debt

*Remarks:*

| *Creditor:* (31413599)<br>Goodrich Law Corporation<br>**(ADMINISTRATIVE)**<br>c/o David M. Goodrich<br>870 Roosevelt Ave.<br>Irvine, CA 92620 | **Claim No: 2**<br>*Original Filed*<br>*Date:* 02/28/2012<br>*Original Entered*<br>*Date:* 02/28/2012 | *Status:* Allow 116<br>*Filed by:* CR<br>*Entered by:* David M Goodrich<br>*Modified:* |
|---|---|---|

| Admin | claimed: | $14650.20 |
|---|---|---|

*History:*

| Details | 2-1 | 02/28/2012 | Claim #2 filed by Goodrich Law Corporation, Admin claimed: $14650.20 (Goodrich, David ) |
|---|---|---|---|
| | 92 | 02/28/2012 | Motion to Allow Claim 2 *as an Administrative Claim* Filed by Creditor Goodrich Law Corporation (Goodrich, David) |
| | 116 | 04/20/2012 | Order Granting Motion Allowing Administrative Priority Claim of Goodrich Law Corporation. (Related Doc # 92) Signed on 4/20/2012. (I, deputy clerk who is making this entry, certify that service on all parties under Section II was completed, Mccall, Audrey) Status: Allow |

*Description:* (2-1) Administrative claim for legal services rendered to Chapter 7 Trustee

*Remarks:*

| *Creditor:* (31469793)<br>Richard A. Marshack<br>**(ADMINISTRATIVE)**<br>Chapter 7 Trustee<br>870 Roosevelt Ave. | **Claim No: 3**<br>*Original Filed*<br>*Date:* 03/05/2012<br>*Original Entered*<br>*Date:* 03/05/2012 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Richard A Marshack (TR)<br>*Modified:* |
|---|---|---|

CM/ECF - U.S. Bankruptcy Court (v5.1 - LIVE)                                    Page 2 of 4

| Irvine, CA 92620 | Last Amendment Filed: 03/06/2012 Last Amendment Entered: 03/06/2012 | |
|---|---|---|

| Admin | claimed: | $5954.08 | |
|---|---|---|---|

**History:**

| Details | 3-1 | 03/05/2012 | Claim #3 filed by Richard A. Marshack, Admin claimed: $5846.08 (Marshack (TR), Richard ) |
|---|---|---|---|
| Details | 3-2 | 03/06/2012 | Amended Claim #3 filed by Richard A. Marshack, Admin claimed: $5954.08 (Marshack (TR), Richard ) |
| | 96 | 03/06/2012 | Motion to Allow Claim 3 *as an Administrative Claim; Memorandum of Points and Authorities; Declaration of Richard A. Marshack; with Proof of Service* Filed by Trustee Richard A Marshack (TR) (Marshack (TR), Richard) |

Description: (3-1) Former Chapter 7 Trustee Fees and Expenses
(3-2) Amended Claim

Remarks:

| Creditor:    (31520553) Wells Fargo Home Mortgage, A Division of Wells Far Attn Bankruptcy MAC #D3347-014 3476 Stateview Blvd. Fort Mill SC 29715 | Claim No: 4 Original Filed Date: 03/12/2012 Original Entered Date: 03/12/2012 | Status: Filed by: CR Entered by: Marisol A Nagata Modified: |
|---|---|---|

| Amount | claimed: | $118093.23 | |
|---|---|---|---|
| Secured | claimed: | $118093.23 | |

**History:**

| Details | 4-1 | 03/12/2012 | Claim #4 filed by Wells Fargo Home Mortgage, A Division of Wells Far, Amount claimed: $118093.23 (Nagata, Marisol ) |
|---|---|---|---|

Description: (4-1) Home Mortgage Loan

Remarks: (4-1) Arrears $0.00

| Creditor:    (32084450) 2176 Pacific Homeowners Association; Stephen Price; Michelle Price James C Harkins IV Cane Walker & Harkins 17821 E 17th Street Suite 140 Tustin CA 92780 | Claim No: 5 Original Filed Date: 06/08/2012 Original Entered Date: 06/08/2012 | Status: Filed by: CR Entered by: Anabel Pineda Modified: |
|---|---|---|

| Amount | claimed: | $17305.00 | |
|---|---|---|---|

**History:**

| Details | 5-1 | 06/08/2012 | Claim #5 filed by 2176 Pacific Homeowners Association;, Amount claimed: $17305.00 (Pineda, Anabel ) |
|---|---|---|---|
| | 133 | 06/27/2012 | Objection to Claim #5 by Claimant Pacific Homeowners Association in the amount of $ $17,305.00 with Proof of Service Filed by Debtor Yan Sui . (Lyons, Maeve) |

Description: (5-1) 0002

Remarks:

| Irvine, CA 92620 | Last Amendment Filed: 03/06/2012 Last Amendment Entered: 03/06/2012 | |

| Admin | claimed: | $5954.08 | |

**History:**

| Details | 3-1 | 03/05/2012 | Claim #3 filed by Richard A. Marshack, Admin claimed: $5846.08 (Marshack (TR), Richard ) |
| Details | 3-2 | 03/06/2012 | Amended Claim #3 filed by Richard A. Marshack, Admin claimed: $5954.08 (Marshack (TR), Richard ) |
| | 96 | 03/06/2012 | Motion to Allow Claim 3 *as an Administrative Claim; Memorandum of Points and Authorities; Declaration of Richard A. Marshack; with Proof of Service* Filed by Trustee Richard A Marshack (TR) (Marshack (TR), Richard) |

Description: (3-1) Former Chapter 7 Trustee Fees and Expenses
(3-2) Amended Claim

Remarks:

---

| Creditor:        (31520553) Wells Fargo Home Mortgage, A Division of Wells Far Attn Bankruptcy MAC #D3347-014 3476 Stateview Blvd. Fort Mill SC 29715 | Claim No: 4 Original Filed Date: 03/12/2012 Original Entered Date: 03/12/2012 | Status: Filed by: CR Entered by: Marisol A Nagata Modified: |

| Amount | claimed: | $118093.23 | |
| Secured | claimed: | $118093.23 | |

**History:**

| Details | 4-1 | 03/12/2012 | Claim #4 filed by Wells Fargo Home Mortgage, A Division of Wells Far, Amount claimed: $118093.23 (Nagata, Marisol ) |

Description: (4-1) Home Mortgage Loan

Remarks: (4-1) Arrears $0.00

---

| Creditor:        (32084450) 2176 Pacific Homeowners Association; Stephen Price; Michelle Price James C Harkins IV Cane Walker & Harkins 17821 E 17th Street Suite 140 Tustin CA 92780 | Claim No: 5 Original Filed Date: 06/08/2012 Original Entered Date: 06/08/2012 | Status: Filed by: CR Entered by: Anabel Pineda Modified: |

| Amount | claimed: | $17305.00 | |

**History:**

| Details | 5-1 | 06/08/2012 | Claim #5 filed by 2176 Pacific Homeowners Association;, Amount claimed: $17305.00 (Pineda, Anabel ) |
| | 133 | 06/27/2012 | Objection to Claim #5 by Claimant Pacific Homeowners Association in the amount of $ $17,305.00 with Proof of Service Filed by Debtor Yan Sui . (Lyons, Maeve) |

Description: (5-1) 0002

Remarks:

| Creditor:    (32085224)<br>Scottsdale Insurance Company<br>Marjorie Lindenbaum<br>PO Box 4120<br>Scottsdale, AZ 85261 | Claim No: 6<br>Original Filed<br>Date: 06/08/2012<br>Original Entered<br>Date: 06/08/2012 | Status:<br>Filed by: CR<br>Entered by: Rosemary Ambriz<br>Modified: |
|---|---|---|

| Amount claimed: $4360.34 | | |
|---|---|---|

| History: | | | |
|---|---|---|---|
| Details | 6-1 | 06/08/2012 | Claim #6 filed by Scottsdale Insurance Company, Amount claimed: $4360.34 (Ambriz, Rosemary ) |
| | 129 | 06/13/2012 | Objection to Claim #6 by Claimant Scottsdale Insurance Co in the amount of $ 4360.34 with Certificate of Service Filed by Debtor Yan Sui . (Lyons, Maeve) |

| Description: |
|---|
| Remarks: |

## Claims Register Summary

**Case Name:** Yan Sui
**Case Number:** 8:11-bk-20448-CB
**Chapter:** 7
**Date Filed:** 07/27/2011
**Total Number Of Claims:** 6

| Total Amount Claimed* | $139964.37 |
|---|---|
| Total Amount Allowed* | |

*Includes general unsecured claims

**The values are reflective of the data entered. Always refer to claim documents for actual amounts.**

| | Claimed | Allowed |
|---|---|---|
| Secured | $118093.23 | |
| Priority | $0.00 | |
| Administrative | $20604.28 | |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 02/26/2014 18:40:22 | | | |
| PACER Login: | mh4052 | Client Code: | 1015-038 |
| Description: | Claims Register | Search Criteria: | 8:11-bk-20448-CB Filed or Entered From: 1/1/1900 Filed or Entered To: 2/26/2014 |
| Billable Pages: | 1 | Cost: | 0.10 |

Exh. List 2



1  YAN SUI;
2  2176 Pacific Ave. #C
   Costa Mesa CA92627
3  Email: dancalm@sbcglobal.net
   Debtor in pro se
4

5

6            UNITED STATES BANKRUPTCY COURT
7            CENTRAL DISTRICT OF CALIFORNIA

8  In re:                          Assigned to Hon. Judge Catherine Bauer
9
                                   Case No.: 8:11-bk-20448-CB
10

11

12 Yan Sui                         **DEBTOR YAN SUI'S AMENDED OBJECTION
13                                 OBJECTION TO THE PROOF OF CLAIM BY
                                   2176 PACIFIC HOMEOWNERS ASSOCIATION**
14    Debtor

15

16

17 TO ALL INTERESTED PARTIES AND THEIR ATTORNEY OF RECORD:

18    COMES NOW, Debtor Yan Sui (hereafter called – "Sui") submits the following objection to

19 the Proof of Claim by 2176 Pacific Homeowners Association (hereafter called – "HOA") based

20 on the attached memorandum of points and authorities.

21    This amended objection is being filed because Debtor does not see the original being filed

22 although it was mailed to the Court on June 14, 2012.

23            **MEMORANDUM OF POINTS AND AUTHORITIES**

24                  **I. INTRODUCTION**

25    HOA served on Debtor the "Proof of Claim" on June 8, 2012 with "Exhibit 1" – the copy of

26 Debtor's "First Amended Complaint under case No. 30-2010-00342510" , "Exhibit 2"- the

27 Interlocutory Judgment Abating Proceedings" and "Exhibit 3" - the partial published opinion by

28 the Appellate Court for the state court case of 30-2010-00353446.

_____ 1 _____

DEBTOR YAN SUI'S AMENDED OBJECTION TO THE PROOF OF CLAIM BY 2176 PACIFIC
HOA

2176 Pacific HOA claims $17,305.00 against Debtor.

Debtor would like to make the record straight: 1) Cane, Walker & Harkins LLP was only representing HOA in the case of 30-2010-00342510. Bonne Bridges Mueller O'Keefe & Nichols was representing HOA in "00353446."

## II. HOA'S CLAIM AGAINST YAN SUI IS FALSE AND INVALID

### a. HOA's Claim Is False Because It is a Losing Party in 00342510:

2176 Pacific HOA et al were sued for the presently-existing issues at the state court: 1) wrongful foreclosure; and 2) Defendants' TV antenna installed in violation of the CC&R. The issue of van towing and related damages had been dismissed from the case. Both parties had affirmed to the judge Linda S. Marks at the hearing on May 8th 2012 in Dept. C-7 at the Orange County Superior Court.

While the case was being abated, Defendant, Michelle J. Matteau had removed her TV antenna from her unit. On 12/15/2010, defense counsel James C. Harkins had sent Sui email to confirm and claimed that Sui's claim was a moot. Sui replied that Plaintiffs achieved the litigation goal and Defendants did not prove anything. (Exhibit 1)

As a matter of fact and law, HOA is a losing party in 00342510. Debtor had attached the same email in his motion for reconsideration which was filed with the Bankruptcy Court on Nov. 8, 2011.

Therefore, HOA is losing in 30-2010-00342510 and does not possibly have a claim against Debtor.

### Debtor Has Been Awarded Cost On Appeal and Defendants Would Lose In 30-2009-00329341:

HOA has mentioned the case of 30-2009-00329341 in reference to "00342510." Debtor has successfully appealed from the judgment of dismissal "00329341." Debtor was awarded the cost on appeal by the Appellate Div. of Sup. Court, which would amount to approx. $4,000. (Exhibit 2)

---

2

DEBTOR YAN SUI'S AMENDED OBJECTION TO THE PROOF OF CLAIM BY 2176 PACIFIC HOA

Defense counsel somehow claims that the Chapter 7 trustee has agree to dismiss the case. The trustee has no standing to dismiss because the case involved a defamation cause of action which is a pure personal issue. This cause of action can not be transferable to the trustee according to the California Supreme Court case law of *Reichert v. General Insurance Co.* (1968) 68 Cal. 2d 822. Furthermore, the transferability is determined by the state law *Reichert v. General Insurance Co. supra,* Cal. 2d 882.

Based on the appellate opinion (Exhibit 2) HOA would reasonably lose. Debtor will further recover his attorney fees and cost of suit from 2176 Pacific HOA when the case concludes. Therefore, HOA had no claim against Debtor in "329341." The frivolous claim by 2176 Pacific HOA should be denied.

**c. HOA's Claim Under "353446" Is Duplicative:**

Debtor has filed the objection to the claim by Scottsdale Insurance Co. for its claim under the same case. HOA was represented by Bonne Bridges and Cane, Walker & Harkins LLP is not the attorney of record.

The duplicative claim from Cane, Walker & Harkins LLP is invalid.

Furthermore, Debtor has stated in the objection to the Scottsdale claim, HOA and individual defendants in that case are not the prevailing party in the action.

Therefore, they are not entitled to recover their defense attorney fees from Yan Sui according to the CC&R's Art. XX, § 9, which provides:

> "In the event action is instructed to enforce any of the provisions contained in this Declaration, the party prevailing in such action shall be entitled to recover from the other party thereto as part of the judgment, reasonable attorney's fees and costs of such suit."

Defendants are not the prevailing party in the action of 30-2010-00353446. Therefore, they are not entitled to recover their defense attorney fees from Yan Sui. Apparently, the amount of $4,360.34 contained in the said Proof of Claim is the purported attorney fees from Bonne Bridges. However, Defendants are not the prevailing party in the action for the purpose to recover their attorney fees. If the appellate court awarded the appellate costs to Defendants, that cost

DEBTOR YAN SUI'S AMENDED OBJECTION TO THE PROOF OF CLAIM BY 2176 PACIFIC HOA

should only include the cost excluding the attorney fees.

**d. Defendants Are Unlikely the Prevailing Party in the Subsequent Federal Lawsuit:**

After Sui's petition to California Supreme Court for review was denied, Sui filed a federal law suit in the United States District Court for supplemental jurisdiction under the Rooker-Feldman doctrine to redress the unlawful act of Defendants on 9/6/2011. The case number is SACV11-01340 JAK (AJW). That action has been fully briefed and pending the decision.

Defendants are unlikely the prevailing party in this federal action as well.

**e. HOA's Claim Under "353446" is Duplicative and Time Barred:**

Scottsdale's claim against Yan Sui, if legally supported, is time barred. According to the case law of *Lee v. Wells Fargo Bank* (2001) 88 Cal. App.4[th] 1187, which provides in pertinent part:

> "Rule 870.2 (b)(1) provides: 'A notice of motion to claim attorney fees for services up to and including the rendition of judgment in the trial court... shall be served and filed within the time for filing a notice of appeal under rules 2 and 3.' The parties can stipulate to an additional 60 days (or, where an appeal is filed, until after the remittitur) (Rule 870.2(b)(2).)

Now, it has been 281 days after the remittitur was issued and served on Bonne Bridges from the appellate court, Therefore, HOA's claim under "353446" duplicative from that by Scottsdale. This frivolous claim is time barred and should be denied.

### III. CONCLUSION

Based on the foregoing reasons, Debtor Yan Sui respectfully requests that the Bankruptcy Court denies 2176 Pacific HOA's Proof of Claim in its entirety.

DATED: June 27, 2012                    Respectfully submitted,

Yan Sui, Debtor in pro se

---

4

---

DEBTOR YAN SUI'S AMENDED OBJECTION TO THE PROOF OF CLAIM BY 2176 PACIFIC HOA

STATE OF CALIFORNIA    )

                           )  ss.

COUNTY OF ORANGE     )

I am a resident in the County of Orange, State of California. I am over the age of 18 and not a party of the action. My residence address is: 2176 Pacific Ave. #C, Costa Mesa CA92627.

The following document described as "**DEBTOR YAN SUI'S OBJECTION TO THE PROOF OF CLAIM BY 2176 PACIFIC HOA** " will be served or was served on the interested parties in this action.

SERVED BY U.S MAIL OR OVERNIGHT MAIL

On June 27,2012 I served the following person (s) and/or entities at the last known addresses in the bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/pr with an overnight mail service addressed as follows.

David M. Goodrich
Goodrich Law Corporation
870 Roosevelt Ave.
Irvine CA92620

Amrane Cohen, Chapter 13 Trustee
770 The City Drive, South, Suite 8500
Orange CA92868

James C. Harkins IV, Esq.
Cane, Walker & Harkins LLP
17821 E. 17th Street, Suite 140
Tustin CA92780

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 6/27/2012, at Costa Mesa, California 92627

Cindy Sui

PROOF OF SERVICE BY US MAIL

Exh. List 3

YAN SUI;
2176 Pacific Ave. #C
Costa Mesa CA92627
Email: dancalm@sbcglobal.net
Debtor in pro se

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA

In re:

Yan Sui

Debtor

Assigned to Hon. Judge Catherine Bauer

Case No.: 8:11-bk-20448-CB

**DEBTOR YAN SUI'S OBJECTION
TO THE PROOF OF CLAIM BY
SCOTTSDALE INSURANCE CO.**

TO ALL INTERESTED PARTIES AND THEIR ATTORNEY OF RECORD:

COMES NOW, Debtor Yan Sui (hereafter called – "Sui") submits the following objection to the Proof of Claim by Scottsdale Insurance Co. (hereafter called – "Scottsdale") based on the attached memorandum of points and authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES
### I. INTRODUCTION

Scottsdale filed this "Proof of Claim" with the Bankruptcy Court on June 4, 2012. The filing was based on the "Costs Award – 4th Div. Court of Appeals Case #G044185.

The appellate case of G044185 is an appeal from the judgment of dismissal with prejudice of Sui's case – 30-2010-00353446 against 2176 Pacific Homeowners Association; Stephen D. Price (hereafter collectively called – "Defendants.") The appellate court affirmed the dismissal. Sui's rehearing petition was denied on 6/20/2011. Sui filed the petition with the California Supreme

1

DEBTOR YAN SUI'S OBJECTION TO THE PROOF OF CLAIM BY SCOTTSDALE
INSURANCE CO.

Court for a review. The petition was denied on 8/17/2011.

On 8/23/2011, the Appellate Court issued the Remittitur to award Defendants. Defendants were represented by the law firm of Bonne Bridges Mueller O'Keefe & Nichols LLC.

During which time, Defendants had purchased for 2176 Pacific HOA general liability insurance from Scottsdale to cover the defense attorney fees paid out to defense counsel(s).

As a result of a claim filed against the policy, Scottsdale requested 2176 Pacific HOA to pay $500 deductible, and which was paid on 8/19/2011 by the HOA check No. 490.

## II. SCOTTSDALE'S CLAIM AGAINST YAN SUI IS INVALID

### a. Scottsdale's Claim Is Invalid Because It is Not a Party Prevailing Over Yan Sui:

Scottsdale – being a commercial insurance carrier to 2176 Pacific HOA, is not a prevailing party in the action and is not entitled to recover its paid-out claim from Yan Sui. Yan Sui was a co-owner of the unit C according to the California community property statute. Unit C contributed 1/5 of the insurance premium paid to Scottsdale. As a result, Yan Sui is one of the insureds under the policy.

Scottsdale has no standing to collect from an insured for the service paid for. Therefore, Scottsdale's claim against Yan Sui is invalid.

### b. Defendants Are Not the Prevailing Party in the Action:

Defendants, 2176 Pacific HOA and Stephen D. Price are not the prevailing party in the action of 30-2010-00353446. Therefore, they are not entitled to recover their defense attorney fees from Yan Sui according to the CC&R's Art. XX, § 9, which provides:

> "In the event action is instructed to enforce any of the provisions
> contained in this Declaration, the party prevailing in such action
> shall be entitled to recover from the other party thereto as part of
> the judgment, reasonable attorney's fees and costs of such suit."

Defendants are not the prevailing party in the action of 30-2010-00353446. Therefore, they are not entitled to recover their defense attorney fees from Yan Sui. Apparently, the amount of $4,360.34 contained in the said Proof of Claim is the purported attorney fees from Bonne Bridges. However, Defendants are not the prevailing party in the action for the purpose to recover their attorney fees. If the appellate court awarded the appellate costs to Defendants, that cost

should only include the cost excluding the attorney fees.

**c. Defendants Are Unlikely the Prevailing Party in the Subsequent Federal Lawsuit:**

After Sui's petition to California Supreme Court for review was denied, Sui filed a federal law suit in the United States District Court for supplemental jurisdiction under the Rooker-Feldman doctrine to redress the unlawful act of Defendants on 9/6/2011. The case number is SACV11-01340 JAK (AJW). That action has been fully briefed and pending the decision.

Defendants are unlikely the prevailing party in this federal action as well.

**d. Scottsdale's Claim is Time Barred:**

Scottsdale's claim against Yan Sui, if legally supported, is time barred. According to the case law of *Lee v. Wells Fargo Bank* (2001) 88 Cal. App.4th 1187, which provides in pertinent part:

> "Rule 870.2 (b)(1) provides: 'A notice of motion to claim attorney fees for
> services up to and including the rendition of judgment in the trial court…
> shall be served and filed within the time for filing a notice of appeal under
> rules 2 and 3.' The parties can stipulate to an additional 60 days (or, where
> an appeal is filed, until after the remittitur) (Rule 870.2(b)(2).)

Now, it has been 278 days after the remittitur was issued and served on Bonne Bridges from the appellate court, Therefore, Scottsdale's claim is time barred and should be denied.

**e. Bankruptcy Court Is Not the Proper Jurisdiction To Approve Scottsdale's Claim:**

If Scottsdale could establish its standing to recover from Yan Sui, it should have submitted its claim to the state trial court and serve the motion on Yan Sui. Then, Yan Sui could have a fair opportunity to contest and argue the propriety of its claim. It can only validate such claim through the state court and, then, lodge with the Bankruptcy Court as a valid claim. So far, its claim is invalid.

### III. CONCLUSION

Based on the foregoing reasons, Debtor Yan Sui respectfully requests that the Bankruptcy Court denies Scottsdale's Proof of Claim in its entirety.

DATED: June 11, 2012                                 Respectfully submitted,

Yan Sui, Debtor in pro se

---

3

---

DEBTOR YAN SUI'S OBJECTION TO THE PROOF OF CLAIM BY SCOTTSDALE
INSURANCE CO.

## PROOF OF SERVICE BY U.S MAIL

STATE OF CALIFORNIA        )
                           )  ss.
COUNTY OF ORANGE           )

I am a resident in the County of Orange, State of California. I am over the age of
18 and not a party of the action. My residence address is: 2176 Pacific Ave. #C, Costa Mesa
CA92627.

The following document described as "**DEBTOR YAN SUI'S OBJECTION TO THE
PROOF OF CLAIM BY  SCOTTSDALE INSURANCE CO.** " will be served or was served
on the interested parties in this action.

SERVED BY U.S MAIL OR OVERNIGHT MAIL

On June 11,2012 I served the following person (s) and/or entities at the last known
addresses in the bankruptcy case or adversary proceeding by placing a true and correct copy
thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/pr
with an overnight mail service addressed as follows.

David M. Goodrich                       Amrane Cohen, Chapter 13 Trustee
Goodrich Law Corporation                770 The City Drive, South, Suite 8500
870 Roosevelt Ave.                      Orange CA92868
Irvine CA92620

Majorie Lindenbaum                      Robert A. Zermeno, Jr. Esq
P.O.Box 4120                            Bonne Bridge Mueller O'Keefe & Nochols LLP
Scottsdale AZ85261                      1851 E. 1st Street, Suite 810
                                        Santa Ana CA92705

I declare under penalty of perjury under the laws of the United States of America that
the foregoing is true and correct.

Executed on 6/11/2011, at Costa Mesa, California 92627

*Cindy Sui*

Cindy Sui

---

PROOF OF SERVICE BY US MAIL

Evi. 4

1

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

--oOo--

In Re:                          )    Case No. 8:11-bk-20448-CB
                                )    Chapter 7
YAN SUI,                         )
                                )    Santa Ana, California
        Debtor.                 )    Tuesday, November 1, 2011
                                )    2:30 PM
-----------------------------

                                     62.00 Hearing on Debtor's
                                     Motion to Dismiss the
                                     Bankruptcy Case After
                                     Removing Kenny Kean Tan from
                                     Creditors' List

                    TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE ROBERT KWAN
                UNITED STATES BANKRUPTCY COURT

APPEARANCES:
For the Debtor                       YAN SUI
                                     Party Pro Se

For Chapter 11 Trustee               DAVID M. GOODRICH, ESQ.
                                     333 South Hope Street
                                     35th Floor
                                     Los Angeles, CA

Proceedings recorded by electronic sound recording;
transcript provided by transcription service.

2

1   Court Recorder:                        ROSEANN CAMMISO
                                           United States Bankruptcy
2                                          Court
                                           411 West Fourth Street
3                                          Santa Ana, CA 92701
                                           (855)460-9641
4
    Transcriber:                           PENINA WOLICKI
5                                          eScribers, LLC
                                           700 West 192nd Street,
6                                          Suite #607
                                           New York, NY 10040
7                                          (973)406-2250

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

YAN SUI

1    SANTA ANA, CALIFORNIA  NOVEMBER 1, 2011 3:36 PM

2                        --oOo--

3    (Call to order of the Court.)

4         THE COURT:  Item number 62, Yan Sui.

5         MR. GOODRICH:  Good afternoon, Your Honor.  Dave

6    Goodrich on behalf of the trustee and respondent.

7         MR. SUI:  Good afternoon, Your Honor.  Yan Sui, here,

8    appearing, sir.

9         THE COURT:  And I believe -- okay.  So Mr. Sui, I've

10   read your papers.  So -- and I've read the papers of -- I

11   believe there are a number of parties who objected.  Let's see.

12   It was the Homeowners' Association and Mr. and Mrs. Price (ph.)

13   have objected.  And the trustee's objecting.

14        MR. SUI:  Your Honor, the Homeowners' Association,

15   they are not a creditor in this case, because they are -- we

16   are -- we have a lot of lawsuits outside.  But it's too

17   complicated.  If you have time, I can tell you some of the

18   details.  But their attorney never gave me the attorneys' fees,

19   never gave me the judgment.  I don't know.

20        THE COURT:  Well, I don't know.  Did they file a

21   claim?

22        MR. SUI:  No, Your Honor, no.

23        THE COURT:  Have they --

24        MR. SUI:  They didn't.

25        THE COURT:  -- filed a claim, Mr. Goodrich, the

4

YAN SUI

1  Homeowners' -- well, the Homeowners' Association filed a claim,

2  correct?

3        MR. GOODRICH:  Your Honor, it's a Chapter 7 case, and

4  we haven't noticed it out for claims yet.

5        THE COURT:  Oh, there are no claims -- this is a no-

6  asset --

7        MR. GOODRICH:  No, it's going to be an asset case.  We

8  just haven't noticed out the requirement that parties file

9  claims.

10       MR. SUI:  Your Honor --

11       THE COURT:  Well, was this a -- I'm sorry.

12       MR. GOODRICH:  We're early into this case.

13       THE COURT:  Oh, I see.  The claims bar date hasn't

14  passed?

15       MR. GOODRICH:  Yeah.  Well, thre wouldn't -- that

16  would be for nondischargeability.

17       THE COURT:  Is --

18       MR. GOODRICH:  We're talking proofs of claim.

19       THE COURT:  Right.  This has not been determined to be

20  an asset case yet?

21       MR. GOODRICH:  We haven't even had an examination of

22  the debtor, Your Honor.

23       THE COURT:  Oh, okay.  So -- all right.

24       MR. SUI:  Your Honor, at this case -- at this moment,

25  in the application, I listed three creditors.  One is Mr. Tan.

5

YAN SUI

1    He is the judgment holder.  And he did not object to the

2    dismissal.  And also the Homeowners' Association, they are

3    going to lose in the other cases.  I have filed suits with

4    them.

5            However, in any case, they did not file any claim

6    against me.  I do not own them any attorney fees.

7            THE COURT:  Well, is there --

8            MR. SUI:  Nothing, on the record.

9            THE COURT:  -- has there been a 341(a), Mr. Goodrich?

10           MR. GOODRICH:  Your Honor, there was.  And I was Mr.

11   Marshack's designee that morning.  And Mr. Sui refused to

12   answer my questions.  He wanted to come see Your Honor.  It's a

13   341(a), it's not really in the cards for him to come see you.

14   He --

15           THE COURT:  Well, and I'm not supposed to attend those

16   meetings, so --

17           MR. GOODRICH:  And I think Mr. Sui also was under the

18   impression that his creditors would show up so he could pay

19   them.  I -- but we haven't concluded it, because he hasn't sat

20   for an actual examination, and we haven't had a chance to ask

21   him even the standard twelve questions we're supposed to ask

22   him.

23           MR. SUI:  Your Honor, so far the Homeowners'

24   Association is no way a creditor, because they have no claim

25   against me.

6

YAN SUI

1     THE COURT: So why aren't you asking (sic) counsel's

2     questions, Mr. Sui, at the 341 meeting?

3     MR. SUI: Your Honor, if -- yeah, if the question is

4     relevant to this --

5     THE COURT: Well, okay, but he --

6     MR. SUI: -- bankruptcy case, I'm willing to answer.

7     THE COURT: -- okay. Right. I think he --

8     MR. SUI: Okay, yeah, go ahead and ask questions.

9     THE COURT: -- if he asks appropriate questions and --

10     MR. SUI: Yeah, go ahead, and question. Yeah.

11     MR. GOODRICH: Well, this isn't the time and place.

12     We had a 341(a) meeting. We continued it. He didn't appear

13     for the second one.

14     THE COURT: Well, and -- yeah, I think -- I'm not

15     inclined to dismiss the case until there's been full disclosure

16     in a 341(a) meeting. And so I think the purpose is, is that

17     the case was brought and that the debtor voluntarily submitted

18     to the jurisdiction of the Court by voluntarily filing the

19     case. And in order for the system to work, the debtor needs to

20     appear at the 341, answer the questions, and see if this is a

21     case that should be administered or not.

22     MR. GOODRICH: We intend to administer this case, Your

23     Honor. We do need to ask some questions. There are schedules

24     that are very, very replete (sic) with any kind of responses

25     that we know the answers to already from our --

7

YAN SUI

1      THE COURT:  Right.

2      MR. GOODRICH:  -- research.

3      THE COURT:  So Mr. Sui, you're representing yourself.

4  Have you thought about hiring an attorney to represent you and

5  advise you with respect to your interests?  Because that might

6  be a good idea.

7      MR. SUI:  Your Honor, actually, I have no money to

8  hire an attorney.  But however, the attorney told me, so far,

9  at this stage the bankruptcy court has no jurisdiction over the

10 matter, because the only judgment remain -- remaining on this

11 case is a state law case.  It's a state law judgment.  And I

12 don't think that it's proper to keep this state law judgment

13 examination in the bankruptcy court.  Because I filed this for

14 protection when Mr. Tan filed the debt proceeding examination

15 in May.  And then in in July, I --

16     THE COURT:  Well, I really think that you didn't

17 answer my question.

18     MR. SUI:  No.

19     THE COURT:  You said that you don't have enough money.

20 But maybe it might be a good idea for you to really find the

21 money to do that.  I know you say you don't have the money, but

22 there might be some resources available to you and your family.

23     MR. SUI:  Your Honor, my contention is so far the

24 bankruptcy court has no jurisdiction over this matter, because

25 the Homeowners' Association they're not the creditor.  If

8

YAN SUI

1    they -- if they win the attorney fee, I'm going to pay them.

2              THE COURT:  Well, okay.  Well --

3              MR. SUI:  But so far --

4              THE COURT:  -- you filed a case, and you -- we have

5    alleged creditors who object.  The trustee is administering the

6    case.  And it appears that the best thing to do is to allow the

7    administration to go forward.  Either there's something or

8    there's nothing.  And the case should go forward.

9              And let the trustee ask his questions, do his

10   investigation.  This is a he, right?

11             MR. GOODRICH:  Yes, Your Honor.

12             THE COURT:  Mr. Marshack -- and make a recommendation

13   and investigate whether or not this is an asset case or a non-

14   asset case.

15             MR. SUI:  Your Honor --

16             THE COURT:  Now, whether or not there are other

17   actions -- but it seems to me that the trustee needs to do his

18   job, since the case was brought.  And it's appropriate that the

19   case go through the system now that it's here.

20             And we have parties who claim that they're creditors.

21   I know, Mr. Sui, you disagree that they're creditors or bona

22   fide creditors.  Well, we have a system to sort that out.

23             MR. SUI:  Your Honor, so far they can -- they cannot

24   produce any evidence before the Court to say that they are --

25   they have the claim against me.  They have no record of it.

9

YAN SUI

1          THE COURT:  Well -- well, you filed the case.  And the

2   trustee has the duty to investigate the case.  And he hasn't

3   completed his investigation.  And he should be able to proceed

4   in the investigation, because he's not only -- he's

5   representing the interests of the creditors in the case, now

6   that the case is before the Court.

7          MR. SUI:  Your Honor, there's only three creditors.

8   Two of them have --

9          THE COURT:  Well, okay --

10          MR. SUI:  -- been paid.

11          THE COURT:  -- that's still to be determined whether

12   or not there're creditors or not and whether or not you're able

13   to work something out with them or not that might go -- it may

14   be a consideration.  But at this point, the Court does not find

15   that there's cause for dismissal of the case, because the Court

16   cannot find that there would be no legal prejudice to the

17   creditors.

18          I think at least the trustee needs to conduct his

19   investigation to see what this case is about.

20          MR. SUI:  Your Honor, can the --

21          THE COURT:  And you need to cooperate at the 341(a)

22   meeting and answer the questions so that the trustee can do his

23   investigation, and to do his job in administrating this case.

24          MR. SUI:  Well, Your Honor, I can tell you this fact.

25   On August the 23rd, Mr. Goodrich sent me a letter saying that I

YAN SUI

1    can't -- I'm not authorized to file any paperwork in the

2    pending cases in --

3            THE COURT:  Well, but okay.  That's -- that was the

4    subject of a hearing, I believe, last week.  And so we don't --

5    isn't that right?

6            MR. GOODRICH:  It's greater than that, Your Honor.

7    Mr. Sui has filed -- we had some pending cases at the time of

8    filing.  He now has a new case.  He's continuing to prosecute

9    these cases.  These are assets of the estate.  I've insisted

10   that he cease and desist.  He's threatened to sue me.  He's

11   threatened to sue the trustee.  We --

12           THE COURT:  Well, okay.  That's not before the Court

13   today, so --

14           MR. GOODRICH:  Right, but that's what he's referring

15   to.

16           THE COURT:  -- if there needs to be some action on

17   that, then someone needs to bring a motion.

18           MR. GOODRICH:  And we intend to.

19           THE COURT:  Okay.

20           MR. SUI:  Your Honor, I would like to say it again,

21   that so far the Homeowners' Association is not a creditor in

22   this case --

23           THE COURT:  No, I heard -- I heard that.

24           MR. SUI:  Yeah, they have --

25           THE COURT:  They may be a creditor, maybe not.  So

YAN SUI

1   there'll be an appropriate time to determine that.

2          MR. SUI:  Your Honor, how can you make a ruling on the

3   maybe --

4          THE COURT:  I'm not going to make a ruling on that.

5   They're claiming to be creditors.  And if you read their

6   papers, right --

7          MR. SUI:  You can read their paper.  What kind of

8   claim they have --

9          THE COURT:  -- they filed -- okay.

10          MR. SUI:  Yeah.  How much money they are going after

11   me?  No money.

12          MR. GOODRICH:  17,000.

13          THE COURT:  They say --

14          MR. SUI:  No.

15          THE COURT:  -- that they've incurred fees which they

16   won a claim against you, and so they may be a creditor.

17          MR. SUI:  On what motion?  Your Honor, I did not--

18          THE COURT:  Now, whether or not their claim is

19   entitled to be paid, the Court isn't making that determination

20   today.

21          MR. SUI:  Your Honor, I did not see that paper at all.

22   No paper.

23          THE COURT:  Well, this filed by Mr. Harkins (ph.),

24   filed on October 26th, 2011.  You didn't get that, the

25   creditor's opposition to your motion?

12

YAN SUI

1          MR. SUI:  Your Honor, as Harkins paper, I have not

2    opened yet.  But they --

3          THE COURT:  Well, did you --

4          MR. SUI:  -- that case is --

5          THE COURT:  -- did you get it, Mr. Sui?

6          MR. SUI:  I have got -- they did no --

7          THE COURT:  Okay, you got it?  And how come you didn't

8    open it?

9          MR. SUI:  I have no time, Your Honor.  That case --

10          THE COURT:  You have no time to open it?

11          MR. SUI:  Your Honor, that --

12          THE COURT:  Well, what does it take to -- what does it

13    take to open an envelope, Mr. Sui?

14          MR. SUI:  I understand they --

15          THE COURT:  You have -- you have fingers.  Can't you

16    open an envelope?

17          MR. SUI:  Yes, Your Honor.  But it's too late,

18    because --

19          THE COURT:  Okay, you know what an ostrich is?  You

20    know what an ostrich is?

21          MR. SUI:  No, Your Honor.

22          THE COURT:  It's a bird.

23          MR. SUI:  I know.

24          THE COURT:  Right, in Australia?

25          MR. SUI:  I'm facing the reality, Your Honor.

13

YAN SUI

1    THE COURT:  Okay, well, if you don't open your mail

2    and read what's served on you, how can you meaningfully

3    respond?  Again, I've recommended that you really consider

4    getting an attorney to represent you.  And also, there are

5    alternatives.  Have you considered if you don't feel that you

6    have sufficient resources or you don't have sufficient income,

7    are you saying that you don't have income to pay an attorney?

8    MR. SUI:  Your Honor, this is irrelevant here, because

9    my contention is still the same.  Homeowners' Association, they

10   have no claim against --

11   THE COURT:  Well, they're saying that you

12   unjustifiably sued them and they're -- well, if you read their

13   paper, they said that they had to incur costs in defending a

14   suit against you, which they're going to claim against you in

15   the amount of 18,000 dollars.

16   MR. SUI:  They should file that --

17   THE COURT:  That's what they say here.

18   MR. SUI:  Yeah.  They should file with the state

19   court.

20   THE COURT:  And -- could you stop interrupting me?

21   MR. SUI:  Okay, Your Honor, yeah.

22   THE COURT:  Okay.  You need to read the papers in

23   order to respond.  It doesn't help the Court if you decide that

24   you don't want to open you mail and read your mail and respond.

25   They file with the court expecting me, as the judge to

14

YAN SUI

1   read this, and you, as the debtor and a party to this case, to

2   read the material.

3         MR. SUI:  Your Honor, their papers should go through

4   the state court to be confirmed to make sure that I owe them

5   money.  This is only their allegation.  I do not owe them

6   18,000 dollars.  If they have the guts, they file the paper at

7   the state court, I'm going to respond.

8         THE COURT:  Well, and they may file a claim in this

9   case.

10        MR. SUI:  Well, they do not --

11        THE COURT:  And you have the right to object to it,

12  and we might have to litigate that in this court.

13        MR. SUI:  Yes, Your Honor.  Okay, I'm going to

14  litigate.  Also, one more thing.  Mr. Goodrich has sent me the

15  letter saying I'm not going to authorize to file any paper in

16  the pending cases.  So I did not file the opposition to the

17  defendants in another case, the South Side Twins (ph.)

18  opposition to dismiss.  Because of his letter I did not file

19  the opposition.  So the district court dismissed the case.

20  Today I just filed the opposition to their recommendation to

21  dismiss.

22        So I'm going to hold Mr. Goodrich liable for the --

23        THE COURT:  Well, okay.

24        MR. SUI:  Yeah.

25        THE COURT:  Okay.  There shouldn't be any threats.

Exh. List 5

1  James C. Harkins, IV, Esq. (SBN 152564)
   Cane, Walker & Harkins LLP
2  17821 East Seventeenth Street, Suite 140
3  Tustin, California 92780
   Tel. 714-573-8990; Fax 714-573-8999
4  e-mail: jharkins@linkline.com

5  Attorneys for Creditors 2176 PACIFIC HOMEOWNERS ASSOCIATION, STEPHEN D.
6  PRICE, AND MICHELLE PRICE

7

8              UNITED STATES BANKRUPTCY COURT

9       CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

10

11 In re:                          )  Case No.:  8;11-BK-20448-RK
                                   )
12 YAN SUI,                        )  Chapter 7
                                   )
13                                 )  **CREDITORS' OPPOSITION TO**
              Debtor               )  **DEBTOR YAN SUI'S MOTION TO**
14                                 )  **DISMISS CHAPTER 7 BANKRUPTCY**
                                   )  **CASE; DECLARATION OF JAMES C.**
15                                 )  **HARKINS, IV, IN SUPPORT THEREOF**
                                   )
16                                 )  **DATE:   November 1, 2011**
                                   )  **TIME:   2:30 p.m.**
17                                 )  **Ctrm:   5D**
                                   )  **Floor:   5th**
18                                 )
                                   )  **[Request for Judicial Notice filed**
19                                 )  **concurrently herewith]**
                                   )
20                                 )
                                   )
21

22    **TO THE HONORABLE COURT AND ALL PARTIES HEREIN AND TO THEIR**

23  **RESPECTIVE COUNSEL OF RECORD, AS APPLICABLE:**

24       Creditors 2176 PACIFIC HOMEOWNERS ASSOCIATION, STEPHEN D. PRICE, and

25  MICHELLE PRICE (collectively, "Creditors"), hereby submit the following Opposition to

26  Debtor Yan Sui's Motion to Dismiss the Chapter 7 Petition he filed.  Creditors' also file

27  concurrently herewith a Request for Judicial Notice ("RJN") of pertinent documents in support

28  of this Opposition.

                                    1

                    OPPOSITION TO MOTION TO DISMISS

I.    INTRODUCTION.

Initially, Debtor did not list Creditors as creditors in Debtor's Petition, and Debtor did not serve Creditors with a copy of Debtor's Motion to Dismiss herein. Nevertheless, Creditors learned of the Motion to Dismiss and filed this Opposition because Creditors believe there is a greater likelihood of receiving through these bankruptcy proceedings payment on Debtor's contingent indebtedness to Creditors for attorneys' fees and costs incurred prior to Debtor's filing of his Petition.

Debtor owns a single family residential home located within the 2176 Pacific Homeowners Association "Association"). Creditors Stephen Price and Michelle Price also own a home within the Association and serve on Association's Board of Directors. Creditors object to Debtor's Motion to Dismiss because Creditors have a contingent claim against Debtor for recovery of attorneys' fees and costs incurred in excess of $18,000 in defending a frivolous lawsuit filed by Debtor against Creditors.

II.    BASES OF CREDITORS' CLAIMS AGAINST DEBTOR

On or about February 5, 2010, Debtor filed a lawsuit against Creditors in the Orange County Superior Court of California, Case No. 30-2010-00342510, alleging causes of action for breach of fiduciary duty, breach of contract, wrongful foreclosure, intentional infliction of emotional distress, trespassing, breach of covenant of good faith and fair dealing, breach of covenant of quiet enjoyment, remedy for compensatory damages, remedy for punitive damages, remedy for emotional distress, and declaratory relief. The claims in the complaint essentially arise out of the relationship between the parties as members of the Association and allegations that Creditors breached the covenants, conditions, and restrictions ("CC&Rs"), encumbering the properties or acted in a manner contrary to the authority under the CC&Rs, concerning the levy and collection of assessments, towing of a vehicle owned by Debtor's spouse, and the Prices' installation of a satellite dish on their residence (which Debtor claims violates the CC&Rs).

On August 3, 2010, Debtor and his wife, Pei-yu Yang filed a First Amended Complaint in the action, adding causes of action for negligence, conspiracy to defraud, violation of civil rights, retaliation in violation of public policy, violation of 14 U.S.C. 1681S-2, abuse of process,

2

1    violation of Civil Code 1785, arising out of the same facts and circumstances. Attached as

2    **Exhibit "1"** to the RJN is a true and correct copy of the First Amended Complaint.

3       Regarding entitlement to recover attorneys' fees in an action to enforce CC&Rs,

4    California Civil Code section 1354(c) provides as follows: "In an action to enforce the governing

5    documents [of a homeowners association], the prevailing party shall be awarded reasonable

6    attorney's fees and costs."

7       Debtor's lawsuit is frivolous and duplicative of prior lawsuits filed by Debtor.

8    Accordingly, on March 23, 2011, the court entered judgment on Creditors' Demurrer, stating, in

9    pertinent part, as follows:

10       "Case No. 30-2009-000329 341 and Case No. 30-2010-00353 446 each are

11       presently pending in the Orange County Superior Court, were commenced

12       prior to the within action, are between the same parties, are on the same

13       cause of action, and seeks the same relief as the within action . . . (i) that all

14       proceedings in this action are stayed until final determination of Case No.

15       30-2009-000329 341 and Case No. 30-2010-00353 446, each presently

16       pending in the Orange County Superior Court, and (ii) that the doctrine of res

17       judicata bars all other theories and claims in the within action based upon the

18       court's judgment entered in Orange County Superior Court Case No.

19       06CC07649 (Sui v. 2176 Pacific Homeowners Association et al.)"

20    See copy of Interlocutory Judgment Abating Proceedings attached as **Exhibit "2"** to RJN.

21       Consequently, the court stayed the Action until final determination on Case Nos. 30-

22    2009-000329341 and 30-2010-00353446. In Case Nos. 30-2009-000329341, Debtor was

23    determined to be a vexatious litigant and required to post a $25,000 bond in order to continue the

24    action; he failed to do so and the action was dismissed with prejudice on February 14, 2011.

25    Attached to the RJN as **Exhibits "3"** and **"4,"** respectively is copy of (i) the Judgment on the

26    vexatious litigant determination, and (ii) the order dismissing the entire action with prejudice.

27    Provided, however, the court determination in Case Nos. 30-2009-000329341 is currently on

28    appeal.

3

1      In Case No. 30-2010-00353446, the court sustained Creditors' Demurrer without leave to

2 amend, which Debtor appealed, and which resulted in a California Court of Appeal ruling, dated

3 May 23, 2011 (published, in part, at 196 Cal.App.4th 933), affirming the trial court's ruling

4 sustaining the demurrer dismissing the entire action with prejudice. See copy of the California

5 Court of Appeal opinion attached to the RJN as **Exhibit "5."**

6      Therefore, Creditor's Interlocutory Judgment against Debtor in Case No. 30-2010-

7 00342510, is nearly final, pending the determination on Debtor's appeal of the order and

8 dismissal based upon Debtor being a vexatious litigant and failing to post a bond to continue the

9 action in Case Nos. 30-2009-000329341.

10      Creditors have incurred in excess of $17,000.00 in attorneys' fees and $1,105.00 in

11 recoverable costs in defending Debtor's foregoing described frivolous complaint.

12 III.   CONCLUSION

13      Accordingly, based upon the foregoing, Creditors respectfully request this court to deny

14 Debtor's Motion to Dismiss.

15                 Respectfully submitted,

16 DATED: October 25, 2011     CANE, WALKER & HARKINS, LLP

17

18 By:

19 James C. Harkins, IV, Esq.,
Attorneys for Creditors2176 Pacific Homeowners
Association, Stephen D. Price, and Michelle Price

4

OPPOSITION TO MOTION TO DISMISS

1

## DECLARATION OF JAMES C. HARKINS, IV

2   I, JAMES C. HARKINS, IV, hereby declare as follows:

3   1.  I am an attorney at law duly licensed to practice before all courts in the State of

4 California, and I am a partner in the law firm of Cane, Walker & Harkins, LLP, counsel for

5 Creditors 2176 Pacific Homeowners Association, Stephen D. Price, and Michelle Price

6 (collectively, "Creditors")

7   2.  The facts in this declaration are known to me personally, unless stated upon

8 information and belief, and if called as a witness, I could and would competently testify under

9 oath thereto.  As to those matters stated upon information and belief, I believe them to be true.

10   3.  On or about February 5, 2010, Debtor filed a lawsuit against Creditors in the

11 Orange County Superior Court of California, Case No. 30-2010-00342510, alleging causes of

12 action for breach of fiduciary duty, breach of contract, wrongful foreclosure, intentional

13 infliction of emotional distress, trespassing, breach of covenant of good faith and fair dealing,

14 breach of covenant of quiet enjoyment, remedy for compensatory damages, remedy for punitive

15 damages, remedy for emotional distress, and declaratory relief.  The claims in the complaint

16 essentially arise out of the relationship between the parties as members of the Association and

17 allegations that Creditors breached the covenants, conditions, and restrictions ("CC&Rs")

18 encumbering the properties in the Association or acted in a manner contrary to the authority

19 under the CC&Rs, concerning the levy and collection of assessments, towing of a vehicle owned

20 by Debtor's spouse, and the Prices' installation of a satellite dish on their residence (which

21 Debtor claims violated the CC&Rs).

22   4.  On or about August 3, 2010, Debtor and his wife, Pei-yu Yang filed a First

23 Amended Complaint in Case No. 30-2010-00342510, adding causes of action for negligence,

24 conspiracy to defraud, violation of civil rights, retaliation in violation of public policy, violation

25 of 14 U.S.C. 1681S-2, abuse of process, violation of Civil Code 1785, arising out of the same

26 facts and circumstances.  A true and correct copy of the First Amended Complaint is attached as

27 **Exhibit "1"** to Creditors' Request for Judicial Notice ("RJN") filed concurrently herewith.

28

5

5.    On March 23, 2011, the court entered judgment on Creditors' Demurrer, stating, in pertinent part, as follows:

"Case No. 30-2009-000329 341 and Case No. 30-2010-00353 446 each are presently pending in the Orange County Superior Court, were commenced prior to the within action, are between the same parties, are on the same cause of action, and seeks the same relief as the within action . . . (i) that all proceedings in this action are stayed until final determination of Case No. 30-2009-000329 341 and Case No. 30-2010-00353 446, each presently pending in the Orange County Superior Court, and (ii) that the doctrine of res judicata bars all other theories and claims in the within action based upon the court's judgment entered in Orange County Superior Court Case No. 06CC07649 (Sui v. 2176 Pacific Homeowners Association et al.)"

A copy of the Interlocutory Judgment Abating Proceedings is attached as **Exhibit "2"** to RJN. Consequently, the court stayed the Action until final determination on Case Nos. 30-2009-000329341 and 30-2010-00353446.

6.    Based upon a review of the court file in Case Nos. 30-2009-000329341, Plaintiff Yan Sui was determined to be a vexatious litigant and required to post a $25,000 bond in order to continue the action, which he failed to do, so the action was dismissed with prejudice on February 14, 2011.  Attached to the RJN as **Exhibits "3"** and **"4,"** respectively are a copy of (i) the Judgment on the vexatious litigant determination, and (ii) the order dismissing the entire action with prejudice.  Provided, however, the court determination in Case Nos. 30-2009-000329341 is currently on appeal.

7.    Based upon a review of the court file in Case No. 30-2010-00353446, the court sustained Creditors' Demurrer without leave to amend, which Debtor appealed, and which resulted in a California Court of Appeal ruling, dated May 23, 2011 (published, in part, at 196 Cal.App.4th 933), affirming the trial court's ruling sustaining the demurrer dismissing the entire action with prejudice. A copy of the California Court of Appeal opinion is attached to the RJN as **Exhibit "5."**

6

8.      Creditors have incurred in excess of $17,000.00 in attorneys' fees and $1,105.00 in recoverable costs in defending Debtor's foregoing described Complaint originally filed on February 5, 2010, as Orange County Superior Court Case No. 30-2010-00342510, including, without limitation, attorneys' fees and costs in connection with Creditors responding to Debtor Yan Sui's (i) filing of the original complaint, (ii) Debtor's false claims of accomplishing service of the original Complaint, (iii) Debtor's filing Requests for Entry of Default on the original Complaint, (iv) Debtor's appeal of a court ruling that Debtor's proof of service on the Complaint was invalid, (v) Debtor's filing of the First Amended Complaint, (vi) Creditors filing of a demurrer, motion to strike re punitive damages, and motion to strike re ANTI-SLAPP, each challenging the First Amended Complaint, (vii) opposing Debtor's motion of reconsideration to the court's ruling on the demurrer, and (viii) preparing judgments and orders concerning the court rulings.

11.     The attorneys' fees and costs incurred with the law firm of Cane, Walker & Harkins, LLP by the Creditors were reasonable and necessary based upon the services performed.

12.     California Civil Code section 1354(c) provides as follows: "In an action to enforce the governing documents [of a homeowners association], the prevailing party shall be awarded reasonable attorney's fees and costs." Thus, upon conclusion of Orange County Superior Court Case No. 30-2010-00342510 and a finding that Creditors are the prevailing party, Creditors shall be entitled to an award of attorneys' fees and costs incurred against Debtor in an amount in excess of $18,000.00

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that if called as a witness, I could and would competently testify thereto under oath. Executed on October 25, 2011 at Tustin, California.

JAMES C.  HARKINS, IV, ESQ.

z

OPPOSITION TO MOTION TO DISMISS

PROOF OF SERVICE

STATE OF CALIFORNIA          )
                             )    ss.
COUNTY OF ORANGE             )

     I am employed in the County of Orange, State of California. I am over the age of eighteen (18) and not a party to the within action.; my business address is 17821 East Seventeenth Street, Suite 140, Tustin, California 92780.

     On October 26, 2011, I served the foregoing document described as follows:
**CREDITORS' OPPOSITION TO DEBTOR YAN SUI'S MOTION TO DISMISS CHAPTER 7 BANKRUPTCY CASE; DECLARATION OF JAMES C. HARKINS, IV IN SUPPORT THEREOF**
on the interested parties in this action.

[✓]    by placing  [ ] the original  [✓] a true copy thereof enclosed in a sealed envelope addressed as follows:

Debtor
Yan Sui
2176 Pacific Ave. #C
Costa Mesa, CA 92627
dancalm@sbcglobal.net

Debtor
Yan Sui
P.O. Box 7561
Huntington Beach, CA 92615
dancalm@sbcglobal.net

David M. Goodrich, Esq.
GOODRICH LAW CORPORATION
870 Roosevelt Ave.
Irvine, CA 92620
dgoodrich@goodlawcorp.com

United States Trustee (SA) (US Trustee)
411 w. Fourth St., Suite 9041
Santa Ana, CA 92701-4593
ustpregion16.sa.ecf@usdoj.gov;

Wells Fargo Bank, N.A., also known as
Wachovia
20955 Pathfinder Road
Diamond Bar, CA 91765
cdcaecf@bdfgroup.com

Richard A. Marshack (TR)
Marshack Hays LLP
870 Roosevelt
Irvine, CA 92620
pkraus@marshackhays.com

Judge's Copy
Hon. Robert Kwan
United States Bankruptcy Court - Central District of California
411 West fourth Street, Suite 5165
Santa Ana, CA 92701-4593

[✓]    (BY FIRST-CLASS MAIL) I deposited such envelope in the mail at Tustin, California. The envelope was mailed by first-class mail, with postage thereon fully prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

[✓]    (BY EMAIL) I e-mailed the above described document to each of the interested parties noted above.

[STATE]    I declare under penalty of perjury under the laws of the State of California that the above is true and correct. I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

Executed on October 26, 2011 , at Tustin, California.

                               Terry Gonzalez

Exh. List 6

1  DAVID M GOODRICH (State Bar No. 208675)
   dgoodrich@goodlawcorp.com
2  GOODRICH LAW CORPORATION
   870 Roosevelt Ave.
3  Irvine, CA 92620
   Telephone:  (949) 709-2662
4  Facsimile:   (949) 340-9746

5  Proposed General Counsel for Chapter 7 Trustee
   Richard A. Marshack

6

7

8              **UNITED STATES BANKRUPTCY COURT**

9        **CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION**

10

11 | In re | Case No. 8:11-bk-20448-RK |

12   YAN SUI,                              Chapter 7

13              Debtor.                    OPPOSITION OF RICHARD A.
                                           MARSHACK, CHAPTER 7 TRUSTEE, TO
14                                         THE DEBTOR'S MOTION TO DISMISS
                                           CHAPTER 7 BANKRUPTCY CASE

15                                         Hearing Date and Time:
16                                         Date:    November 1, 2011
                                           Time:    2:30 p.m.
17                                         Ctrm:    5D
                                           Floor:   5th

18

19

20

21

22          Respondent Richard A. Marshack, Chapter 7 Trustee of the Bankruptcy Estate of Yan Sui,

23 hereby files this Opposition to the Motion to Dismiss the Chapter 7 case filed by Debtor Yan Sui

24 ("Debtor") as follows:

25 / / /

26 / / /

27 / / /

28 / / /

1

I.      Summary

The Debtor, an experienced *pro se* litigant, seeks to dismiss his bankruptcy case.  It is very likely this motion was filed in direct response to the Debtor learning that the Trustee seeks an order avoiding the pre-petition transfer of real property made by the Debtor to his wife.  The Trustee avers that the transfer was made in direct response to a judgment entered in favor of Kenny Kean Tan, a creditor of the Debtor (the transfer occurred hours after Mr. Tan was awarded judgment).  The Debtor's basis for dismissal, however, falls well short of the showing of good "cause" for voluntary dismissal under §707.  In fact, the totality of the circumstances in this case suggests the Court should not dismiss the Debtor's bankruptcy case.

II.     Factual Background

a.   Events Preceding the bankruptcy case Filing

On or about June 30, 2000, the Debtor acquired a fee simple interest in that certain real property located at 2176 Pacific Avenue #C, Costa Mesa, California 92627-4891 ("Property") by grant deed along with his wife Pei-yu Yang.  The Deed indicates Pei-yu Yang is the Debtor's "wife." See Exhibit "A" to the Declaration of David M. Goodrich and the Trustee's Requests for Judicial Notice, each filed herewith.

On or about May 13, 2003, a First Deed of Trust was recorded by World Savings Bank, FSB, whereby an indebtedness of $207,000.00 was secured against the Property.  See Exhibit "B" to the Declaration of David M. Goodrich and the Trustee's Requests for Judicial Notice, each filed herewith.

On or about July 10, 2007, the Debtor filed a lawsuit against his lawyer Kenny Tan for professional negligence. See Exhibit "C" to the Declaration of David M. Goodrich and the Trustee's Requests for Judicial Notice, each filed herewith.

On or about October 1, 2008, Kenny Tan was awarded $7,329.40 against the Debtor in arbitration.  See Exhibit "D" to the Declaration of David M. Goodrich and the Trustee's Requests for Judicial Notice, each filed herewith.

On June 10, 2009, the Orange County Superior Court confirmed the arbitration award of $7,329.40 and entered judgment in the same amount plus costs of $40.00 in favor of Kenny Tan and

2

against the Debtor. See Exhibit "D" to the Declaration of David M. Goodrich and the Trustee's Requests for Judicial Notice, each filed herewith.

The Court in the *Sui v. Tan* matter also issued sanctions in the sum of $2,365.00 against the Debtor and in favor of Kenny Tan.  These amounts remain unpaid.  See Debtor's Motion to Dismiss at Page 3, Lines 9-15 which indicate the judgment is final and all appeals exhausted.

Hours after the Court confirmed the arbitration award and issued sanctions against the Debtor (June 10, 2009), the Debtor recorded a Quitclaim Deed transferring his entire interest in the Property to his wife Pei-yu Yang for no consideration.  See Exhibit "E" to the Declaration of David M. Goodrich and the Trustee's Requests for Judicial Notice, each filed herewith.

      b.   Events Following the bankruptcy case Filing.

On July 27, 2011, the Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code.   See Exhibit "M" to the Declaration of David M. Goodrich, filed herewith.

On the same day, Richard A. Marshack was appointed as the interim Chapter 7 Trustee ("Trustee").

Shortly after appointment, the Trustee's counsel learned that the Debtor was recently on title to real property located at 2176 Pacific Ave. #C, Costa Mesa, California 92627 (the "Residence") and that the Debtor and his wife likely held $300,000 or more in equity in the Residence.[1]   The Trustee's counsel also learned that the Debtor was a Plaintiff in a lawsuit filed against the 2176 Pacific Homeowners Association for the community in which the Residence is located.   The Trustee's counsel also discovered that the Debtor resides at the Residence and co-habitated with Pei-yu Yang (although he claims in Schedule I that he is "separated").   According to Debtor's Bankruptcy Schedules, the Debtor does not list any assets of his wife as assets of the bankruptcy estate.  The Debtor also does not list a majority of his pending or planned lawsuits.

On or about August 22, 2011, Mr. Marshack retained the Goodrich Law Corporation to investigate potential assets of the Debtor.  The Application to employ the Goodrich Law Corporation is pending and is scheduled to be heard concurrently with the Debtor's Motion to Dismiss.

---

[1] The source of this information is a member of the homeowners association with privy to the liens, including its own, held against the Property.

After conducting several interviews regarding the Debtor and potential assets (including a brief and incomplete examination of the Debtor at his original 341(a) meeting of creditors), Mr. Goodrich learned the following:

     a.    On the date the Orange County Superior Court confirmed the arbitration award of Kenny Tran, the Debtor quitclaimed the Property to his wife Pei-yu Yang for no value;  See Exhibit "D";

     b.    The Debtor is a Plaintiff in several lawsuits which are not disclosed in the Debtor's Schedules; See Exhibit "F";

     c.    After the filing of the Bankruptcy Petition, the Debtor continued to prosecute disclosed and undisclosed litigation despite Mr. Goodrich's demands to cease such activity; See Exhibit "G" to the Declaration of David M. Goodrich, filed herewith;

     d.    After the filing of the Bankruptcy Petition, the Debtor filed another civil lawsuit for a potential claim/asset that is not scheduled in the Debtor's Bankruptcy Schedules; See Exhibit "H" to the Declaration of David M. Goodrich, filed herewith;

     e.    The Debtor's wife filed a petition for dissolution of marriage, but no decree of separation or divorce has been issued in that matter;  See Exhibit "I" to the Declaration of David M. Goodrich, filed herewith;

     f.    At his 341(a) examination, the Debtor claimed that he was never legally married, yet the Debtor indicates in his tax returns that he is married, affirmatively asserts that he's married in a recently filed lawsuit, and is the respondent to a petition for dissolution of marriage;  See Declaration of David M. Goodrich, filed herewith;

     g.    The Debtor discloses in his Schedule I that he is "separated" from his wife and paying alimony and child support, yet the Debtor lives at the Residence and no decree of separation or dissolution of marriage has been issued; See Exhibits "I" and "J" to the Declaration of David M. Goodrich, filed herewith;

     h.    The Debtor contends that he paid over $8,000 (the source of this money is not known) in pre-petition debt owed to two creditors after his filed his Bankruptcy Petition;  See Debtor's Motion to Dismiss at Page 2, Lines 1-2;

i.       Three cars are regularly seen at the Property, but no vehicles are scheduled in the Debtor's Bankruptcy Schedules;   See Declaration of David M. Goodrich, filed herewith;

j.       The Debtor paid $10,000 to the 2176 Pacific Homeowners Association within 3 months of the bankruptcy case filing and that payment is not disclosed on the Debtor's Statement of Financial Affairs;   See Exhibit "K" to the Declaration of David M. Goodrich, filed herewith;

k.       A creditor of the Debtor has obtained an order from the civil court finding the Debtor to be a vexatious litigant; See Exhibit "L" to Declaration of David M. Goodrich; and

l.       At least two creditors do not consent to the dismissal of this bankruptcy case and both creditors are not listed in the Debtor's schedules.   See Declaration of David M. Goodrich, filed herewith.

m.       An ownership interest in real property located in Manteca, California was transferred to the Debtor on July 5, 2011 – twenty-two days before the filing of this bankruptcy case.  See Exhibit "P" to the Declaration of David M. Goodrich, filed herewith;

III.    Argument

A.    Standard for Voluntary Dismissal of a Chapter 7 Case by a Debtor.

The Debtor seeks to voluntarily dismiss his pending Chapter 7 case as a result of, *inter alia*, post-petition payments to scheduled creditors, which purportedly paid such creditors in full, and his claim that Kenny Tan is not a creditor.

"Dismissal of a voluntary chapter 7 case is governed by §707, which states that a court may dismiss a chapter 7 case for cause[.]"  In re Bartee, 317 B.R. 362, 366 (9th Cir. 2004).  "A debtor must establish cause to obtain dismissal of a voluntary chapter 7 case."  Id. at  366, citing: In re Leach, 130 B.R. 855, 857 n. 5 (9th Cir. BAP 1991), In re Stephenson, 262 B.R. 871, 873 (Bankr. W.D. Okla. 2001); 3 Norton Bankruptcy Law and Practice 2d §67:4 (2004).

"The term "for cause" is defined in the Bankruptcy Code only by way of a list of three examples – unreasonable delay prejudicial to creditors, nonpayment of filing fees, and not filing schedules – that is plainly incomplete."  In re Hickman, 384 B.R. 832, 840 (9th Cir. BAP 2008).  "If there is no specific Bankruptcy Code provision that addresses the asserted 'cause,' the question

becomes whether the totality of circumstances amount to §707(a) 'cause.' In re Hickman, 384 B.R. 832, 840 (9th Cir. BAP 2008), citing In re Sherman, 491 F.3d 948, 970; In re Leach, 130 B.R. 855, 856 (9th Cir. BAP 1991).

"A case will not be dismissed on the motion of a debtor if such dismissal would cause 'some plain legal prejudice' to a creditor." In re Hickman, 384 B.R. 832, 840 (9th Cir. BAP 2008), citing In re Int'l Airport Inn P'ship, 517 F.2d 510 (9th Cir. 1975) and noting In re Hall, 15 B.R. 913, 917 (9th Cir. BAP 1981) (Int'l Airport Inn P'ship remains good law under Bankruptcy Code).

As discussed below, the Debtor has not and cannot establish good "cause" for a dismissal of his bankruptcy case. In reality, the Debtor's actions dictate this bankruptcy case remain pending.

### 1. The Debtor Does Not Have an Absolute Right to Dismiss.

The Debtor seeks to dismiss his bankruptcy case based upon payment of two scheduled pre-petition creditors.

A Chapter 7 debtor does not have an absolute right to dismiss a case – a hearing upon noticed motion is required and a determination of "cause" found. CAL. PRAC. GUIDE: BANKRUPTCY (The Rutter Group 2009), Chapter 5, Section 5:2120, page 5(II) – 38.1, citing §707(a).

It is unclear from the Debtor's Motion to Dismiss if the Debtor believes he has an absolute right to dismiss his bankruptcy case upon application to the Court or if he grasps the requisite hoops that he must jump through to secure an order dismissing his case. It is clear from the Debtor's Motion to Dismiss, however, that the Debtor thinks the payment in full of scheduled debt (conjoined with the contention that Kenny Tran is not a creditor of the Debtor) is an important factor for the Court to consider in his request for dismissal of this case. Concededly, the existence or non-existence of unsecured debt is one component in the Court's review of the Debtor's request to dismiss his case, but it is not the only factor to be considered in the context of a Debtor's voluntary Motion to Dismiss under §707.

As will be discussed, not only has the Debtor failed establish that good cause exists to dismiss his case, but the facts and circumstances preceding and following the bankruptcy filing dictate the Debtor's case should remain pending to allow for asset administration and to ensure the integrity of the bankruptcy process is served.

2. <u>There Are No Grounds for Dismissal Under 707(a).</u>

The Debtor's Motion to Dismiss seeks a dismissal his bankruptcy case under, presumably, §707(a).

11 U.S.C. §707(a) provides:

> a) The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including—
>
> > (1) unreasonable delay by the debtor that is prejudicial to creditors;
> >
> > (2) nonpayment of any fees or charges required under chapter 123 of title 28; and
> >
> > (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521 (a), but only on a motion by the United States trustee.

In this case, the Debtor has not provided evidence that any of the enumerated grounds for dismissal exist under §707(a).  In fact, the Debtor's case is relatively new (hence there cannot be any real unreasonable delay in prosecuting the case), the Debtor paid the required filing fees, and the Debtor has filed his bankruptcy schedules. See Exhibit "M" to the Declaration of David M. Goodrich. As a result, the statutory grounds for dismissal under §707(a) are not present in this case.

The enumerated grounds for dismissal under Section 707(a) are, however, not exclusive and the Debtor may seek dismissal for "cause." See <u>In re Bartee</u>, 317 B.R. 362, 366 (9th Cir. 2004); <u>In re Leach</u>, 130 B.R. 855, 857 n. 5 (9th Cir. BAP 1991), <u>In re Stephenson</u>, 262 B.R. 871, 873 (Bankr. W.D. Okla. 2001).

3. <u>The Debtor Fails to Demonstrate that Good Cause Exists to</u>
<u>Dismiss this Case.</u>

The Debtor's Motion offers factual contentions[2] that the Debtor alleges are sufficient grounds

---

[2] It should be noted that the Debtor's Motion is replete with evidence supporting his contentions and is missing the mandatory declaration required under Local Bankruptcy Rule 1071-2(f)(1).  A separate pleading with objections to the Debtor's evidence proffered in the Debtor's Motion to Dismiss is filed herewith.

7

1 | for dismissal of his bankruptcy case.

2 | As noted above, the Court may dismiss the Debtor's case for "cause." In re Bartee, 317 B.R.

3 | 362, 366 (9th Cir. 2004); In re Leach, 130 B.R. 855, 857 n. 5 (9th Cir. BAP 1991), In re Stephenson,

4 | 262 B.R. 871, 873 (Bankr. W.D. Okla. 2001).

5 | "The term "for cause" is defined in the Bankruptcy Code only by way of a list of three

6 | examples – unreasonable delay prejudicial to creditors, nonpayment of filing fees, and not filing

7 | schedules – that is plainly incomplete." In re Hickman, 384 B.R. 832, 840 (9th Cir. BAP 2008). "If

8 | there is no specific Bankruptcy Code provision that addresses the asserted 'cause,' the question

9 | becomes whether the totality of circumstances amount to §707(a) 'cause.' In re Hickman, 384 B.R.

10 | 832, 840 (9th Cir. BAP 2008), citing In re Sherman, 491 F.3d 948, 970; In re Leach, 130 B.R. 855,

11 | 856 (9th Cir. BAP 1991).

12 | It can be gleaned from the Debtor's Motion to Dismiss that the Debtor has paid two of the

13 | three scheduled creditors post-petition and the Debtor presumably claims this to be "cause" to

14 | dismiss his bankruptcy case. It also appears that the Debtor believes Kenny Tan to be a lien holder of

15 | some sort thereby stripping Mr. Tan of any claim that a debt is owed to him.  The remainder of the

16 | Debtor's argument is nonsensical, inflammatory, riddled with innuendo and supposition, and not

17 | relevant herein.[3] The issue of remaining debt, however, requires discussion.

18 | The Debtor appears to argue that no "debt" (which he claims is defined under the Federal

19 | Fair Debt Collection Practices Act) remains and therefore the bankruptcy case should be dismissed.

20 | Under 11 U.S.C. §101(12), the term "debt" is defined as: "…liability on a claim."

21 | Without delving into the curious source of payment recently made by the Debtor to the

22 | creditors holding a whopping $8,783.57 in pre-petition debt, it is noteworthy that the Debtor's

23 | payment of two credit card debt does not result in payment on all debt owed by the Debtor.  In

24 | reality, the Debtor owes a "debt" to Kenny Tan.  Moreover, the Debtor owes a "debt" to the 2176

25 | Pacific Homeowners Association and/or the insurance company that defended the 2176 Pacific

26 | Homeowners Association in various lawsuits filed by the Debtor against the 2176 Pacific

27 |

28 | [3] The merits of the Debtor's unsupported allegations against the Trustee and Mr. Goodrich will be addressed in the context of the Trustee's Application to Employ the Goodrich Law Corporation as general counsel.

Homeowners Association as a result of judgment being entered against the Debtor.  The Debtor also may owe a "debt" to World Savings Bank, or any successor-in-interest, for conversion damages arising from Debtor's quitclaim of the Residence to his wife.

Further, 11 U.S.C. §101(5) defines, in pertinent part, the term "claim" as:

> "…right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured…"

The lawsuits filed against 2176 Pacific Homeowners Association and Southside Towing[4] by the Debtor present possible "claims" against the Debtor. These lawsuits, like the lawsuits that preceded them, may result in judgment for the 2176 Pacific Homeowners Association and Southside Towing, respectively.  If the Debtor does lose either or both cases, then the Debtor will be liable for court costs and the Debtor may also have liability for attorneys' fees.  Because of the possibility that a right to payment exists, the 2176 Pacific Homeowners Association and Southside Towing hold "claims" against the Debtor.

Because "debts" and "claims" remain against the Debtor and no other sufficient grounds are provided in support of the Debtor's Motion to Dismiss, the Debtor has failed to demonstrate that "cause" exists to dismiss his bankruptcy case and the Debtor's Motion to Dismiss should be denied.

### 4.  The Best Interest of the Debtor's Creditors Are Served by Allowing the Trustee to Administer this Case.

Because it appears that the Debtor still has pre-petition creditors and claimants, the Court should review this case for dismissal with the best interest of the Debtor's creditors in mind.

"The Chapter 7 Trustee has standing on behalf of nonconsenting unsecured creditors to object to a Chapter 7 debtor's dismissal motion where dismissal would be prejudicial to the creditors."  CAL. PRAC. GUIDE: BANKRUPTCY (The Rutter Group 2009), Chapter 5, Section 5:2124, page 5(II) – 38.4, citing Penick v. Tice, 732 F2d 1211, 1214 (4th Cir. 1984); In re Hall, 15 B.R. 913, 916 (9th Cir. 1981).

---

[4] The Debtor has scheduled this lawsuit in his Statement of Financial Affairs.  See Exhibit "K" to the Declaration of David M. Goodrich, filed herewith.

"Of primary concern under the 'totality of circumstances' test is whether, in light of both legal and equitable considerations, dismissal will cause 'some plain legal prejudice' to a creditor." CAL. PRAC. GUIDE: BANKRUPTCY (The Rutter Group 2009), Chapter 5, Section 5:2123, page 5(II) – 38.4, citing In re Hickman, 384 B.R. 832, 840 (9th Cir. BAP 2008), In re Leach, 130 BR 855, 857 (9th Cir. BAP 1991).  "The most important consideration when dismissing a case is whether dismissal is in the best interest of creditors.  In re Banks, 35 BR 59 (Bkrtcy. D. Md. 1983). Generally, if dismissal of the debtor's case results in prejudice to the creditors, it is not proper for the case to be dismissed unless all creditors affirmatively consent to the dismissal." In re Williams, 15 BR 655 (Distr. E.D. Mo. 1981), In re Kimball, 19 BR 300 (Bkrtcy. D. Maine 1982); Hammerer v. Internal Revenue Service, 18 BR 524 (Bkrtcy. E.D. Wisc. 1982); In re Hall, 15 B.R. 913 (9th Cir. 1981).

The Debtor has the burden of submitting evidence that proves a dismissal of this case will not be prejudicial to his creditors.  See In re Bartee, 317 B.R. 362, 365 (9th Cir. 2004).

In this case, the Trustee was duly appointed and no objection to the Trustee's appointment was received at the Debtor's initial §341(a) meeting of the creditors.  See Declaration of David M. Goodrich, filed herewith.  Because the Trustee is serving as the permanent Trustee in this matter, there is no dispute that the Trustee may challenge the Debtor's Motion to Dismiss.

Furthermore, more than one unsecured creditor of the Debtor does not consent to the dismissal of the Debtor's bankruptcy case.  In fact, the Trustee expects no less than two unsecured creditors to file objections to the dismissal of the Debtor's bankruptcy case and those objections will be filed before the hearing on the Debtor's Motion to Dismiss.  The objection of creditors to the dismissal of the Debtor's bankruptcy case is sufficient grounds to deny the Debtor's Motion.

Finally, additional grounds exist to deny the Debtor's Motion to Dismiss: the Debtor's prior acts in an effort to avoid payment to creditor Kenny Tan unequivocally demonstrate the Debtor has no true intent to repay Mr. Tan.  The timing of the Debtor's recordation of a quitclaim deed transferring his entire interest in the Residence to his wife cannot be a coincidence – the intent of the transfer seems rather axiomatic as a result of the timing of such transfer.  If, however, the Debtor is allowed to dismiss his case, then it is likely that creditors Kenny Tan, the 2176 Pacific Homeowners

1   Association and Southside Towing will all be subject to the Debtor's efforts to secrete assets and

2   further frustrate collection efforts.  On the other hand, the Trustee's administration of this case will

3   likely result in a fair, equal and expedient payment to the Debtor's creditors.  There is no guarantee

4   that left on his own accord, the Debtor will pay these creditors voluntarily - the Debtor has been less

5   than candid about his financial affairs, has avoided payment to Mr. Tan for more than two years and

6   cannot be counted on to repay his remaining creditors. As a result, it is in the best interest of the

7   Debtor's unsecured creditors that the Trustee administer the Debtor's bankruptcy case and the Court

8   should deny the Debtor's Motion to Dismiss.

9              5.   Based Upon the Egregious Conduct of the Debtor, the Debtor Should

10                  Not be Rewarded With a Dismissal of His Case.

11         As noted above, the Trustee and his counsel have discovered a litany of inconsistencies,

12  many suggesting Rule 9011 violations and the commission of perjury by the Debtor.

13         Where a debtor engages in fraudulent activity or is guilty of unclean hands, bankruptcy

14  courts have denied requests by the debtor to dismiss a Chapter 7 case.  See CAL. PRAC. GUIDE:

15  BANKRUPTCY (The Rutter Group 2009), Chapter 5, Section 5:2123, page 5(II) – 38.4, citing In re

16  Simmons, 200 F3d 738, 743 (11th Cir. 2000) [dismissal not warranted where it would allow debtor to

17  hinder creditors, secrete assets and further debtor's abuse of the system]; In re Mathis Ins. Agency,

18  Inc., 50 BR 482, 487 (BC ED AR 1985) [debtor engaged in fraudulent acts].

19         It is important to note that a debtor who files a bankruptcy case is granted the benefits of the

20  safeguards under the Bankruptcy Code, but burdened with the responsibilities imposed under the

21  Bankruptcy Code.  See In re Mathis, 50 BR 482, 487 (BC ED AR 1985), citing In re Martin, 30 B.R.

22  24, 26 (Bkrtcy. E.D. N.C. 1983).   Where debtors have shirked their responsibilities under the

23  Bankruptcy Code by seeking dismissal, courts have declined such requests.  See In re Mathis, 50 BR

24  482, 487 (BC ED AR 1985).   When, however a debtor's chapter 7 backfires, a debtor "…is not

25  entitled to escape by awarding himself a dismissal either by declining to perform his statutory duties

26  or by recanting the commitment to have debtor-creditor relations adjusted in equitable proceedings."

27  In re Hickman, 384 BR 832, 842 (9th Cir. BAP 2008).

28         Thus far, there are a variety of discrepancies in the Debtor's schedules that were not

                                           11

explained at the Debtor's 341(a) meeting as a result of the Debtor's failure to submit to examination. Some of these discrepancies are self-evident and demonstrate the Debtor has not accurately described his assets and expenses at the time he filed this case. Some of the other discrepancies require the Debtor's testimony and he's refused to submit for a full examination. The Debtor's conduct herein is the very type of abuse-and-reward system the <u>Simmons</u>, <u>Mathis</u>, <u>Martin</u> and <u>Hickman</u> cases seek to prevent – a debtor seeking to jump from an airplane after learning that it is on fire. To allow the Debtor to exit this case unscathed would: (1) allow for the perpetration of activities that appear to be fraudulent, (2) encourage the shirking responsibilities imposed upon him under the Bankruptcy Code, and (3) result in the creditors of the Debtor chasing the Debtor's assets for years to come.

Moreover, there are variety of assets and potential assets of the Debtor that were not disclosed by the Debtor. Reviewing the Debtor's Motion to Dismiss, it seems evident that the Debtor feels that he can pick and choose the debts that are included in his bankruptcy case. (See Debtor's Motion to Dismiss, Page 3, Lines 20-21 which states: "Sui mistakenly added Kenny Kean Tan onto the creditors list"). If the Debtor believes that only those creditors he elects to disclose are creditors that should be listed, then it's logical to assume the Debtor may also have elected to not disclose assets that he felt were not assets to include in the bankruptcy case. Regardless, the tangible evidence in this case yields the following: (1) the Debtor has failed to list his wife's assets in his case, (2) the Debtor's claimed expenses for alimony and child support (where no decree exists for the same) are in doubt, (3) the Debtor has concealed the existence of several lawsuits and claims, (4) real property was transferred into the Debtor's name 22 days before he filed this case and the Debtor did not schedule the real property in his bankruptcy case. These facts alone demonstrate the Debtor's intent to conceal assets and income of the Debtor and call into question the accuracy of the Debtor's bankruptcy petition and schedules. This type of conduct is an abuse of the bankruptcy process and the Debtor should not be granted a reprieve from civil or criminal prosecution.

It is also noteworthy that Schedule I reveals the Debtor earns $4,669.32 per month with monthly income "decreasing." The Debtor's Schedule J indicates that the Debtor's household expenditures are $1,513.62 more than the Debtor's income. In short, the Debtor is running his

household at a loss and admittedly insolvent. Because he is insolvent, the Debtor will be "judgment-proof" if this case is dismissed unless a creditor seeks to unwind the transfer of the Residence to the Debtor's wife. Avoiding a transfer, however, will require creditors to expend time and money with the outcome uncertain. On the other hand, the Trustee's pursuit of this transfer will reduce the risk and costs of a fraudulent transfer lawsuit by the Debtor's creditors. In short, the dismissal of this case provides no benefit to the Debtor's creditors. Instead, the administration of this case will allow for a meaningful dividend to be paid to the Debtor's creditors if the Trustee is successful in his lawsuit against the Debtor's wife.

> 6. <u>Should the Court Elect to Grant the Debtor's Motion to Dismiss</u>
> <u>The Debtor Should be Ordered to Pay the Trustee's Fees and</u>
> <u>Expenses Before the Order Dismissing the Debtor's Case is Entered.</u>

In the even the Court agrees with the Debtor's position and decides to dismiss this proceeding, the Court should require the Debtor pay the Trustee and his professionals their fees and costs incurred herein before entering an order dismissing this case.

The Court may condition a Debtor's request for dismissal upon payment of all fees and costs incurred by the trustee and his professionals. Local Bankruptcy Rule 1017-2(f)(3); and See <u>In re Gallman</u>, 6 BR 1, 2 (Bankr. ND GA 1980); <u>In re Jackson</u>, 7 BR 616, 618 (Bankr. ED TN 1980); <u>In re Wolfe</u>, 12 BR 686, 687 (Bankr. SD OH 1981).

In this case, the Trustee has filed a Complaint to Avoid a Fraudulent Transfer against the Debtor's Wife Pei-yu Yang. The Trustee also anticipates filing an Opposition to the Debtor's Motion to Dismiss the Adversary Complaint before the hearing on this Motion as well as the preparation of responsive pleadings to the Debtor's Opposition to the Trustee's Application to Employ the Goodrich Law Corporation as General Counsel. Further, Mr. Goodrich incurred substantial fees waiting more than 4 hours for the Debtor to return to his original 341(a) meeting of creditors. Accordingly, significant fees and costs have been incurred by the Trustee and payment of these fees and costs by the Debtor should be a condition of dismissal of this case, in the event the Court decides that dismissal is appropriate.

/ / /

IV.     Conclusion

Based upon the foregoing, the Court should deny the Debtor's Motion to Dismiss his bankruptcy case.  In the Alternative, the Court should condition dismissal of this case upon payment of the Trustee's fees and costs by the Debtor.

DATED:  October 17, 2011                    GOODRICH LAW CORPORATION

                                                        /s/ David M. Goodrich
                                            By:_____
                                                    David M. Goodrich
                                                    Proposed General Counsel for Chapter 7 Trustee
                                                    for the Bankruptcy Estate of Yan Sui

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

870 Roosevelt Ave., Irvine, CA 92620

The foregoing document described OPPOSITION OF RICHARD A. MARSHACK, CHAPTER 7 TRUSTEE, TO THE DEBTOR'S MOTION TO DISMISS CHAPTER 7 BANKRUPTCY CASE  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On <u>October 17, 2011</u> I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

Richard A Marshack (TR)     pkraus@marshackhays.com, rmarshack@ecf.epiqsystems.com
Marisol A Nagata     cdcaecf@bdfgroup.com
Ramesh Singh     claims@recoverycorp.com
United States Trustee (SA)     ustpregion16.sa.ecf@usdoj.gov
Darlene C Vigil     cdcaecf@bdfgroup.com

☐  Service information continued on attached page

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On <u>October 17, 2011</u> I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.*

<u>Debtor:</u>
Yan Sui
2176 Pacific Ave. #C
Costa Mesa, CA 92627

Yan Sui
PO Box 7561
Huntington Beach, CA 92615

<u>Judge's Copy:</u>
Hon. Robert Kwan
United States Bankruptcy Court - Central District of California
411 West Fourth Street, Suite 5165
Santa Ana, CA 92701-4593

☐  Service information continued on attached page

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on <u>October 17, 2011</u> I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  *Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.*

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| October 17, 2011 | David M. Goodrich | /s/ David M. Goodrich |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

1

Exh. List 7

1  DAVID M GOODRICH (State Bar No. 208675)
   dgoodrich@goodlawcorp.com
2  GOODRICH LAW CORPORATION
   870 Roosevelt Ave.
3  Irvine, CA 92620
   Telephone: (949) 709-2662
4  Facsimile: (949) 340-9746

5  General Counsel for Former Chapter 7 Trustee
   Richard A. Marshack

6

7

8                  UNITED STATES BANKRUPTCY COURT

9          CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

10

11  In re                          Case No. 8:11-bk-20448-RK

12  YAN SUI,                       Chapter 7

13              Debtor.            CONSOLIDATED OPPOSITION OF
                                   CREDITORS RICHARD A. MARSHACK,
14                                 FORM CHAPTER 7 TRUSTEE AND THE
                                   GOODRICH LAW CORPORATION, TO
15                                 THE DEBTOR'S MOTION TO DISMISS
                                   CHAPTER 13 BANKRUPTCY CASE
16
                                   Hearing Date and Time:
17                                 Date:    April 12, 2012
                                   Time:    9:00 a.m.
18                                 Ctrm:    5D
                                   Floor:   5th
19

20

21

22        Respondents Richard A. Marshack, former Chapter 7 Trustee of the Bankruptcy Estate of

23  Yan Sui, and the Goodrich Law Corporation, a creditor of the Bankruptcy Estate, hereby file this

24  consolidated Opposition to the Motion to Dismiss the Chapter 13 case filed by Debtor Yan Sui

25  ("Debtor") as follows:

26  / / /

27  / / /

28  / / /

                                    1

I.    <u>Background Facts.</u>

On July 27, 2011, Yan Sui (the "Debtor") filed a voluntary petition under Chapter 7 of Title 11 of the United States Code.  See Exhibit "A" to the Declaration of David M. Goodrich, filed herewith.

On the same day, Richard A. Marshack was appointed as the interim Chapter 7 Trustee ("Trustee").  See Exhibit "A" to the Declaration of David M. Goodrich, filed herewith.

Shortly after appointment, the Trustee learned that the Debtor was, or used to be, on title to real property located at 2176 Pacific Ave. #C, Costa Mesa, California 92627 (the "Residence") and that the Debtor and his wife likely held $300,000 or more in equity in the Residence.   The Trustee also learned that the Debtor was a Plaintiff in a lawsuit filed against the 2176 Pacific Homeowners Association for the community in which the Residence is located.  The Trustee also discovered that the Debtor resided at the Residence and co-habitated with his wife Pei-yu Yang (although he claims in Schedule I that he is "separated").  According to Debtor's Bankruptcy Schedules, the Debtor did not list any assets of his wife.  The Debtor also did not list most of his pending lawsuits.

On or about August 22, 2011, Mr. Marshack retained GLC to investigate potential assets of the Debtor, including the transaction involving the residence.

On November 4, 2011, GLC was approved as Trustee's general counsel.   See Exhibit "B" to the Declaration of David M. Goodrich, filed herewith.

After conducting several interviews regarding the Debtor and potential assets (including a brief and incomplete examination of the Debtor at his original 341(a) meeting of creditors), Mr. Goodrich learned the following:

> o   On the same date the Orange County Superior Court confirmed an arbitration award of Kenny Tran, the Debtor quitclaimed the Property to his wife Pei-yu Yang for no value;
>
> o   The Debtor is a Plaintiff in several lawsuits which are not disclosed in the Debtor's Schedules;
>
> o   After the filing of the Bankruptcy Petition, the Debtor continued to prosecute disclosed and undisclosed litigation;

2

- After the filing of the Bankruptcy Petition, the Debtor filed another civil lawsuit for a potential claim/asset that was not scheduled in the Debtor's Bankruptcy Schedules;

- The Debtor's wife filed a petition for dissolution of marriage, but no decree of separation or divorce was issued in that matter before the bankruptcy was filed;

- At his 341(a) examination, the Debtor contended that he was never legally married, yet the Debtor indicates in his tax returns that he is married, affirmatively asserts that he's married in a recently post-petition filed lawsuit, and was the respondent to a petition for dissolution of marriage;

- The Debtor discloses in his Schedule I that he is "separated" from his wife and paying alimony and child support, yet the Debtor lives at the Residence and no decree of separation or dissolution of marriage had been issued at the time of bankruptcy filing;

- Three cars are regularly seen at the Property, but no vehicles are scheduled in the Debtor's Bankruptcy Schedules; and

- The Debtor paid $10,000 to the 2176 Pacific Homeowners Association within 3 months of the bankruptcy case filing and that payment is not disclosed on the Debtor's Statement of Financial Affairs.

On October 11, 2011, Debtor filed a motion to dismiss the bankruptcy case after removing Kenny Kean Tan from creditor's list. See Exhibit "A" to the Declaration of David M. Goodrich, filed herewith.

On October 17, 2011, the Trustee filed an Opposition to the Debtor's Motion to Dismiss. See Exhibit "A" to the Declaration of David M. Goodrich, filed herewith.

On November 7, 2011, the Court entered an order denying the motion by Debtor to dismiss the bankruptcy case. See Exhibit "A" to the Declaration of David M. Goodrich, filed herewith.

On November 22, 2011, the Debtor was examined at a continued meeting of creditors by Mr. Goodrich. In the examination, the Debtor disclosed, *inter alia*, that (1) the Debtor acquired title in real property in Suzhou, China pre-petition and such interest is not listed in the Debtor's schedules, (2) the Debtor borrowed money post-petition to pay off pre-petition creditors, (3) a 2001 Isuzu Trooper was transferred into the Debtor's name post-petition, (4) the Debtor failed to list

3

mortgage/secured debt owed pre-petition, and (5) the Debtor failed to list several of the pending lawsuits he was a party to in his schedules.

On January 6, 2012, the Debtor's two, concurrently filed appeals relating to an order to employ Goodrich Law Corporation as General Counsel and the order denying the Debtor's request for dismissal of the bankruptcy case were dismissed. See Exhibit "A" to the Declaration of David M. Goodrich, filed herewith.

On January 9, 2012, Debtor filed a motion to convert the case from Chapter 7 to Chapter 13. See Exhibit "A" to the Declaration of David M. Goodrich, filed herewith.

On January 30, 2012, the Court entered an order converting the case to Chapter 13. See Exhibit "A" to the Declaration of David M. Goodrich, filed herewith.

On March 13, 2012, the Debtor attended his initial §341(a) for the Chapter 13 case. See Declaration of David M. Goodrich, filed herewith. At his meeting of creditors, the Debtor testified that he requested the Court convert his case to Chapter 13 so that he could dismiss his bankruptcy case. See Declaration of David M. Goodrich, filed herewith.

The Debtor now seeks, for the second time, an Order dismissing his bankruptcy case.

II.     Argument

    A.     Standard for Voluntary Dismissal of a Chapter 13 Case

        That Has Been Converted from Chapter 7.

The Debtor seeks to voluntarily dismiss his pending Chapter 13 case after it was converted from Chapter 7.

Under 11 U.S.C. §1307(b), a debtor may only dismiss a Chapter 13 case after a hearing if the case was previously converted from Chapter 7 under §706. See §1307(b).

As debtor's right to voluntarily dismiss a converted Chapter 13 case under §1307(b) is not absolute. See In re Rosson, 545 F.3d 764, 773-774 (9th Cir. 2008). Instead, the bankruptcy court has discretion to deny dismissal under circumstances that indicate bad faith conduct by the debtor or to prevent an abuse of the bankruptcy process. Id. 773-774.

The Court may dismiss the Debtor's case for "cause." In re Bartee, 317 B.R. 362, 366 (9th Cir. 2004); In re Leach, 130 B.R. 855, 857 n. 5 (9th Cir. BAP 1991), In re Stephenson, 262 B.R. 871,

4

873 (Bankr. W.D. Okla. 2001).

"The term "for cause" is defined in the Bankruptcy Code only by way of a list of three examples – unreasonable delay prejudicial to creditors, nonpayment of filing fees, and not filing schedules – that is plainly incomplete." In re Hickman, 384 B.R. 832, 840 (9th Cir. BAP 2008). "If there is no specific Bankruptcy Code provision that addresses the asserted 'cause,' the question becomes whether the totality of circumstances amount to §707(a) 'cause.' In re Hickman, 384 B.R. 832, 840 (9th Cir. BAP 2008), citing In re Sherman, 491 F.3d 948, 970; In re Leach, 130 B.R. 855, 856 (9th Cir. BAP 1991).

It can be gleaned from the Debtor's Motion to Dismiss that the Debtor's main contention is that he has been damaged by the actions of the Chapter 7 Trustee and his counsel in the course of their investigation of the assets of the Debtor and attempt to recover and administer assets of the Debtor. The Debtor's contentions, however, side-step the issue at hand: should the Debtor remain in bankruptcy so that his creditors are ensured payment – whether in a Chapter 13 reorganization or a Chapter 7 liquidation – or should the Debtor's wishes be granted thereby sanctioning the egregious conduct of the Debtor described herein? Because the Debtor's acts have been in bad faith and it is in the best interests of the creditors of the Debtor's bankruptcy estate to re-convert the Debtor's case to Chapter 7, the Court should deny the Debtor's Motion and re-convert this case to Chapter 7.

1. The Debtor's Sole Purpose of Conversion to Chapter 13
Was to Secure a Dismissal of this Case in Bad Faith.

In his Motion, the Debtor seeks a dismissal of his case based primarily upon perceived damage caused to him by the Trustee and his counsel during the administration of the Debtor's Chapter 7 case.[1]

A request for dismissal of a Chapter 13 case may be denied by the Bankruptcy Court where bad faith conduct and/or abuse of process are present. See In re Rosson, 545 F.3d 764, 773-774 (9th Cir. 2008).

---

[1] The Debtor's allegations make sweeping assumptions that are not supported. For example, the Debtor may never have been granted a default judgment based upon the factual allegations made in his complaint. Because these allegations are irrelevant to the instant motion, they will not be addressed herein.

5

Because the Debtor seeks to dismiss a Chapter 13 case that originated under Chapter 7, the Court should analyze the grounds for granting the Debtor's Motion under the pertinent case law for Chapter 7 dismissal.

Where a debtor engages in fraudulent activity or is guilty of unclean hands, bankruptcy courts have denied requests by the debtor to dismiss a Chapter 7 case.  See CAL. PRAC. GUIDE: BANKRUPTCY (The Rutter Group 2009), Chapter 5, Section 5:2123, page 5(II) – 38.4, citing In re Simmons, 200 F3d 738, 743 (11th Cir. 2000) [dismissal not warranted where it would allow debtor to hinder creditors, secrete assets and further debtor's abuse of the system]; In re Mathis Ins. Agency, Inc., 50 BR 482, 487 (BC ED AR 1985) [debtor engaged in fraudulent acts].

It is important to note that a debtor who files a bankruptcy case is granted the benefits of the safeguards under the Bankruptcy Code, but burdened with the responsibilities imposed under the Bankruptcy Code.  See In re Mathis, 50 BR 482, 487 (BC ED AR 1985), citing In re Martin, 30 B.R. 24, 26 (Bkrtcy. E.D. N.C. 1983).   Where debtors have shirked their responsibilities under the Bankruptcy Code by seeking dismissal, courts have declined such requests.  See In re Mathis, 50 BR 482, 487 (BC ED AR 1985).   When, however a debtor's chapter 7 backfires, a debtor "…is not entitled to escape by awarding himself a dismissal either by declining to perform his statutory duties or by recanting the commitment to have debtor-creditor relations adjusted in equitable proceedings." In re Hickman, 384 BR 832, 842 (9th Cir. BAP 2008).

During the Debtor's initial §341(a) meeting of creditors set in this case, the Debtor admitted that his sole purpose for conversion from Chapter 7 to Chapter 13 was to have his case dismissed. Further, the former Chapter 7 Trustee discovered a litany of inconsistencies (suggesting multiple Rule 9011 violations and the commission of perjury by the Debtor) during his investigation of the Debtor's case which in Chapter 7 – many of which were acknowledged by the Debtor and never corrected despite an acknowledgment of such errors and omissions.  Moreover, there are a variety of discrepancies in the Debtor's schedules that have been acknowledged by the Debtor as erroneous, yet the Debtor's schedules remain inaccurate and incomplete.  Nevertheless, the Debtor seeks to dismiss his case even though he has refused to disclose assets and yield to the former Chapter 7 Trustee's efforts to administer his case.

1      The Debtor's conduct herein is the very type of abuse-and-reward system the <u>Simmons</u>,

2  <u>Mathis</u>, <u>Martin</u> and <u>Hickman</u> cases seek to prevent – a debtor seeking to jump from an airplane after

3  learning that it is on fire. To allow the Debtor to exit this case unscathed would: (1) allow for the

4  perpetration of activities that appear to be fraudulent, (2) encourage the shirking responsibilities

5  imposed upon him under the Bankruptcy Code, and (3) result in the creditors of the Debtor chasing

6  the Debtor's assets for years to come.

7      For these reasons alone, the Court should deny the Debtor's Motion to Dismiss and, as

8  discussed below, re-convert the Debtor's case to Chapter 7.

9          2.  <u>The Best Interest of the Debtor's Creditors to Re-Convert the</u>

10           <u>Case to Chapter 7 and Allow the Trustee to Administer this Case.</u>

11     Because there remain creditors of the Debtor's Bankruptcy Estate, the Court should review

12 this case for dismissal with the best interest of the Debtor's creditors in mind.

13     Upon a showing of good cause, the Court may convert or dismiss a Chapter 13 case to

14 Chapter 7 if it is in the best interest of the creditors of the Bankruptcy Estate.  See CAL. PRAC.

15 GUIDE: BANKRUPTCY (The Rutter Group 2009), Chapter 5, Section 5:1885, page 5(II) – 19,

16 citing §1307(c).

17     "Of primary concern under the 'totality of circumstances' test is whether, in light of both

18 legal and equitable considerations, dismissal will cause 'some plain legal prejudice' to a creditor."

19 CAL. PRAC. GUIDE: BANKRUPTCY (The Rutter Group 2009), Chapter 5, Section 5:2123, page

20 5(II) – 38.4, citing  <u>In re Hickman</u>, 384 B.R. 832, 840 (9th Cir. BAP 2008), <u>In re Leach</u>, 130 BR 855,

21 857 (9th Cir. BAP 1991).  "The most important consideration when dismissing a case is whether

22 dismissal is in the best interest of creditors.  In re Banks, 35 BR 59 (Bkrtcy. D. Md. 1983).

23 Generally, if dismissal of the debtor's case results in prejudice to the creditors, it is not proper for the

24 case to be dismissed unless all creditors affirmatively consent to the dismissal." <u>In re Williams</u>, 15

25 BR 655 (Distr. E.D. Mo. 1981), <u>In re Kimball</u>, 19 BR 300 (Bkrtcy. D. Maine 1982); <u>Hammerer v.</u>

26 <u>Internal Revenue Service</u>, 18 BR 524 (Bkrtcy. E.D. Wisc. 1982); <u>In re Hall</u>, 15 B.R. 913 (9th Cir.

27 1981).

28

1   The Debtor has the burden of submitting evidence that proves a dismissal of this case will not

2   be prejudicial to his creditors.  See In re Bartee, 317 B.R. 362, 365 (9th Cir. 2004).

3   In this case, the Debtor's prior acts unequivocally demonstrate the Debtor's efforts to avoid

4   payment to creditor Kenny Tan.  In particular, the timing of the Debtor's recordation of a quitclaim

5   deed transferring his entire interest in the Residence to his wife on the same day that Mr. Tan's

6   arbitration award was confirmed cannot be a coincidence – the intent of the transfer seems rather

7   axiomatic – avoidance of judgment collection.  If, however, the Debtor is allowed to dismiss his

8   case, then it is likely that creditor Kenny Tan will remain subject to the Debtor's efforts to secrete

9   assets and further frustrate collection efforts.  On the other hand, the Trustee's administration of this

10  case should result in a fair, equal and expedient payment to the Debtor's creditors.  There is no

11  guarantee that left on his own accord, the Debtor will pay these creditors voluntarily - the Debtor has

12  been less than candid about his financial affairs, has avoided payment to Mr. Tan for more than two

13  years and cannot be counted on to repay his remaining creditors. As a result, it is in the best interest

14  of the Debtor's unsecured creditors that the Trustee administer the Debtor's bankruptcy case and the

15  Court should deny the Debtor's Motion to Dismiss.

16  Furthermore, it is uncertain, yet possible that the Debtor has failed to list other creditors.  For

17  example, the Debtor refuses to acknowledge that the HOA association that he has been litigating

18  against for years is a creditor or potential creditor of the Bankruptcy Estate.  In fact, the HOA has

19  incurred significant attorney's fees and costs and is on the brink of a finality which will entitle it to

20  costs and may open the door for fees.

21  Accordingly, the Court should re-convert this case to Chapter 7 because it is in the best

22  interest of the Debtor's creditors to allow the former Chapter 7 Trustee to recover and administer

23  assets of the Debtor's Bankruptcy Estate to ensure a repayment is made to the Debtor's creditors.

24          3.  Should the Court Elect to Grant the Debtor's Motion to Dismiss

25              The Debtor Should be Ordered to Pay the Trustee's Fees and

26              Expenses Before the Order Dismissing the Debtor's Case is Entered.

27  In the even the Court agrees with the Debtor's position and decides to dismiss this

28  proceeding, the Court should require the Debtor pay the Trustee and his professionals their fees and

1   costs incurred herein before entering an order dismissing this case.

2        The Court may condition a Debtor's request for dismissal upon payment of all fees and costs

3   incurred by the trustee and his professionals. Local Bankruptcy Rule 1017-2(f)(3); and See  In re

4   Gallman, 6 BR 1, 2 (Bankr. ND GA 1980); In re Jackson, 7 BR 616, 618 (Bankr. ED TN 1980); In

5   re Wolfe, 12 BR 686, 687 (Bankr. SD OH 1981).

6        In this case, significant fees and costs have been incurred by the former Chapter 7 Trustee

7   and his professionals and payment of these fees and costs by the Debtor should be a condition of

8   dismissal of this case, in the event the Court decides that dismissal is appropriate.

9       III.    Conclusion

10       Based upon the foregoing, the Court should deny the Debtor's Motion to Dismiss his

11   bankruptcy case and re-convert this case to Chapter 7.  In the Alternative, the Court should condition

12   dismissal of this case upon payment of the Trustee's fees and costs by the Debtor.

13

14   DATED:  March 28, 2012           GOODRICH LAW CORPORATION

15                           /s/ David M. Goodrich

16                By:_____

17                    David M. Goodrich
                     General Counsel for former Chapter 7 Trustee
                     for the Bankruptcy Estate of Yan Sui

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

870 Roosevelt Ave., Irvine, CA 92620

The foregoing document described  CONSOLIDATED OPPOSITION OF CREDITORS RICHARD A. MARSHACK, FORM CHAPTER 7 TRUSTEE AND THE GOODRICH LAW CORPORATION, TO THE DEBTOR'S MOTION TO DISMISS CHAPTER 13 BANKRUPTCY CASE  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On March 28, 2012  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

Amrane (SA) Cohen (TR)    efile@ch13ac.com
David M Goodrich    dgoodrich@goodlawcorp.com
Richard A Marshack (TR)    pkraus@marshackhays.com, rmarshack@ecf.epiqsystems.com
Marisol A Nagata    cdcaecf@bdfgroup.com
Christina J O    christinao@mclaw.org
Kelly M Raftery    bknotice@mccarthyholthus.com, kraftery@mccarthyholthus.com
Ramesh Singh    claims@recoverycorp.com
United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
Darlene C Vigil    cdcaecf@bdfgroup.com                 ☐   Service information continued on attached page

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On March 28, 2012 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

Debtor:
Yan Sui
2176 Pacific Ave. #C
Costa Mesa, CA 92627

Yan Sui
PO Box 7561
Huntington Beach, CA 92615

Judge's Copy:
Hon. Robert Kwan
United States Bankruptcy Court - Central District of California
411 West Fourth Street, Suite 5165
Santa Ana, CA 92701-4593
                                                          ☐   Service information continued on attached page

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served)**:** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ___ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

                                                          ☐   Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| March 28, 2012 | David M. Goodrich | /s/ David M. Goodrich |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

1

Exh. List 8

DAVID M GOODRICH (State Bar No. 208675)
dgoodrich@goodlawcorp.com
GOODRICH LAW CORPORATION
870 Roosevelt Ave.
Irvine, CA 92620
Telephone: (949) 709-2662
Facsimile: (949) 340-9746

General Counsel for Chapter 7 Trustee
Richard A. Marshack

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>YAN SUI,<br><br>                   Debtor. | Case No. 8:11-bk-20448-CB<br><br>Chapter 7<br><br>CONSOLIDATED OPPOSITION OF RICHARD A. MARSHACK, CHAPTER 7 TRUSTEE AND CREDITOR GOODRICH LAW CORPORATION TO THE DEBTOR'S MOTION TO DISMISS CHAPTER 7 BANKRUPTCY CASE<br><br><u>Hearing Date and Time:</u><br>Date:   August 21, 2012<br>Time:   2:30 p.m.<br>Ctrm:  5D<br>Floor:  5th |

      Respondents Richard A. Marshack, Chapter 7 Trustee of the Bankruptcy Estate of Yan Sui, and the Goodrich Law Corporation ("GLC"), a creditor of the Bankruptcy Estate, hereby file this consolidated Opposition to the Motion to Dismiss the Chapter 7 case filed by Debtor Yan Sui ("Debtor") as follows:

/ / /

/ / /

1

I.      Background Facts.

On July 27, 2011, Yan Sui (the "Debtor") filed a voluntary petition under Chapter 7 of Title 11 of the United States Code.  See Exhibit "A" to the Declaration of David M. Goodrich, filed herewith.

On the same day, Richard A. Marshack was appointed as the interim Chapter 7 Trustee ("Trustee").  See Exhibit "A" to the Declaration of David M. Goodrich, filed herewith.

Shortly after appointment, the Trustee learned that the Debtor was, or used to be, on title to real property located at 2176 Pacific Ave. #C, Costa Mesa, California 92627 (the "Residence") and that the Debtor and his wife likely held $300,000 or more in equity in the Residence.   The Trustee also learned that the Debtor was a Plaintiff in a lawsuit filed against the 2176 Pacific Homeowners Association for the community in which the Residence is located.  The Trustee also discovered that the Debtor resided at the Residence and co-habitated with his wife Pei-yu Yang (although he claims in Schedule I that he is "separated").  According to Debtor's Bankruptcy Schedules, the Debtor did not list any assets of his wife.  The Debtor also did not list most of his pending lawsuits.  See Exhibits "A" through "F" to the Declaration of David M. Goodrich, filed herewith.

On or about August 22, 2011, Mr. Marshack retained GLC to investigate potential assets of the Debtor, including the transaction involving the residence.

On November 4, 2011, GLC was approved as Trustee's general counsel.   See Exhibit "A" to the Declaration of David M. Goodrich, filed herewith.

After conducting several interviews regarding the Debtor and potential assets (including a brief and incomplete examination of the Debtor at his original 341(a) meeting of creditors), Mr. Goodrich learned the following:

    o   On the same date the Orange County Superior Court confirmed an arbitration award of Kenny Tran, the Debtor quitclaimed the Property to his wife Pei-yu Yang for no value, see Exhibits "B" and "C" to the Declaration of David M. Goodrich, filed herewith.;

    o   The Debtor is a Plaintiff in several lawsuits which are not disclosed in the Debtor's Schedules; See Exhibit "G" to the Declaration of David M. Goodrich, filed herewith.

2

- o After the filing of the Bankruptcy Petition, the Debtor continued to prosecute disclosed and undisclosed litigation;

- o After the filing of the Bankruptcy Petition, the Debtor filed another civil lawsuit for a potential claim/asset that was not scheduled in the Debtor's Bankruptcy Schedules;

- o The Debtor's wife filed a petition for dissolution of marriage, but no decree of separation or divorce was issued in that matter before the bankruptcy was filed; See Exhibit "H" to the Declaration of David M. Goodrich, filed herewith;

- o At his 341(a) examination, the Debtor contended that he was never legally married, yet the Debtor indicates in his tax returns that he is married, affirmatively asserts that he's married in a recently post-petition filed lawsuit, and was the respondent to a petition for dissolution of marriage;

- o The Debtor discloses in his Schedule I that he is "separated" from his wife and paying alimony and child support, yet the Debtor lives at the Residence and no decree of separation or dissolution of marriage had been issued at the time of bankruptcy filing;

- o Three cars are regularly seen at the Property, but no vehicles are scheduled in the Debtor's Bankruptcy Schedules;

- o The Debtor paid $10,000 to the 2176 Pacific Homeowners Association within 3 months of the bankruptcy case filing and that payment is not disclosed on the Debtor's Statement of Financial Affairs; See Exhibit "I" to the Declaration of David M. Goodrich, filed herewith; and

- o The Debtor received an interest in real property located in China pre-petition. The Debtor's interest, the address of the property and the details of the transaction have not been disclosed in the Debtor's Schedules or Statement of Financial Affairs.

On October 11, 2011, Debtor filed a motion to dismiss the bankruptcy case after removing Kenny Kean Tan from creditor's list. See Exhibit "A" to the Declaration of David M. Goodrich, filed herewith.

On October 17, 2011, the Trustee filed an Opposition to the Debtor's Motion to Dismiss. See Exhibit "A" to the Declaration of David M. Goodrich, filed herewith.

3

On November 7, 2011, the Court entered an order denying the motion by Debtor to dismiss the bankruptcy case. See Exhibit "A" to the Declaration of David M. Goodrich, filed herewith.

On November 22, 2011, the Debtor was examined at a continued meeting of creditors by Mr. Goodrich. In the examination, the Debtor disclosed, *inter alia*, that (1) the Debtor acquired title in real property in Suzhou, China pre-petition and such interest is not listed in the Debtor's schedules, (2) the Debtor borrowed money post-petition to pay off pre-petition creditors, (3) a 2001 Isuzu Trooper was transferred into the Debtor's name post-petition, (4) the Debtor failed to list mortgage/secured debt owed pre-petition, and (5) the Debtor failed to list several of the pending lawsuits he was a party to in his schedules.

On January 6, 2012, the Debtor's two, concurrently filed appeals relating to an order to employ Goodrich Law Corporation as General Counsel and the order denying the Debtor's request for dismissal of the bankruptcy case were dismissed. See Exhibit "A" to the Declaration of David M. Goodrich, filed herewith.

On January 9, 2012, Debtor filed a motion to convert the case from Chapter 7 to Chapter 13. See Exhibit "A" to the Declaration of David M. Goodrich, filed herewith.

On January 30, 2012, the Court entered an order converting the case to Chapter 13. See Exhibit "A" to the Declaration of David M. Goodrich, filed herewith.

On March 13, 2012, the Debtor attended his initial §341(a) for the Chapter 13 case. See Declaration of David M. Goodrich, filed herewith. At his meeting of creditors, the Debtor testified that he requested the Court convert his case to Chapter 13 so that he could dismiss his bankruptcy case. See Declaration of David M. Goodrich, filed herewith.

On March 31, 2012, the Debtor filed another Motion to Dismiss his bankruptcy case. See Exhibit "K" to the Declaration of David M. Goodrich, filed herewith.

On April 13, 2012, the Court entered an Order allowing the administrative claim of the Trustee. See Exhibit "L" to the Declaration of David M. Goodrich, filed herewith.

On April 20, 2012, the Court entered an Order allowing the administrative claim of the the Goodrich Law Corporation, general counsel to the Trustee. See Exhibit "M" to the Declaration of David M. Goodrich, filed herewith.

On April 20, 2012, the Court denied the Debtor's second Motion to Dismiss and reconverted this case to Chapter 7.  See Exhibit "N" attached to the Declaration of David M. Goodrich, filed herewith.

On April 26, 2012, the Debtor filed a Notice of Appeal of, *inter alia*, the Orders allowing the administrative expenses of the Trustee and the Goodrich Law Corporation and the Court's Order denying the Debtor's March 31, 2012 Motion to Dismiss and reconverting the case to Chapter 7.  On See Exhibit "O" to the Declaration of David M. Goodrich, filed herewith.   The Debtor's appeals remaining pending with the Debtor's briefing due on September 3, 2012.

Three general unsecured claims have been filed in this case totaling $21,871.14.  See Exhibits "P", "Q" and "R" to the Declaration of David M. Goodrich, filed herewith.

The Debtor has filed objections to two of the three claims and neither matter has been adjudicated as of the date of this Opposition.  See Exhibit "A" to the Declaration of David M. Goodrich, filed herewith.  There is no pending objection to the claim of Quantum3 Group, LLC that has been filed in this case.

The Debtor has expressly and implicitly threatened to sue the Trustee and his counsel no less than 7 times during the administration of this case.  See Exhibit "S" to the Declaration of David M. Goodrich, filed herewith.

The Debtor now seeks, for the third time, an Order dismissing his bankruptcy case.  The issues raised in the Debtor's third Motion to Dismiss, however, are issues that are on appeal.

II.    Argument

A.    The Appeals of the Debtor Has Transferred Jurisdiction of the
Issue of Case Dismissal and Allowed Claims to the BAP.

As the Debtor notes in his Motion to Dismiss, the Order denying the Debtor's Motion to Dismiss contains issues arising from the Court's Orders allowing the administrative expenses of the Trustee, his general counsel and denying the Debtor's Motion to Dismiss.

"Filing a notice of appeal transfers jurisdiction over the matters appealed to the court of appeals.  During the pendency of the appeal, the district court generally is divested of jurisdiction over those aspects of the case involved in the appeal."  CAL. PRAC. GUIDE: NINTH CIRCUIT

CIVIL APPELATE PRACTICE (The Rutter Group 2009), Chapter 3, Section 3:406, page 3-74, citing *Griggs v. Provident Consumer Discount Co.*, 459 US 56, 58 (1982); *Mayweathers v. Newland*, 258 F.3d 930, 935 (9th Cir. 2001); *In re Silberkraus*, 336 F.3d 864, 869 (9th Cir. 2003).

Here, the Debtor has appealed the Court's denial of his second Motion to Dismiss as well as the Orders allowing the administrative expenses of the Trustee and the Trustee's counsel. These issues, however, are unavoidably intertwined with the factual contentions made by the Debtor which he now relies upon in the current Motion to Dismiss. Because these issues are matters of which the substantive aspects pertain directly to the issues presented in the Debtor's current Motion to Dismiss, the Court lacks jurisdiction to decide the Motion to Dismiss. In fact, the dismissal of this case by the Bankruptcy Court – should it be so inclined - made while the BAP is reviewing the issues will divest jurisdiction of the issues from the BAP and could result in inconsistent opinions on the same matter as well as multiple appeals on the same issue. Moreover, the issuance of conflicting rulings may result in a waste of judicial resources as well as confusion for the parties and the creditors of the Bankruptcy Estate. In short, the Court lacks jurisdiction to decide the Debtor's Motion and, even if the Court has retained jurisdiction over these matters, any ruling of this Court on the Motion to Dismiss may result in inconsistent findings. As such, the Motion should be denied.

B. <u>Standard for Voluntary Dismissal of a Chapter 7 Case.</u>

The Debtor seeks to voluntarily dismiss his pending Chapter 7 case after it was converted from Chapter 7 to Chapter 13 and then reconverted to Chapter 7.

"Dismissal of a voluntary chapter 7 case is governed by §707, which states that a court may dismiss a chapter 7 case for cause[.]" <u>In re Bartee</u>, 317 B.R. 362, 366 (9th Cir. 2004). "A debtor must establish cause to obtain dismissal of a voluntary chapter 7 case." <u>Id.</u> at 366, citing: <u>In re Leach</u>, 130 B.R. 855, 857 n. 5 (9th Cir. BAP 1991), <u>In re Stephenson</u>, 262 B.R. 871, 873 (Bankr. W.D. Okla. 2001); 3 Norton Bankruptcy Law and Practice 2d §67:4 (2004).

"The term "for cause" is defined in the Bankruptcy Code only by way of a list of three examples – unreasonable delay prejudicial to creditors, nonpayment of filing fees, and not filing schedules – that is plainly incomplete." <u>In re Hickman</u>, 384 B.R. 832, 840 (9th Cir. BAP 2008). "If there is no specific Bankruptcy Code provision that addresses the asserted 'cause,' the question

becomes whether the totality of circumstances amount to §707(a) 'cause.'  In re Hickman, 384 B.R. 832, 840 (9th Cir. BAP 2008), citing In re Sherman, 491 F.3d 948, 970;  In re Leach, 130 B.R. 855, 856 (9th Cir. BAP 1991).

"A case will not be dismissed on the motion of a debtor if such dismissal would cause 'some plain legal prejudice' to a creditor."  In re Hickman, 384 B.R. 832, 840 (9th Cir. BAP 2008), citing In re Int'l Airport Inn P'ship, 517 F.2d 510 (9th Cir. 1975) and noting In re Hall, 15 B.R. 913, 917 (9th Cir. BAP 1981) (Int'l Airport Inn P'ship remains good law under Bankruptcy Code).

As discussed below, the Debtor has not and cannot establish good "cause" for a dismissal of his bankruptcy case.  In reality, the Debtor's actions dictate this Bankruptcy Case remain pending.

### 1.   The Debtor Does Not Have an Absolute Right to Dismiss.

The Debtor seeks to dismiss his Bankruptcy Case.

A Chapter 7 debtor does not have an absolute right to dismiss his or her case – a hearing upon noticed motion is required and a determination of "cause" found.   CAL. PRAC. GUIDE: BANKRUPTCY (The Rutter Group 2009), Chapter 5, Section 5:2120, page 5(II) – 38.1, citing §707(a).

It is unclear from the Debtor's Motion to Dismiss if the Debtor believes he has an absolute right to dismiss his bankruptcy case upon application to the Court or if he grasps the requisite hoops that he must jump through to secure an order dismissing his case.  It is clear from the Debtor's Motion to Dismiss, however, that the Debtor thinks the payment in full of certain debts, while reaching an "agreement" to pay administrative claims, is sufficient.  Concededly, the existence or non-existence of debt is one component in the Court's review of the Debtor's request to dismiss his case, but it is not the only factor to be considered in the context of a Debtor's voluntary Motion to Dismiss under §707.

As will be discussed, not only has the Debtor failed establish that good cause exists to dismiss his case, but the facts and circumstances preceding and following the Bankruptcy filing dictate the Debtor's case should remain pending to allow all parties to take any action necessary to ensure the integrity of the bankruptcy process is upheld and the interest of justice served.

/ / /

1                          2.   There Are No Grounds for Dismissal Under 707(a).

2        The Debtor's Motion to Dismiss seeks a dismissal of the Bankruptcy Case.

3        11 U.S.C. §707(a) provides:

4              a) The court may dismiss a case under this chapter only after notice and a

5        hearing and only for cause, including—

6              (1) unreasonable delay by the debtor that is prejudicial to creditors;

7              (2) nonpayment of any fees or charges required under chapter 123 of title

8              28; and

9              (3) failure of the debtor in a voluntary case to file, within fifteen days or

10              such additional time as the court may allow after the filing of the petition

11              commencing such case, the information required by paragraph (1) of

12              section 521 (a), but only on a motion by the United States trustee.

13        In this case, the Debtor has not provided evidence that any of the enumerated grounds for

14 dismissal exist under §707(a). As a result, the statutory grounds for dismissal under §707(a) are not

15 present in this case.

16        The enumerated grounds for dismissal under Section 707(a) are, however, not exclusive and

17 the Debtor may seek dismissal for "cause." See In re Bartee, 317 B.R. 362, 366 (9th Cir. 2004); In re

18 Leach, 130 B.R. 855, 857 n. 5 (9th Cir. BAP 1991), In re Stephenson, 262 B.R. 871, 873 (Bankr.

19 W.D. Okla. 2001).

20                       3.   The Debtor Fails to Demonstrate that Good Cause Exists to

21                          Dismiss this Case.

22        The Debtor's Motion offers factual contentions that the Debtor alleges are sufficient grounds

23 for dismissal of his Bankruptcy Case.

24        As noted above, the Court may dismiss the Debtor's case for "cause." In re Bartee, 317 B.R.

25 362, 366 (9th Cir. 2004); In re Leach, 130 B.R. 855, 857 n. 5 (9th Cir. BAP 1991), In re Stephenson,

26 262 B.R. 871, 873 (Bankr. W.D. Okla. 2001).

27        "The term "for cause" is defined in the Bankruptcy Code only by way of a list of three

28 examples – unreasonable delay prejudicial to creditors, nonpayment of filing fees, and not filing

8

schedules – that is plainly incomplete." In re Hickman, 384 B.R. 832, 840 (9th Cir. BAP 2008). "If there is no specific Bankruptcy Code provision that addresses the asserted 'cause,' the question becomes whether the totality of circumstances amount to §707(a) 'cause.' In re Hickman, 384 B.R. 832, 840 (9th Cir. BAP 2008), citing In re Sherman, 491 F.3d 948, 970; In re Leach, 130 B.R. 855, 856 (9th Cir. BAP 1991).

Again, the Debtor claims to have paid three unsecured claim in full. The Debtor avers this to be "cause" to dismiss his bankruptcy case. In furtherance thereof, the Debtor argues that the satisfaction of debt renders the bankruptcy process moot under Chapter 7.

Under 11 U.S.C. §101(12), the term "debt" is defined as: "…liability on a claim."

Further, 11 U.S.C. §101(5) defines, in pertinent part, the term "claim" as:

"…right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured…"

Payment of the three unsecured claims, if it has truly occurred, does not result in payment on all "debt" or "claims" of by the Debtor – whether actual or contingent. In reality, the Debtor owes a "debt" to the Trustee and the Goodrich Law Corporation and concedes the same in his Motion to Dismiss. Additionally, there remain three claims that have been filed with the Court which have not be adjudicated as valid or invalid. While the Debtor's optimism in prevailing on the allowance of the three claims is admirable, it is nonetheless nothing more than optimism. In reality, until the claims are disallowed by the Court, these filed proofs of claims are presumed valid under FRBP 3000 and remain as allowed "debts" or "claims" of the Debtor's Bankruptcy Estate.

Because "debts" and "claims" remain against the Debtor and no other sufficient grounds are provided in support of the Debtor's Motion to Dismiss, the Debtor has failed to demonstrate that "cause" exists to dismiss his Bankruptcy Case and the Debtor's Motion to Dismiss should be denied.

/ / /

/ / /

/ / /

/ / /

1

2

### 4. The Best Interest of the Debtor's Creditors Are Served by
### Allowing the Trustee to Administer this Case.

3

4

5

Because it appears that the Debtor still has pre-petition creditors and claimants, along with claims held by the Trustee and the Goodrich Law Corporation, the Court should review this case for dismissal with the best interest of the Debtor's creditors in mind.

6

7

8

9

10

"The Chapter 7 Trustee has standing on behalf of nonconsenting unsecured creditors to object to a Chapter 7 debtor's dismissal motion where dismissal would be prejudicial to the creditors." CAL. PRAC. GUIDE: BANKRUPTCY (The Rutter Group 2009), Chapter 5, Section 5:2124, page 5(II) – 38.4, citing Penick v. Tice, 732 F2d 1211, 1214 (4th Cir. 1984); In re Hall, 15 B.R. 913, 916 (9th Cir. 1981).

11

12

13

14

15

16

17

18

19

20

21

"Of primary concern under the 'totality of circumstances' test is whether, in light of both legal and equitable considerations, dismissal will cause 'some plain legal prejudice' to a creditor." CAL. PRAC. GUIDE: BANKRUPTCY (The Rutter Group 2009), Chapter 5, Section 5:2123, page 5(II) – 38.4, citing In re Hickman, 384 B.R. 832, 840 (9th Cir. BAP 2008), In re Leach, 130 BR 855, 857 (9th Cir. BAP 1991). "The most important consideration when dismissing a case is whether dismissal is in the best interest of creditors. In re Banks, 35 BR 59 (Bkrtcy. D. Md. 1983). Generally, if dismissal of the debtor's case results in prejudice to the creditors, it is not proper for the case to be dismissed unless all creditors affirmatively consent to the dismissal." In re Williams, 15 BR 655 (Distr. E.D. Mo. 1981), In re Kimball, 19 BR 300 (Bkrtcy. D. Maine 1982); Hammerer v. Internal Revenue Service, 18 BR 524 (Bkrtcy. E.D. Wisc. 1982); In re Hall, 15 B.R. 913 (9th Cir. 1981).

22

23

The Debtor has the burden of submitting evidence that proves a dismissal of this case will not be prejudicial to his creditors. See In re Bartee, 317 B.R. 362, 365 (9th Cir. 2004).

24

25

26

27

In this case, the Trustee was duly appointed and no objection to the Trustee's appointment was received at the Debtor's initial §341(a) meeting of the creditors. See Declaration of David M. Goodrich, filed herewith. Because the Trustee is serving as the permanent Trustee in this matter, there is no dispute that the Trustee may challenge the Debtor's Motion to Dismiss.

28

Furthermore, there is no evidence that any creditors of the Debtor consent to the dismissal of

the Debtor's bankruptcy case.  In fact, the Trustee and the Goodrich Law Corporation do not consent and their consent is needed.

Finally, additional grounds exist to deny the Debtor's Motion to Dismiss: the Debtor's prior acts in an effort to avoid payment to creditor Kenny Tan demonstrates the Debtor had, prior to the case file, no true intent to repay Mr. Tan.  The timing of the Debtor's recordation of a quitclaim deed transferring his entire interest in the Residence to his wife cannot be a coincidence – the intent of the transfer seems rather axiomatic.  If, however, the Debtor is allowed to dismiss his case, then it is likely that the Trustee, the Goodrich Law Corporation and the current creditors holding allowed claims will be subject to the Debtor's efforts to secrete assets and frustrate collection efforts.  On the other hand, the Trustee's administration of this case will likely result in a fair, equal and expedient payment to the Debtor's creditors.  There is no guarantee that left on his own accord, the Debtor will pay these creditors voluntarily - the Debtor has been less than candid about his financial affairs, has avoided payment Mr. Tan for more than two years and cannot be counted on to repay his remaining creditors. As a result, it is in the best interest of the Debtor's unsecured creditors that the Trustee administer the Debtor's bankruptcy case and deny the Debtor's Motion to Dismiss.

>    5.  <u>Based Upon the Egregious Conduct of the Debtor, the Debtor Should</u>
>         <u>Not be Rewarded With a Dismissal of His Case.</u>

As noted above, the Trustee and his counsel have discovered a litany of inconsistencies, many suggesting Rule 9011 violations and the commission of perjury by the Debtor.

Where a debtor engages in fraudulent activity or is guilty of unclean hands, bankruptcy courts have denied requests by the debtor to dismiss a Chapter 7 case.  See CAL. PRAC. GUIDE: BANKRUPTCY (The Rutter Group 2009), Chapter 5, Section 5:2123, page 5(II) – 38.4, citing <u>In re Simmons</u>, 200 F3d 738, 743 (11th Cir. 2000) [dismissal not warranted where it would allow debtor to hinder creditors, secrete assets and further debtor's abuse of the system]; <u>In re Mathis Ins. Agency, Inc.</u>, 50 BR 482, 487 (BC ED AR 1985) [debtor engaged in fraudulent acts].

It is important to note that a debtor who files a bankruptcy case is granted the benefits of the safeguards under the Bankruptcy Code, but burdened with the responsibilities imposed under the Bankruptcy Code.  See <u>In re Mathis</u>, 50 BR 482, 487 (BC ED AR 1985), citing <u>In re Martin</u>, 30 B.R.

11

24, 26 (Bkrtcy. E.D. N.C. 1983). Where debtors have shirked their responsibilities under the Bankruptcy Code by seeking dismissal, courts have declined such requests. See In re Mathis, 50 BR 482, 487 (BC ED AR 1985). When, however a debtor's chapter 7 backfires, a debtor "…is not entitled to escape by awarding himself a dismissal either by declining to perform his statutory duties or by recanting the commitment to have debtor-creditor relations adjusted in equitable proceedings." In re Hickman, 384 BR 832, 842 (9th Cir. BAP 2008).

Thus far, there are a variety of discrepancies in the Debtor's schedules that have not been corrected and/or adequately explained. Some of these discrepancies are self-evident and demonstrate the Debtor has not accurately described his assets and expenses at the time he filed this case. Moreover, the Debtor has openly admitted that the only reason this case was converted to Chapter 13 was to have the case dismissed. The Debtor's conduct herein is the very type of abuse-and-reward system the Simmons, Mathis, Martin and Hickman cases seek to prevent – a debtor seeking to jump from an airplane after learning that it is on fire. To allow the Debtor to exit this case unscathed would allow for (1) the perpetration of activities that appear to be fraudulent, (2) the shirking responsibilities imposed upon him under the Bankruptcy Code, and (3) result in the creditors of the Debtor chasing the Debtor's assets for years to come.

Moreover, there are variety of assets and potential assets of the Debtor that were not disclosed by the Debtor. At his 341(a), the Debtor testified that a variety of items have not been disclosed in his schedules. For example, the Debtor disclosed in his 341(a) meeting, *inter alia*, that (1) the Debtor acquired title in real property in Suzhou, China pre-petition and such interest is not listed in the Debtor's schedules, (2) the Debtor borrowed money post-petition to pay off pre-petition creditors, (3) a 2001 Isuzu Trooper was transferred into the Debtor's name post-petition, (4) the Debtor failed to list mortgage/secured debt owed pre-petition, and (5) the Debtor failed to list several of the pending lawsuits he was a party to in his schedules. These factual admissions alone demonstrate the Debtor's concealment of assets. This type of conduct is an abuse of the Bankruptcy process and the Debtor should not be granted a reprieve from civil or criminal prosecution.

Finally, Schedule I reveals that the Debtor earns $4,669.32 per month with income "decreasing." The Debtor's Schedule J indicates that the Debtor's household expenditures are

1 | $1,513.62 more than the Debtor's income. Attached to the Declaration of David M. Goodrich as

2 | Exhibits "I" and "J" are true and correct copies of the Debtor's Schedules I and J. In short, the

3 | Debtor is admittedly insolvent. Because he is insolvent, the Debtor may be "judgment-proof" if this

4 | case is dismissed. Hence, the dismissal of this case provides no benefit to the Debtor's creditors.

5 |                    6.    Should the Court Elect to Grant the Debtor's Motion to Dismiss

6 |                           The Debtor Should be Ordered to Pay the Trustee's Fees and

7 |                           Expenses Before the Order Dismissing the Debtor's Case is Entered.

8 |          In the even the Court agrees with the Debtor's position and decides to dismiss this

9 | proceeding, the Court should require the Debtor pay the Trustee and his professionals their fees and

10 | costs incurred herein before entering an order dismissing this case.

11 |          The Court may condition a Debtor's request for dismissal upon payment of all fees and costs

12 | incurred by the trustee and his professionals. Local Bankruptcy Rule 1017-2(f)(3); and See  In re

13 | Gallman, 6 BR 1, 2 (Bankr. ND GA 1980); In re Jackson, 7 BR 616, 618 (Bankr. ED TN 1980); In

14 | re Wolfe, 12 BR 686, 687 (Bankr. SD OH 1981).

15 |          In this case, fees and costs have been awarded to the Trustee and the Goodrich Law

16 | Corporation for events that occurred through March 2012. Since that time, the Trustee and the

17 | Goodrich Law Corporation have endure more time and expense in responding to the variety of

18 | actions filed by the Debtor. Accordingly, significant fees and costs have been incurred by the

19 | Trustee and payment of these fees and costs by the Debtor should be a condition of dismissal of this

20 | case, in the event the Court decides that dismissal is appropriate.

21 |          III.    Conclusion

22 |          Based upon the foregoing, the Court should deny the Debtor's Motion to Dismiss his

23 | Bankruptcy Case.

24 | DATED:  August 7, 2012                    GOODRICH LAW CORPORATION

25 |                                                   /s/ David M. Goodrich

26 |                                           By:_____
                                                      David M. Goodrich

27 |                                                   General Counsel for former Chapter 7 Trustee
                                                      for the Bankruptcy Estate of Yan Sui

28 |

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

870 Roosevelt Ave., Irvine, CA 92620

The foregoing document described  CONSOLIDATED OPPOSITION OF RICHARD A. MARSHACK, CHAPTER 7 TRUSTEE AND CREDITOR GOODRICH LAW CORPORATION TO THE DEBTOR'S MOTION TO DISMISS CHAPTER 7 BANKRUPTCY CASE   will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On August 7, 2012  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

Richard A Marshack (TR)    pkraus@marshackhays.com, rmarshack@ecf.epiqsystems.com
Marisol A Nagata    cdcaecf@bdfgroup.com
Christina J O    christinao@mclaw.com
Kelly M Raftery    bknotice@mccarthyholthus.com, kraftery@mccarthyholthus.com
Ramesh Singh    claims@recoverycorp.com
United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
Darlene C Vigil    cdcaecf@bdfgroup.com

☐    Service information continued on attached page

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served)**:**
On August 7, 2012 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

Debtor:
Yan Sui
PO Box 7561
Huntington Beach, CA 92615

Judge's Copy:
Hon. Catherine E. Bauer
United States Bankruptcy Court - Central District of California
411 West Fourth Street, Suite 5165
Santa Ana, CA 92701-4593

Creditors' Attorney:
James C. Harkins
Cane Walker & Harkins LLP
17821 E. 17th St., Ste. 140
Tustin, CA 92780

☐    Service information continued on attached page

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ___ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| August 7, 2012 | David M. Goodrich | /s/ David M. Goodrich |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

1

Exh. List 9

**ORIGINAL**

UNITED STATES BANKRUPTCY APPELLATE PANEL

OF THE NINTH CIRCUIT

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| YAN SUI, | ) | **BAP Nos. CC-12-1223-KiPaD** |
| Debtor. | ) | **CC-12-1366-KiPaD** |
| | ) | **CC-12-1367-KiPaD** |
| YAN SUI, | ) | |
| Appellant, | ) | **Bk. No.  8:11-20448-CB** |
| v. | ) | |
| | ) | |
| RICHARD A. MARSHACK, Chapter | ) | |
| 7 Trustee:  AMRANE COHEN, | ) | |
| Chapter 13 Trustee, | ) | |
| | ) | |
| Apellees. | ) | |

**Transcript of CD**

Reporter:    Linda A. Simpson, CSR
RMR, CRR
Certificate No. 2266



1314 E. Chapman Ave.
Orange, CA 92866
800-505-9994   714-997-3333

Certified Shorthand Reporters

**Transcript of CD**

```
 1    APPEARANCES OF COUNSEL:

 2    For RICHARD A. MARSHACK, Chapter 7 Trustee:

 3        D. Richard Hays, Esq.

 4
      For the Appellant:
 5
          Yan Sui
 6        In Propria Persona

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Transcript of CD

```
 1                    *   *   *   *   *
 2         (The following proceedings were transcribed from a
 3    CD provided by Yan Sui to the Certified Shorthand
 4    Reporter in its entirety, excluding inaudible material,
 5    as follows:)
 6                    *   *   *   *   *
 7         THE CLERK:  In re Sui, Yan Sui, opposing Appellant.
 8    Edward Hays, counsel for (inaudible).
 9         A COURT:  Good morning, Mr. Sui.
10         MR. SUI:  Yes, your Honor.  Good morning, your
11    Honors, and --
12         A COURT:  Okay, you'll have a total of 15 minutes
13    this morning.  Would you like to reserve a portion of
14    your time to offer argument after you hear counsel for
15    the Appellee?
16         MR. SUI:  I think I reserve five minutes, your
17    Honor.
18         A COURT:  Okay, we'll let you know after five
19    minutes have expired.  You can go ahead.
20         MR. SUI:  First of all, I appreciate your Honors
21    granting my oral argument request because I'm afraid
22    because my first language, native language, not English,
23    maybe something on the papers not understand or all
24    incomprehensible.  So I'm here to present my points, some
25    additional informations I need to present to the orders
```

Transcript of CD

```
 1   and also ask some questions.
 2            The first of all, as I state in the -- my
 3   paper that I was forced into filing the bankruptcy after
 4   the homeowners association placed an invalid lien on our
 5   house.  And on the eve of the trustee's sale, we have to
 6   empty our bank accounts to pay out this trustee sale, the
 7   liens.
 8            So that case is in the -- is in state Court
 9   is -- right now of retreating from the defense judgment
10   to the California Courts of Appeal.
11            First of all, I would like to pick up this
12   trustee's fees as first issue order because I believe
13   I'm -- I may be a layperson but my attorney taught me a
14   lot of things.  Trustee's fees should have a cap
15   according to 11 US Code 326.  And first I remember is the
16   first $5,000, you pay 10 percent and the -- then it
17   decreases here.
18            And also the trustee fees is must be treated
19   as a commission.  Commission means you have recovery from
20   the property or from the debtor's assets.  If you have
21   recovery, you get paid.  If you don't have the recovery,
22   you are not supposed to be paid.  That's one.
23            Secondly, is the trustee in this case is the
24   main player.  And his fees should be more than his
25   counsel's fee.  But in this case, get reversed.  And his
```

**Transcript of CD**

```
 1   counsel charged three times of the trustee's fees of

 2   14,000 or 16 -- $15,000 in -- in the short five or six

 3   months.

 4           And also the trustee fees as I indicated to

 5   the panel that he has duplicate charges because that

 6   (inaudible) matching those charges put up by his counsel.

 7   Match one by one.  So at the same time, I been charged by

 8   double charges.  His counsel and trustee's exactly the

 9   same thing, the same date, the same matter, the

10   discussion, phone call, everything.

11           And also included in the paperwork, I have

12   pointed out to the panel that the trustee is charging

13   unrelated charges.  So in the amount of 1500 some 90

14   dollars.  So that relates to his associate attorney for

15   the attorney fees, 775 an hour, related to a case not

16   related to me at all, because in that case, they have an

17   attorney.  But in my case, I'm representing myself.  So

18   his fee has no ground.

19           And also as the case law says, that the

20   trustee cannot charge attorney fees.  He's supposed to

21   charge these administrative fees because his claim since

22   administrative claims, not legal fees.

23           And then, your Honor, for this total prices, I

24   only met with the trustee two times, each time in front

25   of him less than five minutes.  So he charging that
```

Transcript of CD

```
 1   unwarranted $5,900.  That's not legally permissible.  And

 2   he charged an hour -- hourly rate of $540 per hour, legal

 3   attorney fees.  That's not legally permissible.

 4        So to my point of view, that the trustee just

 5   use his exercise to bully a layperson like the debtor and

 6   is not serve any purpose here of serving the general

 7   public or protect the interests of the creditors.

 8   Especially before the 331 meeting, I have sent trustee

 9   the copy of the letters I sent out to the true credit

10   cards.  I told him that I want to make plan to pay them.

11   I want to dismiss the bankruptcy case.

12        And on the September 6th 341 meeting and

13   the -- his counsel, Mr. Coolidge, informed me that the

14   just -- the Bankruptcy Court has notify us that you are

15   going to pay those creditors.  But still trustee still

16   need to ask you questions.  And at the 341 meeting, the

17   trustee did not bring in any creditors.

18        In the -- in the (inaudible) true creditors.

19   Two credit cards, one is the state judgment lienholder.

20   And later on I found out the lienholder Mr. Tan was never

21   notified by the trustee that Mr. Sui is going to pay you.

22   He never know.  Yeah, because I submitted the records,

23   yes.

24        So the trustee checked the -- the creditor in

25   the -- in the -- in the dark.  (inaudible) now.  So what
```

Transcript of CD

```
 1   his (inaudible) is to keep me in this bankruptcy so he

 2   can earn his administrative fees.

 3              Even after I paid off all the three creditors,

 4   three condition, on the Chapter 13 confidential hearing

 5   on April the 4 -- 5th, 2012, that trustee's counsel and

 6   suggested to the bankruptcy judge that the case need to

 7   be recommitted from Chapter 13 back to 7.  And the

 8   Bankruptcy Court agreed, granted that.  So that's why my

 9   bankruptcy -- bankruptcy case was recommitted back to

10   Chapter 7.

11              So according to the law, my case is subject to

12   the dismissal.  After all the creditors have been fully

13   paid, he does the purpose of the --

14       A COURT:  Let me ask you one question.  With regard

15   to the house that you conveyed to your purported wife --

16       MR. SUI:  Yes.

17       A COURT:  -- there's a mortgage on that, right, or

18   trust deed?

19       MR. SUI:  Yes, sir.  Yes, your Honor, yes.

20       A COURT:  And did you sign the promissory note as

21   well as your wife?

22       MR. SUI:  Yeah, we both signed that.

23       A COURT:  So has that promissory note been paid in

24   full?

25       MR. SUI:  That's one, not yet.
```

**Transcript of CD**

```
1        A COURT:  So that is a creditor who is not paid who

2   in your bankruptcy case arguably is unsecured.

3        MR. SUI:  Actually, yeah, technically, it's

4   unsecured --

5        A COURT:  Well, a creditor is a creditor.

6        MR. SUI:  Your Honor, according to the bankruptcy

7   case, the Bankruptcy Code 11 US Code 541 (D), the

8   debtor's interest in the mortgage is not the bankrupt

9   estate.

10       A COURT:  Well, that's -- that's not the issue.  If

11  you've transferred the property, as far as your

12  ownership, there's no creditor with a secured claim in

13  your case.  But that doesn't mean that the note

14  obligation you signed goes away.  So that is still a

15  debt.

16       MR. SUI:  Yes, your Honor.

17       A COURT:  They are your creditor.

18       MR. SUI:  Yes, your Honor.  Yeah.  Just according to

19  the U.S. Supreme Court case of Lucia versus IRS, the

20  Supreme Court specifically indicated that the debtor's

21  equity interests, not the legal title interest, is not

22  the bankrupt estate.

23       A COURT:  Well, that's not an estate asset, but it

24  doesn't get rid of the debt.

25       MR. SUI:  Yeah, we are not getting rid of the debt.
```

**Transcript of CD**

```
 1   We are --
 2       A COURT:  That's -- that's my only point.  Here is
 3   an unpaid creditor.
 4       MR. SUI:  Yeah, that's on -- yeah, that's mortgage.
 5   We have been paying the mortgage on time that we have
 6   never late.  And the Chapter 7 file was not to protect me
 7   from not paying that mortgage.  We never intend to do
 8   that.
 9           We only just three creditors, creditors in
10   interest.  They are being affected.  Not -- Wells Fargo
11   mortgage was never affected by this bankruptcy filing.
12   So we have no intention to protect paying through the
13   mortgage the house.  We never intend to file as Chapter 7
14   not to pay the mortgage.  That's not the case.
15       A COURT:  But when you file a bankruptcy, you have
16   to file all -- list all of your creditors, whether you
17   intend to pay them or not pay them.
18       MR. SUI:  Your Honor, maybe I don't have a full
19   understanding of the law, but because I'm a layperson,
20   but as far as the costs, as I stated, costs for filing
21   this bankruptcy is to automatically stay the State Court
22   the debtor's examination from the State Court lienholder.
23   So that's the only purpose.  And we did not mean to do
24   anything about the house.  The house, we are making
25   payments during the past 13, 14 years.  We never late.
```

Transcript of CD

```
 1        A COURT:  You filed a case to prevent your former
 2   attorney from collecting on the arbitration award that
 3   was approved by the State Court, correct?
 4        MR. SUI:  Yes, your Honor, yes.  Yeah.  And because
 5   all my tradition to dismiss the bankruptcy case after
 6   paying off the two credit cards, I contended Mr. Tan is
 7   not a creditor according to the federal creditor
 8   collection law because he did not provide any services of
 9   foods -- service of goods.  And also he -- Mr. Tan would
10   not be legally prejudice -- prejudiced with my dismissal
11   because he still have a solid, a valid State judgment to
12   pursue, to pursue against me.  Although it's another
13   issue.
14          But here, what I'm talking about is the --
15   actually the -- all the creditors have been paid off
16   while the mortgage was not the intention that we stop
17   paying, so the -- the bankruptcy -- Bankruptcy Court
18   should have agreed that to dismiss my chap -- Chapter 13
19   case.
20          And also one more issues.  My case was
21   reconverted back to Chapter 7 -- to Chapter 13.  And on
22   the hearing date, I don't know if it's the service of the
23   trustee to request the Court to reconvert to Chapter 7
24   because usually Chapter 7 trustee should be out of
25   service after the case has been recommitted to Chapter
```

**Transcript of CD**

1    13.  But he suggest to the Bankruptcy Court to recommit

2    the case to back to Chapter 13.  I don't know I was

3    (inaudible) if this proper for the Chapter 7 trustee to

4    make such a move because I -- your Honors know that the

5    trustee, Chapter 13 trustee did not file any response to

6    that.  So -- so that's one of the case.

7              The other case is the Bankruptcy Code 11 U.S.

8    326 set of (inaudible) on the trustee's.  But it did not

9    mean to open the back door for the trustee's attorney to

10   charge outrageous attorney fees.  So this is the case

11   here.  I cited the case law saying that if the trust --

12   if the trustee's counsel do all the statutory duties of

13   the trustee, that attorney -- the attorney cannot be

14   paid.  I have cited the specific law to this case to the

15   opening and to -- and also to the Bankruptcy Court

16   already.

17             However, the bankruptcy judge instead of

18   granting their claims as is without any consideration of

19   the totality of the situation, when all the debtors have

20   been paid, in this case I indicated to the trustee and

21   the -- his counsel that I'm willing to pay my creditors.

22   So they are bankruptcy specialists.  In order to protect

23   the best interests of the creditors and debtors,

24   (inaudible) come down and also we can talk, I pay the

25   creditor to ask you some questions.  How you going to pay

Transcript of CD

```
 1    them?  This matter will be resolve much easier because

 2    the function of the 331 meeting is to ask those creditors

 3    to ask debtor's questions, if you have money, where's

 4    your money, how you going to pay.

 5            If the trustee have done that at the very

 6    beginning, this case would not be here.

 7       A COURT:  Well, I want to clear up a

 8    misunderstanding.  It's not the trustee that -- that

 9    requests or -- or directs those creditors to attend.

10    It's the notices by the Bankruptcy Court after you file

11    your petition and the notice to them that there will be

12    this meeting of creditors.  The trustee doesn't provide

13    additional notice.

14       MR. SUI:  Yes, your Honor, but in this particular

15    matter, the trustee contacted instead the force

16    creditors, like the homeowners association, since the

17    matter is regarding paying the creditors, the creditors

18    are the true real interest party.  Why didn't the trustee

19    pick up the phone, give them a simple call, say, hey, the

20    debtor's going to pay you.  I will come.  Simple one

21    phone call will save a lot of trouble.

22       A COURT:  Obviously the trustee is not required to

23    do that.  You're using up the balance of your time.  I'm

24    not sure if you want to reserve that until after the

25    Appellee argues?
```

**Transcript of CD**

```
 1          MR. SUI:  Yes, your Honor, yes.  Thank you.

 2          MR. HAYS:  Good morning, your Honors, Chad Hays on

 3     behalf of appellees, Chapter 7 trustee, and Goodrich law

 4     Corporation.  Your Honors, first of all with respect to

 5     the trustee's fees, this is a case where the trustee's

 6     and the trustee's professionals and considerable time and

 7     effort before the request to convert the case to Chapter

 8     13 was made.

 9          A COURT:  Right.  And, you know, you're talking with

10     the panel with the author of the Coburn decision on it.

11     But that's a legal question as to entitlement, and of

12     course we have to deal with that.

13              But two other issues which I'd like you to

14     address.  Number one, assuming that we were dealing with

15     final awards of fees in the 13 case, wouldn't those be

16     pursuant to 330 and don't we need a reasonableness

17     finding and -- I don't see any.

18          MR. HAYS:  There was a reasonableness finding by the

19     lower Court, your Honor, the --

20          A COURT:  And in terms of show us your work, is

21     there anything in what the Bankruptcy Court did to tell

22     us how she made that determination?

23          MR. HAYS:  Not pursuant to the order, your Honor,

24     but significant amount of documentation was submitted

25     along with the request --
```

**Transcript of CD**

```
1        A COURT:  Well, we recognize that there were
2    complete itemizations submitted, and the Appellant has
3    identified some concerns, which trouble us with regard to
4    some of the itemized amounts.  But I couldn't see
5    anything in the trial Court's findings to show that she
6    didn't do anything except make a snap judgment that in
7    light of all the work involved, this is -- there was a
8    lot of work required, done.
9            Is there anything else?
10       MR. HAYS:  Well, your Honor, the fees were
11   calculated based on the lodestar method, which is a
12   method of calculation of fees for --
13       A COURT:  All right, but -- but as Mr. Sui has
14   pointed out, in some of the trustee's itemization, there
15   clearly are entries that cannot relate to his case.
16       MR. HAYS:  That is correct, your Honor, and we
17   acknowledge that.  There was --
18       A COURT:  All right.  Isn't that something that has
19   to be fixed?
20       MR. HAYS:  Yes, your Honor, and we fully acknowledge
21   that there are some entries that are concerning, and
22   there was some mistakes made on the billing entries, and
23   we acknowledge that, your Honor.
24       A COURT:  All right.  Well, that brings me to my
25   second question because I think you will have an
```

**Transcript of CD**

```
1    opportunity to do this because since the case was

2    reconverted to Chapter 7, are you not going back to 326

3    (A), at least with regard to the trustee and rather than

4    final orders, aren't we looking at what should be treated

5    as interim orders?

6         MR. HAYS:  That is exactly right, your Honor, and I

7    was about to raise that point.  We are back in Chapter 7

8    now, and we suspect that we will remain in Chapter 7 from

9    here on out.  So basically the statutory provisions that

10   apply to the trustee are once again applicable, and those

11   provisions will be utilized in requesting the trustee's

12   final fees.  The trustee's --

13        A COURT:  You know what?  I have -- we have trouble

14   with the trustee's fees.  How's that?  Being candid

15   enough with you?

16             The problem I have is that when in the same

17   breath the bankruptcy judge says I'm going to approve the

18   Chapter 7 trustee's fees and -- and then says I'm going

19   to reconvert the case to Chapter 7.  That just doesn't

20   work for me because how can the bankruptcy judge approve

21   a Chapter 7 trustee's fees when there's -- when the

22   Chapter 7 case is on ongoing.  The case has not been

23   concluded.

24             It's like Judge Dunn says, your client may be

25   successful in assembling a large amount of money to
```

Transcript of CD

```
 1   distribute to creditors, if there are any.  Your client

 2   may be completely unsuccessful.

 3              If you get to the end of the case and there's

 4   no money in -- in the case, 326 says it's -- you know,

 5   trustee's fees are a commission.  There's no fee.

 6        MR. HAYS:  That is correct, your Honor.  And we will

 7   go based on what 326 says.  Now that we're back in a

 8   Chapter 7, we will go strictly based on Section 326 and

 9   formulate the commission and the trustee's entitlements

10   based on any distributions made.  That is --

11        A COURT:  So why are you trying to defend the order

12   of the fee award to the trustee in this case?  Why don't

13   you simply say, you know, it really doesn't -- in light

14   of what's happened here, it really doesn't mean anything.

15        MR. HAYS:  Your Honor, I would concede that.  In

16   light of what has happened here, it really does not much.

17   Because we are back in Chapter 7, 326 obviously is

18   applicable once again.  The --

19        A COURT:  So these are no more than interim awards

20   that can be looked at fully again at the time of a final

21   request for compensation, both by the trustee and

22   attorneys.

23        MR. HAYS:  I would agree with that, your Honor.

24        A COURT:  All right.

25        MR. HAYS:  I would agree with that.
```

**Transcript of CD**

```
 1        A COURT:  Okay.  My problem with that approach is,

 2   defend this, I think it's an inappropriate interim award

 3   with respect to the trustee fees.  Because you're

 4   inviting us to basically sustain it using a lodestar

 5   approach when our own case law suggests that trustee's --

 6   Chapter 7 trustee's fees are not subject to analysis

 7   under a lodestar approach.  You've read the Selgado note.

 8        MR. HAYS:  No question, your Honor.

 9        A COURT:  (inaudible)

10        MR. HAYS:  I understand your position in that

11   regard, but it is the trustee's position that the

12   circumstances of this case --

13        A COURT:  Okay.

14        MR. HAYS:  -- are very similar to --

15        A COURT:  So you're -- you're arguing that it's --

16   it fits within extraordinary circumstances?

17        MR. HAYS:  Well, our argument is that it fits very

18   nicely within the circumstances of the In Re Hagues case,

19   which is a case wherein the debtor filed a Chapter 7, the

20   trustee spent extensive time analyzing and investigating

21   the case, the debtor moved to convert to Chapter 13, and

22   in that case, the Court determined that actual

23   distributions did not have to be made during the course

24   of the Chapter 7.

25        A COURT:  But was that -- I'm unfamiliar with the
```

Transcript of CD

```
 1   facts.  Did Hagues stay in 13 after conversion?  Because

 2   if it did, I understand that.  I'm on the same page with

 3   you.  But if -- if it -- the question is what happens on

 4   reconversion, which is the case here?

 5       MR. HAYS:  That -- that's a very good point, your

 6   Honor.  And -- the In Hague case, no, the debtor I

 7   believe remained in Chapter 13.

 8           So it is -- it is our position that at the

 9   time that the case comes to a conclusion, the Chapter 7

10   case comes to a conclusion, these fees will be revisited,

11   reanalyzed by the Court, we will use Section 326 as our

12   basis for requesting fees on the behalf of the trustee,

13   and his commission will be calculated based on the

14   statutory formula.

15       A COURT:  But you have to make that argument because

16   his fee might be higher than what's been awarded here.  I

17   understand that.

18       MR. HAYS:  It could very well be.

19       A COURT:  It also could be much lower.

20       MR. HAYS:  It could be zero.

21       A COURT:  Well, I appreciate your candor.

22       MR. HAYS:  Yes, your Honor.

23       A COURT:  My concern is giving a Chapter 7 trustee a

24   fee in this situation.  While not recognizing that all

25   the other hard working Chapter 7 trustees in cases that
```

**Transcript of  CD**

```
 1   don't -- that don't generate significant returns for

 2   creditors where the trustees work really, really hard and

 3   under a lodestar analysis the fee would be substantial,

 4   we're going to tell them, no, 326 controls here, no

 5   disbursement, no commission.  So --

 6        MR. HAYS:  I guess I'm --

 7        THE COURT:  There's the dilemma.

 8        A COURT:  We also have a game-changer, don't we,

 9   with 330(A)(7) where in fact Chapter 7 trustees under 330

10   are looking back to 326 on a commission basis?

11        MR. HAYS:  Well, we acknowledge that we have to look

12   back to 326, and we will be looking back to 326.

13        A COURT:  But even if in the event that it stayed in

14   13, wouldn't you still have to be looking at that?

15        MR. HAYS:  Well, that -- you also raise a good point

16   there, your Honor.  However, as the Court is well aware,

17   as the panel is well aware, the case is back into Chapter

18   7.

19        A COURT:  That's correct.

20        MR. HAYS:  And we acknowledge that we will be back

21   under the constraints of Section 326.  And we will file

22   the trustee's application pursuant thereto.

23        A COURT:  I'm just curious as to how extraordinary

24   this is.  I see cases converted from Chapter 7 to Chapter

25   13 all the time.  And fairly frequently, the reason for
```

Transcript of CD

```
1    the conversion is the debtors have all of a sudden

2    realized that in their Chapter 7, they are going to lose

3    something.  And so as a way of retaining a -- a car or

4    some other asset, they say, well, we need to convert to

5    Chapter 13.

6            For example, we get a Chapter 7 case where

7    because of the trustee's hard work, a trustee discovers

8    an avoidable lien on -- on the family vehicle.  Well, the

9    debtors are going to lose the vehicle.  They'll get an

10   exemption maybe, but the debtor's are going to lose the

11   vehicle unless they convert to Chapter 13.

12           So in that case when they convert and what

13   you're saying is that's the kind of extraordinary

14   circumstances that now allows a bankruptcy judge to go

15   back to the pre-2005 lodestar analysis and give the

16   Chapter 7 trustee a fee?

17      MR. HAYS:  Your Honor, the trustee and the trustee's

18   professionals conducted a -- they've been bombarded

19   with --

20      A COURT:  Well, let's not lump them together because

21   the professionals and the trustee's fees are based on two

22   different provisions of Section 330, sir.

23      MR. HAYS:  Understood.

24      A COURT:  Okay, so tell me about the Chapter 7

25   trustee.  Are you saying that every time a case converts
```

**Transcript of CD**

```
 1   from 7 to 13, even after 2005 and they are changed the

 2   addition of (A)(7), trustee's now get a lodestar

 3   reasonable fee?

 4        MR. HAYS:  No, your Honor, not per se.  This case is

 5   a little bit different in that the trustee has been

 6   bombarded with pleadings by the debtor.  He's been

 7   bombarded with litigation by the debtor.

 8             The debtor has exhibited bad faith in this

 9   case.  The debtor has not been 100 percent forthcoming on

10   the debtor's schedules.  The debtor failed to disclose

11   certain assets.  The debtor is basically changing the

12   story as to whether or not the debtor is married.

13             It is the -- the trustee's position that there

14   are circumstances of this case that warrant the fees.

15   However, I'm not going to spend too much time defending

16   the fees because we acknowledge that we're back into

17   Chapter 7, and we acknowledge that we are now constrained

18   by the provisions of Section 326 and that we will be

19   filing the applicable request for fees based on the

20   calculations that we must make under Section 2.6.

21        A COURT:  And so then the paralegal fees and that

22   sort of fee would be subsumed by the trustee -- utilized

23   by the trustee into the trustee's fee under 326.

24        MR. HAYS:  Well, the trustee's -- ultimately the

25   trustee's fee under 326 is going to be based on the
```

Transcript of CD

```
 1  statutory calculation only.  And nothing else.
 2      A COURT:  Which incorporates whatever professionals
 3  he had working in his office on this case.  They don't
 4  get a separate application.
 5      MR. HAYS:  Yeah.  No.  Those are -- those are
 6  professionals working within the trustee's office, your
 7  Honor.
 8      A COURT:  Okay.
 9      MR. HAYS:  Not necessarily the trustee's counsel.
10      A COURT:  So the issues over the one paralegal's
11  time really becomes a nonpoint.
12      MR. HAYS:  I would agree with that, your Honor.
13          With respect to the conversion and the order
14  for conversion, your Honors, I think that the issue was
15  briefed substantially and most of the -- the issues in
16  that regard were presented to you pursuant to our
17  briefing on that topic.
18          However, there were -- there were no notice
19  issues with respect to the trustee's request that the
20  case be converted to a Chapter 7.  In the trustee's
21  opposition to the debtor's motion, the trustee requested
22  on no less than four different pages within the motion
23  for the case to be reconverted to Chapter 7.
24          The debtor having read that must have been
25  aware that that was coming.  Also the Chapter 13 trustee
```

**Transcript of CD**

```
 1   himself requested that at the hearing.  The debtor had

 2   the opportunity to argue that orally.  The -- the debtor

 3   does not have an absolute right to dismiss, and we

 4   believe that the debtor's bad faith conduct in this case

 5   precludes the debtor from converting or dis -- or I

 6   apologize -- from dismissing the case, and we believe

 7   ultimately the debtor wished to convert to a Chapter 13

 8   in order to ultimately dismiss the case.

 9           Also the creditor's best interests are served

10   by remaining in a Chapter 7.  Your Honor, there were

11   existing creditors at the time of the request to convert

12   the case to a Chapter 13.  This wasn't a situation where

13   the debtor had paid off all of his creditors as you --

14   you brought to the debtor's attention.

15           There was a secured lienholder, which may have

16   not been secured at the time, but that is ultimately a

17   debt, a debt that the debtor is obligated to pay, a debt

18   that is owed by the debtor.  And also there were the

19   administrative fees.  And the trustee was of the opinion

20   that there were going to be other debts owed within a

21   very short period of time.  From the time --

22       A COURT:  Well, based on the schedules filed,

23   including what we see in the record was they are not an

24   unpaid insurance claim.

25       MR. HAYS:  Well, I believe that claim may have been
```

Transcript of CD

```
 1    filed after --

 2        A COURT:  Okay.

 3        MR. HAYS:  -- the debtor's request to convert.

 4    However, at the time that the debtor requested to

 5    convert, there was a claim by Wells Fargo in the amount

 6    of $118,000.  There was of course the claim of Goodrich

 7    Law Corporation in the amount of almost $15,000.  There

 8    was a claim of Quantum 3 Group in the amount of just over

 9    $200.  Those were all existing at the time that the

10    debtor moved to convert to Chapter 13.  And since, other

11    claims have been filed as well.

12             So the trustee is of the position that the

13    order to reconvert the case to Chapter 7 was warranted.

14    And with respect to that argument by the debtor, we don't

15    have much more to say about that unless you have

16    additional questions.

17        A COURT:  Thank you for your argument.

18        MR. HAYS:  Very well.  Thank you, your Honor.

19        A COURT:  Mr. Sui, we'll allow you two minutes.

20        MR. SUI:  Yes, your Honor, the Wells Fargo is a

21    secured creditor, secured, (inaudible) secured.  Putting

22    me in Chapter 7 is not doing Wells Fargo any good because

23    they are not going to be paid.  Right?

24             I -- personally I feel bound to dissolve my

25    debt to the Wells Fargo.  We have been paying all the
```

Transcript of CD

```
 1   time.
 2            Secondly, one point is Mr. Coolidge then, his
 3   law firm, his authorization -- his (inaudible) permanent
 4   was approved based on September 8th, 2011, amended
 5   application of the trustee.  So from September 8th, 2011,
 6   his claim was approved by the Bankruptcy Court.  Any
 7   charges before that is unauthorized.
 8            As I pointed out to the panel that on
 9   September the 6th, he charged me for four hours waiting
10   for nothing.  I did not agree to wait for him.  And if he
11   said if you go to bank -- the Family Court to taking the
12   paperwork, then you are never legally married.  I'm going
13   to walk away from this.  Okay, so fine, I'm going.  So I
14   left.  I did not say come back.
15            So on the 6th -- on September 6th charge is
16   unauthorized at all because it was before his (inaudible)
17   because it has no legal basis at all.
18            Now legal knowledge or not, it is according to
19   the California Family Law, because in California you must
20   have a legal license to be married.
21            Also the Federal Code -- Federal Code also
22   says must be a legal reunion of a man and woman.  That's
23   legal marriage.  So that's another case and another issue
24   on feeling through the U.S. District Court from -- from
25   the denial of the motion to dismiss the anniversary case
```

**Transcript of CD**

```
 1   against the -- my wife.  So there's another issue.

 2             But in this case, your Honor, very frankly,

 3   there's no creditors in this case if after the chapter

 4   has been converted to 13.  Because I paid them all off

 5   on -- by March the 3rd, 28th.  The Chapter 13

 6   confirmation hearing was held on April the 12th.  So no

 7   creditors.  So I have paid off every creditor, and this

 8   Bankruptcy Court case must have a creditor and a debt --

 9   debtor to existing to (inaudible) the case.  If there's

10   no debtor, there's no case.  If there's no creditor,

11   there's no case.

12             So in this matter there's -- Wells Fargo is

13   not an unsecured creditor under the protection of the

14   Bankruptcy Court.  They don't need.  Because we have paid

15   on time.  And our discharge -- reconverting me into

16   Chapter 7 is harming the interest of the Wells Fargo, is

17   not going to do them any good, so they serve no purpose

18   to reconversion to Chapter 7, your Honor.

19             And also in this total --

20        A COURT:  Thank you.  Your time's expired.

21        MR. SUI:  Thank you very much, your Honors.

22        A COURT:  We appreciate your good arguments.

23        MR. SUI:  Thank you.

24        A COURT:  Thank you, counsel.  We'll deem this case

25   submitted for decision.
```

1
2                        REPORTER'S CERTIFICATE
3
4
5
6            The undersigned Certified Shorthand Reporter
7    licensed in the State of California does hereby certify:
8            That the foregoing proceedings were reported by
9    me from a CD provided to me by Yan Sui, Appellant;
10           That the proceedings transpiring herein were
11   recorded stenographically by me to my best ability to
12   hear and understand said CD and were thereafter
13   transcribed, said transcript being a true copy of my
14   shorthand notes thereof.
15           In witness whereof, I have subscribed my name
16   this date:  5/27/2013.
17
18
19   _____
20           Linda A. Simpson, CSR #2266
                     RMR, CRR
21
22
23
24
25
                                                          27

SIMPSON DEPOSITION SERVICES (800) 505-9994

Exh. List 10

1            UNITED STATES BANKRUPTCY APPELLATE PANEL

2                     OF THE NINTH CIRCUIT

3

4    IN RE:                          )
                                     )
5    YAN SUI,                        )
                   DEBTOR.           )
6    _____)BAP NO. CC-12-1572-TASPD

7    YAN SUI; PEI-YU YANG,           )  TRANSCRIPT OF AUDIOTAPE
                                     )
8                  APPELLANTS,       )
     V.                              )
9                                    )
     RICHARD A. MARSHACK, CHAPTER 7  )
10   TRUSTEE,                        )
                   APPELLEE.         )
11   _____)

12

13

14

15           TRANSCRIPT OF AUDIOTAPED PROCEEDINGS

16                  SEPTEMBER 18, 2014

17

18        BEFORE JUDGES TAYLOR, SPRAKER AND DUNN

19

20

21

     REPORTER:        LINDA A. SIMPSON, CSR
22                    CRR, RMR, CCRR
                      CERTIFICATE NO. 2266
23

24

25

26

```
 1   APPEARANCES:

 2

 3         FOR THE DEBTOR/APPELLANT:

 4             (PRO SE)

 5

 6         FOR THE APPELLEE:

 7             CHAD V. HAES,
               ATTORNEY AT LAW

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26
```

```
 1            PASADENA, CALIFORNIA - SEPTEMBER 18, 2014

 2              (AUDIOTAPED PROCEEDINGS REPORTED HEREIN:)

 3        MR. YAN SUI:  GOOD MORNING, YOUR HONORS.  MAY IT

 4   PLEASE THE COURT, DAP TAN YAN SUI (INAUDIBLE).

 5        JUDGE DUNN:  HOW DO YOU PRONOUNCE YOUR NAME?  THAT

 6   WOULD HELP FIRST.

 7        MR. YAN SUI:  YAN SUI.

 8        JUDGE DUNN:  ALL RIGHT, MR. SUI, DO YOU WANT TO

 9   RESERVE ANY TIME FOR REBUTTAL?

10        MR. YAN SUI:  YES, YES.

11        JUDGE DUNN:  HOW MUCH TIME?

12        MR. YAN SUI:  FIVE MINUTES OVER.

13        JUDGE DUNN:  ALL RIGHT.  YOU MAY PROCEED.

14        MR. YAN SUI:  IF -- IF IT MAY PLEASE THE COURT, SUI

15   WOULD CONTEND TO THE COURT THAT THE BANKRUPTCY COURT AT

16   THIS TIME MADE ANOTHER SNAP JUDGMENT AGAIN BECAUSE THE

17   MOTION BY TRUSTEE AND THE ORDER BY THE COURT DOES NOT LIST

18   THE GOVERNING PROVISION OF THE CALIFORNIA CODE OF CIVIL

19   PROCEDURE 391 TO DEEM VEXATIOUS LITIGANT.

20        JUDGE DUNN:  WELL, LET'S NOT GO THERE BECAUSE WE'RE

21   NOT BOUND BY OUR CALIFORNIA RULES, AND NEITHER WAS THE

22   BANKRUPTCY COURT.  THAT'S A MATTER THAT COULD

23   HAVE BEEN CONSIDERED ON THE LOCAL RULES, BUT THE BANKRUPTCY

24   COURT DIDN'T HAVE TO.  SO YOU MAY HAVE PLENTY OF WINNERS IN

25   YOUR BAG OF TRICKS AND ARGUMENTS TODAY, BUT THAT'S NOT ONE

26   OF THEM.
```

1       MR. YAN SUI:  OKAY, SO ON AUGUST -- LET'S MOVE ON TO

2   THE FEDERAL LAW.  THERE'S NO FEDERAL LAW SAYS THAT IF

3   A DEBTOR HAVE FILE SO MANY PLEADINGS, THIS

4   DEBTOR IS VEXATIOUS LITIGANT BECAUSE FIRST OF ALL, YOU NEED

5   TO EXAMINE THE PLEADINGS AND THE MERITS AND FACTS IN THOSE

6   PLEADINGS TO EXAMINE IF THEY ARE MERITLESS OR THEY DO HAVE

7   MERITS.  THE ONLY FAST PROOF THAT THEY ARE ALL MERITORIOUS

8   BECAUSE THEY ARE NEVER FRIVOLOUS BECAUSE IF -- OTHERWISE I

9   COULD NOT HAVE OVERTURNED THE FEES, OMISSIONS, AND EVEN THE

10  DISTRICT COURT DEEMED THAT MY LAWSUIT AGAINST THE HOA IS

11  NOT A FRIVOLOUS LAWSUIT, ALTHOUGH IT IS LEGALLY

12  INSUFFICIENT.

13          SO I BELIEVE THAT IT IS THE TRUSTEE'S BURDEN TO

14  PROVE TO THE COURT TO PRESENT THE CASE AND PRESENT THE

15  MOTIONS WHICH OF SUI'S PLEADINGS WITH THE DISTRICT COURT OF

16  WHEREVER IS FRIVOLOUS OR NO MERIT.  THEY DID NOT DO THAT.

17  WHAT THE BANKRUPTCY JUDGE DO IS THEY JUST COPY EVERYTHING,

18  THEIR FINDINGS OF LAW, CONCLUSIONS LAW, FACTS, YOU KNOW,

19  INTO ORDER WITHOUT ANY OF HER ANALYSIS.

20          SO BY -- IN PUTTING ANOTHER WAY THERE WAS NO

21  LEGAL STANDARDS TO ARTICULATE HOW SUI OR SUI YAN DID BECOME

22  VEXATIOUS.  NO SUCH FINDING BY LAW OR BY FACTS.  SO THE

23  MOTION IS GROUNDLESS, AND THE ORDER IS GROUNDLESS TOO YOUR

24  HONOR.  THERE'S NO SUCH SHOWING.

25          BECAUSE IF THEY -- IF THEY CITE ANY FEDERAL LAW

26  TO SAY, HEY, IF A DEBTOR FILE SO MANY PLEADINGS OVER THE

1   MOTIONS, YOU NEED TO EXAMINE, WHICH OF THOSE HAS MERIT,

2   WHICH HAS -- HAS NOT.  BUT THERE IS NO SUCH SHOWING.  THEY

3   JUST SAY WHATEVER THEY WANT.  AND THEY APPARENTLY JUST GIVE

4   THEM WHATEVER THEY WANTED.  THAT'S THE CASE HERE, YOUR

5   HONOR

6           JUDGE TAYLOR:  LET ME ASK YOU JUST A

7   COUPLE OF QUESTIONS.  ONE IS DID YOU FILE IN THE BANKRUPTCY

8   ANY ADVERSARY PROCEEDINGS AGAINST THE TRUSTEE?  YOU FILED

9   SOMETHING IN STATE OR IN --

10          MR. YAN SUI:  NO, IN THE DISTRICT COURT.

11          JUDGE TAYLOR:  IN THE DISTRICT COURT.

12          MR. YAN SUI:  YES.

13          JUDGE TAYLOR:  OKAY.  AND DO YOU -- IN THE BANKRUPTCY

14  COURT YOU FILED RESPONSES TO MOTIONS?

15          MR. YAN SUI:  YEAH.

16          JUDGE TAYLOR:  YOU OPPOSED MOTIONS?

17          MR. YAN SUI:  YES, OF COURSE, YES.

18          JUDGE TAYLOR:  AND YOU APPEALED.

19          MR. YAN SUI:  YEAH.  WELL, WE --

20          JUDGE TAYLOR:  ON OCCASION.

21          MR. YAN SUI:  YES, YEAH.

22          JUDGE TAYLOR:  ALL RIGHT, THANK YOU.

23          MR. YAN SUI:  THANK YOU.  ANY QUESTION FROM YOUR

24  HONORS?

25          JUDGE DUNN:  ALL RIGHT, THANK YOU VERY MUCH.  GOOD

26  MORNING.

```
 1        MR. HAES:  GOOD MORNING, YOUR HONOR.

 2        JUDGE DUNN:  YOU KNOW, I'M GOING TO START IT OUT

 3   UNFORTUNATELY WITH:  THIS MAY BE A LITTLE BIT DIFFICULT.

 4   ARE YOU FAMILIAR WITH THE CIRCUIT'S RECENT DECISION IN

 5   JUSTIN RINGGOLD-LOCKHART?

 6        MR. HAES:  NO, I HAVE NOT READ THE DECISION, YOUR

 7   HONOR.

 8        JUDGE DUNN:  ALL RIGHT.  IT SAYS A NUMBER

 9   OF THINGS THAT HAVE RELEVANCE IN RELATION TO THIS CASE, BUT

10   ONE OF THE THINGS IT STATES VERY CLEARLY IN OVERTURNING THE

11   DISTRICT COURT'S VEXATIOUS LITIGANT DETERMINATION IS THAT

12   PREFILING MERITS REVIEWS ARE UNWORKABLE.

13             AND TO THE EXTENT THAT ORDER -- THE ORDER IN

14   THIS CASE INVOLVES THE SAME SORT OF THING, WE DON'T SEE IN

15   LIGHT OF THE CIRCUIT'S OPINION THAT WE HAVE ANY OPTION BUT

16   TO VACATE AND RE -- AT LEAST VACATE AND -- AND REMAND ON

17   THAT BASIS.

18        MR. HAES:  I AM VERY SURPRISED TO HEAR THAT, YOUR

19   HONOR, AND I'M VERY DISAPPOINTED TO HEAR THAT, YOUR HONOR.

20   THIS IS A CASE WHERE THE APPELLANTS HAVE BEEN ACTING IN

21   CONCERT FOR MANY YEARS TO FILE NUMEROUS REPETITIVE AND

22   MERITLESS --

23        JUDGE TAYLOR:  BUT ISN'T THERE SOMETHING YOU CAN DO

24   ON THE REPETITION THAT'S FAR -- I MEAN, I THINK JUDGE

25   BERZON'S DECISION, SHE REALLY HITS HARD AT -- AT THINGS

26   OF -- RIGHT TO ACCESS TO JUSTICE AND CONSTITUTIONAL ISSUES.
```

1              AND ONE OF THE POINTS IS THAT THEY ARE MAKING
2    REPETITIVE ARGUMENTS.  YOU SEEK SANCTIONS OR YOU SEEK SOME
3    SORT OF ORDER THAT SAYS THAT THEY WILL BE SANCTIONED FROM
4    MAKING THAT ARGUMENT IN THE FUTURE.  I MEAN, I'VE SEEN
5    VEXATIOUS LITIGANTS, AND I CAN BE ACCUSED OF BEING TOO
6    PATIENT, SO I'LL -- I'LL PUT THAT OUT THERE, BUT --
7         MR. HAES:  NO ONE ELSE WOULD EVER SAY THAT.
8         JUDGE TAYLOR:  MANY PEOPLE WOULD SAY THAT.  BUT
9    INCLUDED IN YOUR -- YOUR LIST, JUST NUMERICALLY IS THE FACT
10   THAT HE FILED A BANKRUPTCY.  INCLUDED IN YOUR
11   LIST ARE HIS INITIAL OPPOSITIONS TO MOTIONS, INCLUDED IN
12   YOUR LIST IS HIS INITIAL APPEAL.  I MEAN IT'S -- YOU FILED
13   THINGS, HE OBJECTED.  AND I'M PUTTING ASIDE THE -- THE
14   LAWSUITS AGAINST THE TRUSTEE ISSUE.
15              BUT JUST IN TERMS OF HIS OVERALL CONDUCT OF THE
16   CASE, I'VE GOT IT -- GOT TO SAY I WISH THAT IT WAS -- I
17   FELT IT WAS APPROPRIATE TO STOP PEOPLE AT THIS POINT, AND I
18   KNOW THAT YOU'VE GOT THINGS IN OTHER COURTS, BUT I'M
19   CONCERNED.  AS TO HER, SHE DIDN'T INITIATE ANYTHING.
20        MR. HAES:  YOUR HONOR, ONE OF THE REASONS THAT MANY
21   OF THOSE PLEADINGS WERE INCLUDED IN THE RECORD IN OUR USUAL
22   MOTION FOR PRETRIAL ORDER IS BECAUSE OF THE REPETITIVE
23   NATURE OF THE ARGUMENTS CONTAINED WITHIN THOSE PLEADINGS.
24              THESE PLEADINGS HAVE ABSOLUTELY NO MERIT.  WE
25   ARE FORCED TO RESPOND TO ALL OF THESE PLEADINGS.  THEY ARE
26   MERITLESS PLEADINGS, THEY ARE REPETITIVE PLEADINGS, THEY

1  CONTAIN ARGUMENTS THAT HAVE BEEN REJECTED ON EVERY LEVEL.

2  THEY CONTAIN ARGUMENTS THAT MAKE ABSOLUTELY NO SENSE.  THEY

3  CONTAIN ARGUMENTS THAT NOTWITHSTANDING THE FACT THAT

4  THEY'VE BEEN REJECTED, THE APPELLANTS CONTINUE TO RAISE

5  OVER AND OVER AND OVER --

6        JUDGE TAYLOR:  BUT ISN'T THE CORRECT -- AGAIN, IF

7  WE'RE TALKING ABOUT A REPETITION OF AN ARGUMENT

8  THAT -- FIRST OF ALL, YOU GET ONE BITE AT ABOUT EVERY

9  APPLE, DON'T YOU.  ARE YOU GOING TO ARGUE THAT OUR

10 ADVERSARIAL SYSTEM MEANS THAT TRUSTEES SHOULD BE PROTECTED

11 FROM THE VERY FIRST TIME AN ARGUMENT IS RAISED?

12       MR. HAES:  I AGREE WITH THAT, YOUR HONOR.

13       JUDGE TAYLOR:  WELL, THAT'S IN YOUR LIST.  THE VERY

14 FIRST TIME THE ARGUMENTS, TO GET TO YOUR NUMBER, I'VE GOT

15 TO PENALIZE HIM OR HE'S BEING PENALIZED FOR SAYING IT TIME

16 ONE.  NOT TIME TEN, TIME ONE.

17       MR. HAES:  WELL, YOUR HONOR, WE --

18       JUDGE TAYLOR:  I THINK IT'S A LITTLE HYPERBOLIC IS MY

19 POINT.

20       MR. HAES:  HOWEVER, YOUR HONOR, WE HAD TO RAISE IT

21 THE FIRST TIME THE ISSUE WAS ARGUED IN ORDER TO SHOW YOU

22 THAT THE FOLLOWING LINES HAD THE SAME ISSUE --

23            (SIMULTANEOUS DIALOG.)

24       JUDGE TAYLOR:  But what you said is you gave a

25 specific number of meritless pleadings, and my point is one

26 of them is the petition.  And one of the them is the first

http://www.yeslaw.net/help

1   time he made the argument.  And one of them is the first

2   time he sought reconsideration.  And one is the first time

3   he appealed.  So at some level, if I run through those

4   things, I don't think people who do that are vexatious

5   litigants.  So I have to discount your number right there.

6   And that hence hyperbole.

7        MR. HAES:  WELL, YOUR HONOR, THE REASON WE LISTED THE

8   PETITION IN THE FIRST PLACE IS BECAUSE THE DEBTOR

9   SUBSEQUENTLY MOVED TO DISMISS THE CASE.  THE DEBTOR

10  ESSENTIALLY --

11       JUDGE TAYLOR:  HE TAKES A POSITION HE'S

12  PAID EVERYBODY.  AND HE DOESN'T WANT TO LOSE HIS HOME.

13       MR. HAES:  WELL, AND, YOUR HONOR, DEBTOR ESSENTIALLY

14  FILED THE PETITION, LATER ON TAKES THE POSITION THAT THE

15  CASE SHOULD BE DISMISSED, THAT THE DEBTOR MADE BAD FAITH

16  DECISIONS, NOT ONLY WITHIN THE BANKRUPTCY CASE BUT PRIOR TO

17  THE CASE FILING.

18            IT'S OUR POSITION THAT IF HE'S GOING TO

19  SUBSEQUENTLY MOVE TO DISMISS, THEN TO CERTAIN EXTENT, TO A

20  CERTAIN EXTENT, AND I UNDERSTAND YOUR HONOR'S POSITION, BUT

21  THE FILING IN THE FIRST PLACE WAS POTENTIALLY A BAD FAITH

22  FILING.

23            SO WE DID LIST INITIAL PLEADINGS, THERE --

24  THERE'S NO QUESTION ABOUT THAT.  BUT ONE OF THE PRIMARY

25  REASONS THAT WE LISTED INITIAL PLEADINGS AND INITIAL

26  OPPOSITIONS IS BECAUSE WE HAD TO SHOW THE FIRST TIME THAT

1  THE ARGUMENTS WERE MADE IN ORDER TO SHOW ALL THE SUBSEQUENT

2  TIMES THAT THE EXACT SAME --

3      JUDGE TAYLOR:  BUT YOU DIDN'T HAVE TO INCLUDE THEM IN

4  THE TOTAL.  HYPERBOLE.

5      MR. HAES:  UNDERSTOOD, YOUR HONOR.

6      JUDGE TAYLOR:  THEN THAT HURTS YOUR ARGUMENT GOING

7  FORWARD.  I MEAN, WHEN YOU START OUT TELLING ME THIS IS THE

8  WORST THING I'VE EVER SEEN AND I CAN RIGHT OUT OF THE BOX

9  GO, "WELL, NO, I'VE SEEN A LOT WORSE."  AND IN FACT, SOME

10 OF THIS ISN'T EVEN BAD.  THAT DOESN'T -- THAT -- AND THE

11 JUDGE DIDN'T QUESTION THIS.  I AM.  WE ARE.

12     MR. HAES:  WELL, YOUR HONOR, THE -- I NEVER SAID THAT

13 THIS IS THE WORST THING I'VE EVER SEEN, YOUR HONOR.

14     JUDGE TAYLOR:  NO, YOU DIDN'T.  YOU DIDN'T.

15     MR. HAES:  AND WE DIDN'T SAY THAT IN THE MOTION

16 EITHER, YOUR HONOR.  THIS IS A CASE THAT HAS LONG

17 BEEN ADMINISTRATIVELY INSOLVENT.  AND, YOUR HONOR, THIS IS

18 A CASE WHERE THERE HAVE BEEN MANY, MANY, MANY COMPLETELY

19 MERITLESS AND REPETITIVE FILINGS.  AND I UNDERSTAND YOUR

20 HONOR'S POINT WITH RESPECT TO POTENTIALLY THERE BEING OTHER

21 OPTIONS AVAILABLE TO THE TRUSTEE.

22         HOWEVER, YOUR HONOR, THIS IS A CASE THAT WE

23 FEEL COMPLETELY MEETS THE FOUR DE LONG FACTORS AS

24 ENUNCIATED BY THE NINTH CIRCUIT

25     JUDGE TAYLOR:  YOU'VE GOT TO READ THE NEW CASE.

26 THAT'S THE PROBLEM.

1        MR. HAES:  WOULD YOU -- WOULD YOU GIVE ME THE NAME OF

2   THAT CASE, PLEASE?

3        JUDGE DUNN:  YEAH, IT'S IN RE --

4        JUDGE TAYLOR:  IT'S RINGGOLD --

5        JUDGE DUNN:  -- JUSTIN RINGGOLD-LOCKHART, AND 2014

6   WESTLAW 3805579.  AND IT WAS DECIDED BY THE CIRCUIT AUGUST

7   4TH THIS YEAR.

8        JUDGE TAYLOR:  YEAH, IT WAS RIGHT IN TIME.  SO --

9        MR. HAES:  I UNDERSTAND YOUR -- YOUR POINTS, YOUR

10  HONOR.  AND WE PERSONALLY, THE TRUSTEE, CONTENDS THAT THERE

11  IS NO OTHER WAY, THAT THERE IS NO BETTER WAY TO AT LEAST

12  MONITOR THE APPELLANT'S FILINGS THAN THE ISSUANCE OF

13  PREFILING --

14        JUDGE TAYLOR:  WHY --

15        JUDGE DUNN:  ALL RIGHT, BUT LET'S LOOK AT SOME OF THE

16  TERMS OF THIS PARTICULAR PREFILING ORDER.  JUST, YOU KNOW,

17  WE'VE DISCUSSED BRIEFLY THE INITIAL MERITS REVIEW.  AND I

18  AGREE WITH THE NINTH CIRCUIT PERSONALLY.  I MEAN, HOW DO

19  YOU EVEN ADMINISTER THAT?

20             MAYBE THE -- THE BANKRUPTCY COURT CAN LOOK TO

21  SEE IF THERE ARE COGNIZABLE CLAIMS AND CAN SEE IF THEY ARE

22  PLED PURSUANT TO IQBAL-TWOMBLY STANDARDS AS ENUNCIATED BY

23  THE SUPREME COURT.  BUT EVEN THERE, THERE'S -- ONCE YOU'VE

24  GOTTEN BEYOND THAT, HOW DO YOU EVEN DO IT?

25        MR. HAES:  YOUR HONOR, IT'S VERY EASY FOR THE

26  BANKRUPTCY COURT TO REVIEW A PLEADING AND QUICKLY

1   ADDRESS WHETHER OR NOT THESE ARE THE EXACT SAME ISSUES THAT

2   CONSIDER --

3                 (SIMULTANEOUS DIALOG.)

4        JUDGE TAYLOR:  But that's a different order.  But

5   that's a different order, an order that says if

6   you make this argument again, this argument has been

7   rejected.  Until it's reversed to appeal, don't include it;

8   and if you do, there's a coercive monetary sanction.

9   That's easily administered.  You could file a document on a

10  totally different topic in this case.

11               AND SHE'S GOT TO DO A MERITS REVIEW, AND I

12  DON'T KNOW HOW THE ADVERSARIAL PROCESS, DOES IT SHUT DOWN?

13  SHE HAS -- SHE HAS -- YET A -- SHE -- SHE'S TAKEN YOU OUT

14  OF THE ADVERSARIAL PROCESS, INSTEAD OF YOU TELLING HER

15  WHAT'S WRONG WITH IT, SHE'S BECOME BOTH THE TRIER OF

16  FACT -- SHE'S BECOME THE ACCUMULATOR OF EVIDENCE, SHE'S PUT

17  HERSELF IN AN IMPOSSIBLE POSITION.  ANY JUDGE WOULD.

18               SO I THINK THAT THE REPETITIOUS ARGUMENT, I --

19  I FEEL YOUR PAIN, BUT I THINK THERE'S A MUCH MORE LIMITED

20  WAY TO DO THAT IF THAT'S REALLY THE CONCERN HERE, THAT YOU

21  JUST WON'T GIVE UP THAT ARGUMENT

22       JUDGE DUNN:  NOW, ANOTHER QUESTION THAT I'VE GOT THAT

23  WAS RAISED IN OUR REVIEW OF THE ORDER IS THAT IN THE FIRST

24  SENTENCE, IT SAYS THAT THE CLERK WILL ACCEPT NO FURTHER,

25  QUOTE, INITIATING DOCUMENTS, UNQUOTE, FOR FILING.

26               AND THEN IT GOES ON TO SAY ANY PLEADINGS

1    RECEIVED SHALL BE STAMPED RECEIVED, WHICH WILL BE FORWARDED

2    TO THE COURT.  AND THEN IT GOES ON TO THE SECTION ON MERITS

3    REVIEW.

4                BUT IF WE'RE REALLY TALKING ABOUT INITIATING

5    PLEADINGS, DID MS. YANG EVER FILE WHAT WOULD BE CALLED --

6    CONSIDERED AN INITIATING PLEADING?  OR DIDN'T SHE JUST

7    RESPOND TO PLEADINGS FROM OTHER PARTIES?

8          MR. HAES:  WELL, YOUR HONOR, THERE WAS A

9    LAWSUIT.  ACTUALLY THERE WERE SEVERAL LAWSUITS THAT WERE

10   FILED BY YAN SUI AND MISS YANG.

11         JUDGE DUNN:  IN THE BANKRUPTCY COURT?

12         MR. HAES:  NOT -- NOT IN THE BANKRUPTCY COURT.

13         JUDGE DUNN:  SO -- SO WHAT INITIATING PLEADINGS WERE

14   FILED BY -- BY HER IN THE BANKRUPTCY COURT?

15         MR. HAES:  YOUR HONOR, IT -- IT'S -- IT'S OUR

16   CONTENTION THAT -- AND TO ANSWER YOUR QUESTION, YOUR HONOR,

17   I DON'T KNOW THAT THERE WERE ANY INITIATING PLEADINGS.

18         JUDGE DUNN:  ALL RIGHT, SO -- SO AS A

19   PRACTICAL MATTER, MS. YANG'S NOT HERE.  HER PARTICIPATION

20   IF AT ALL IN THIS APPEAL IS EXCEEDINGLY LIMITED.  BUT

21   ARGUABLY, SHE COULD GO ON IN THE BANKRUPTCY COURT EXACTLY

22   AS SHE HAD IN THE PAST; AND AS LONG AS ALL SHE FILED WAS

23   RESPONSIVE PLEADINGS, SHE COULD LEGITIMATELY SAY, "THIS

24   ORDER DOESN'T COVER ME."

25         MR. HAES:  WELL, YOUR HONOR, AND YOU RAISE A

26   GOOD POINT, WHICH I AGREE WITH, YOUR HONOR, IS THAT THE --

1  THE APPELLANTS ARE NOT LIMITED FROM RESPONDING TO

2  PLEADINGS.  NEITHER IS -- IS MR. SUI.  HE'S NOT LIMITED

3  FROM RESPONDING TO PLEADINGS EITHER.

4           IF THE TRUSTEE FILES AN INITIATING PLEADING, HE

5  CAN CERTAINLY OPPOSE THAT PLEADING.  THERE'S NO -- THERE'S

6  NO RESTRICTION ON THAT IN THE ORDER --

7       JUDGE DUNN:  ALL RIGHT, BUT THEN, YOU KNOW, THEY CAN

8  MAKE THAT ARGUMENT, BUT THE LANGUAGE OF THE ORDER IS SO

9  BROAD, THAT'S VERY AMBIGUOUS.

10      JUDGE TAYLOR:  YEAH, I MEAN, I DON'T THINK THAT'S

11 CLEAR.  I THINK THAT THERE'S SOME PROTECTIVE THINGS YOU

12 COULD DO.  I THINK THIS ORDER IS -- IS -- IT WOULD BE -- IF

13 A DIFFERENT JUDGE HAD THE ORDER, I THINK IT

14 WOULD BE VERY DIFFICULT TO ADMINISTER.

15      MR. HAES:  ACTUALLY, YOUR HONORS, THE ORDER IS CLEAR,

16 AND IT CLEARLY SAYS STATES THAT THEY MY FILE RESPONSIVE

17 PLEADINGS.  AND THERE'S NOTHING THAT SUBJECTS THOSE TYPES

18 OF PLEADINGS TO THE MERITS REVIEW THAT YOU SUGGESTED

19 EARLIER.  THEY CAN ALSO --

20      JUDGE TAYLOR:  YOU THINK THAT'S CLEAR.

21      MR. HAES:  YES, YOUR HONOR.  IT IS.  AND THEY CAN

22 ALSO -- WELL, IT IS OUR POSITION THAT IT'S CLEAR.  YOU

23 MIGHT EVEN THINK OTHERWISE, BUT WE BELIEVE THAT POINT WAS

24 MADE VERY CLEAR IN THE ORDER.

25          ALSO THEY -- THEY CAN APPEAL AND HAVE APPEALED

26      JUDGE TAYLOR:  THEY CLEARLY CAN APPEAL.  I AGREE WITH

1 YOU ON THAT.  I THINK THAT'S CLEAR.  I DON'T -- I DON'T

2 KNOW HOW YOU WOULD CUT OFF THE RIGHT OF APPEAL.

3      MR. HAES:  AND THEY HAVE, YOUR HONOR.  THEY APPEALED

4 EVERY ORDER THAT'S ENTERED IN THE BANKRUPTCY COURT.

5      JUDGE DUNN:  WELL, AN ALTERNATIVE HERE, IF AT THIS

6 POINT THEY SAY ALL THE CLAIMS HAVE BEEN PAID, YOU'RE

7 TELLING ME THAT THE ESTATE IS ADMINISTRATIVELY INSOLVENT,

8 WHY DOESN'T THE TRUSTEE JUST FILE A FINAL REPORT

9 BASED ON WHAT'S RECEIVED AND GET IT CLOSED?

10      MR. HAES:  BECAUSE THE CLAIMS HAVE NOT BEEN PAID.

11      JUDGE TAYLOR:  BUT YOU'RE TELLING US THEY CAN'T BE

12 PAID.

13      MR. HAES:  WELL, ACTUALLY, THE -- THERE ARE HUNDREDS

14 OF THOUSANDS OF DOLLARS OF ADMINISTRATIVE CLAIMS, AND WE'RE

15 NOT -- WE'RE NOT SUGGESTING IN ANY WAY, SHAPE OR FORM THAT

16 ADMINISTRATIVE CLAIMS AREN'T ENTITLED TO PAYMENT IN THIS

17 CASE.

18      JUDGE DUNN:  ALL RIGHT, SO -- SO THAT THE PROPERTY

19 THAT YOU FOUGHT OVER AND RECOVERED, THIS NEEDS TO BE

20 LIQUIDATED IN YOUR VIEW, AND YOU CAN'T CLOSE THE CASE TILL

21 THAT'S DONE.

22      MR. HAES:  CORRECT, YOUR HONOR.

23      JUDGE DUNN:  OKAY.

24      MR. HAES:  AND THAT'S NOT TO SAY THAT THE TRUSTEE'S

25 MADE A FINAL DECISION OR DETERMINATION AS TO

26 WHETHER OR NOT THERE'S GOING TO BE SOME FORM OF CARVE-OUT

http://www.yeslaw.net/help

LINDA A. SIMPSON, CSR #2266, RMR, CRR

1  FOR UNSECURED CREDITORS --

2      JUDGE TAYLOR:  TRUE.

3      MR. HAES:  -- OR OTHER CREDITORS IN THE CASE.

4      JUDGE TAYLOR:  TRUE.

5      MR. HAES:  THAT'S UP TO THE TRUSTEE'S DISCRETION, AND

6  HE CAN MAKE THAT DECISION, AND I'M SURE THAT THE TRUSTEE

7  WILL ADDRESS THAT WHEN THE TIME COMES.

8          HOWEVER, THE CLAIMS HAVE NOT BEEN PAID.

9  THAT -- THAT'S ONE OF THOSE ARGUMENTS THAT THEY KEEP ON

10 ASSERTING, THAT COMPLETELY LACKS MERIT.  THE CLAIMS HAVE

11 NOT BEEN PAID.  THERE ARE SEVERAL CLAIMS LISTED ON THE

12 CLAIMS DOCKET.  THERE ARE THE ADMINISTRATIVE CLAIMS AS

13 WELL.

14         NONE OF THOSE CLAIMS HAVE BEEN ORDERED -- NONE

15 OF THOSE CLAIMS HAVE BEEN PROPERLY OBJECTED TO OR REJECTED

16 BY THE BANKRUPTCY COURT.  THEY ARE STILL PENDING CLAIMS.

17 THERE HASN'T BEEN ANY LIQUIDATION OR THERE HASN'T BEEN

18 ANY -- ANY DISTRIBUTIONS MADE IN THIS CASE BY THE TRUSTEE.

19         THERE ARE LEGITIMATE BONA FIDE CLAIMS ON THE

20 BANKRUPTCY CLAIMS DOCKET.  THAT'S ANOTHER ONE OF THE

21 ARGUMENTS THAT THEY KEEP ON MAKING.  THEY SAY, "WE OFFERED

22 TO PAY THIS BUT WE DIDN'T QUITE PAY IT IN FULL; THERE'S

23 OTHER CLAIMS WE OBJECTED TO AND BECAUSE..." --

24     JUDGE TAYLOR:  BUT THEY ARE NOT GOING TO BE PAID

25 ANYWAYS UNLESS THE TRUSTEE DECIDES TO DO A

26 CARVE-OUT.

1      MR. HAES:  CORRECT, YOUR HONOR.  BUT THE TRUSTEE

2   HASN'T REACHED THAT POINT YET.  THE TRUSTEE DOESN'T EVEN

3   HAVE REALLY --

4      JUDGE TAYLOR:  HAS THE TRUSTEE LIQUIDATED THE HOME?

5   I MEAN, ONE QUESTION I HAVE IS WHAT'S LEFT IN THE CASE?

6   BECAUSE THERE'S REALLY -- IS THIS ALL MOOT, THIS SORT OF

7   ONE QUESTION?  I GUESS THE ANSWER IS:  IT'S NOT THAT

8   EASY.

9      MR. HAES:  YOUR HONOR, WE'RE IN THE PROCESS OF

10  GETTING THERE.  THERE WERE SEVEN OR EIGHT APPEALS THAT WENT

11  ALL THE WAY UP TO THE NINTH CIRCUIT.  THE NINTH CIRCUIT

12  RECENTLY AFFIRMED ALL -- EVERY ONE OF THEM EXCEPT A SINGLE

13  ONE THAT WAS NOT RELATED TO BANKRUPTCY AT ALL.  THAT WAS

14  A TECHNICAL ISSUE.  IT WAS A TECHNICALITY.

15          HOWEVER, THE NINTH CIRCUIT AFFIRMED ALL OF THE

16  ORDERS GOING ALL THE WAY UP.  THERE ARE CURRENTLY FIVE

17  PETITIONS FOR WRIT OF CERT PENDING AT THE SUPREME COURT

18  LEVEL THAT HAVE BEEN FILED BY THE APPELLANTS.  THIS IS

19  NEVER GOING TO STOP.  WE'RE TRYING --

20      JUDGE DUNN:  OH, IT WILL.  IT WILL STOP.

21      JUDGE TAYLOR:  IT WILL.

22      JUDGE DUNN:  ONCE YOU'VE -- ONCE YOU'VE SOLD THE

23  HOUSE AND THE PROCEEDS ARE GONE, IT WILL STOP.

24      MR. HAES:  NO, YOUR HONOR.  THAT -- IT WILL NOT STOP.

25  THEY WILL NOT STOP.  THEY WILL NEVER STOP.  WE'RE IN THE

26  PROCESS OF --

```
 1          JUDGE DUNN:  WELL --
 2          MR. HAES:  THEY'LL FILE POST PETITION LAWSUITS OR AT
 3     LEAST ATTEMPT TO FILE POST PETITION LAWSUITS.  THEY ARE
 4     GOING TO --
 5          JUDGE TAYLOR:  THAT'S YOUR -- THAT'S A
 6     DIFFERENT ISSUE, WHICH IS THE ISSUE OF PROTECTING THE
 7     TRUSTEE AND MAKING CLEAR, I MEAN, TO ME, THAT PARTICULAR
 8     ORDER IS -- IS REDUNDANT OF EXISTING LAW, SORT OF A BELT,
 9     SUSPENDERS, AND TYPE PANTS.
10              I GUESS WHAT I'M -- WHAT I'M STRUGGLING WITH IS
11     OUR ABILITY TO CUT OFF ACCESS TO THE COURTS.  AND WHEN YOU
12     READ RINGGOLD, LOOK AT THE NUMBER OF CASES.  AND SHE --
13     JUDGE BERZON SUGGESTED IT MAY BE IMPOSSIBLE TO EVER JUSTIFY
14     ONE OF THESE ORDERS BASED ON LAW AND MOTION PRACTICE, WHICH
15     IS --
16          MR. HAES:  NO, YOU KNOW --
17          JUDGE TAYLOR:  MAYBE.
18          JUDGE DUNN:  -- THAT'S -- AND THAT'S GOING TO BE
19     SUBJECT TO FUTURE INTERPRETATION.  NOW I THINK THERE MAY BE
20     HYPERBOLE THERE.  AND THE FACT IS THAT THE NINTH CIRCUIT
21     DOESN'T -- DOESN'T RETREAT FROM REVIEWING THESE ORDERS FOR
22     ABUSE OF DISCRETION.
23          JUDGE TAYLOR:  BUT THE POINT IS THAT'S WHERE YOU'RE
24     GOING NEXT.  AND THIS IS THE MOST RECENT WORD.  SO ONE
25     QUESTION IS WHAT IN THIS -- IN THIS UNIVERSE CAN WE DO?
26     AND IT SEEMS TO ME IT'S CLEAR WITHOUT QUESTION THAT YOU
```

1   COULD HAVE A -- A ORDER THAT DIRECTS THAT CERTAIN THINGS,

2   IF NOT BE FILED THAT IF THEY ARE FILED, IT'S CONTEMPT, AND

3   IT HAS A COERCIVE SANCTION OF SIGNIFICANT MONETARY WEIGHT

4   THAT WOULD BE ASSESSED AGAINST NOT PRE PETITION ASSETS BUT

5   POST PETITION ASSETS.

6        MR. HAES:  WILL ALL OF THAT BE LISTED IN YOUR

7   OPINION, YOUR HONOR?

8        JUDGE TAYLOR:  I MEAN, I JUST -- THAT'S WHAT -- I

9   MEAN, TO SOME EXTENT, I'M TRYING TO STRUGGLE HERE WITH IT.

10  AND I MENTION THAT POINT THAT JUDGE BERZON MADE BECAUSE, I

11  UNDERSTAND THAT SHE'S TALKING -- SHE'S LISTING CASES WHERE

12  PEOPLE HAVE FILED FOUR, FIVE AND 600 LAWSUITS AS EXAMPLES

13  OF THE, YOU KNOW, SO THIS -- I DON'T KNOW WHAT WOULD

14  CONFRONT YOU AFTER YOU LEAVE THIS, AFFIRM OR REVERSE.  BUT

15  I DO THINK THAT THERE ARE TOOLS IN YOUR TOOLBOX THAT

16  WEREN'T USED HERE.

17       MR. HAES:  WELL, YOUR HONOR, WE WERE WORKING UNDER

18  THE POSITION OF OBVIOUSLY THE PRIOR LAW IN THE NINTH

19  CIRCUIT BECAUSE EVEN UNDER MCCARTHY, WHICH WAS A

20  CASE THAT RECENTLY CAME LIKE FROM THIS COURT, PREFILING

21  ORDER, IT'S THE SAME ISSUE.  IT'S -- IT'S -- IT'S -- WE

22  BELIEVE THAT THE FACTS HERE WARRANT A PREFILING ORDER.  WE

23  THINK THE CIRCUMSTANCES ARE VERY SIMILAR TO MCCARTHY AND IN

24  THAT CASE ACTUALLY --

25       JUDGE DUNN:  WELL, IF WHAT WE END UP DOING IS

26  VACATING, YOU MAY BE ABLE TO GO BACK TO THE BANKRUPTCY

1   COURT AND SAY, OKAY, WE'VE READ RINGGOLD-LOCKHART, AND

2   HERE'S OUR MOTION FOR A MORE TAILORED ORDER.

3          MR. HAES:  WELL --

4          JUDGE TAYLOR:  NO PUN INTENDED.

5          JUDGE DUNN:  NO PUN INTENDED.

6          MR. HAES:  AND BASED ON --.  YEAH.  I UNDERSTAND,

7   YOUR HONOR, AND I'M VERY, LIKE I MENTIONED BEFORE,

8   SURPRISED AND DISAPPOINTED TO HEAR OF THAT RULING THAT JUST

9   CAME DOWN BECAUSE WE WERE OPERATING UNDER THE ASSUMPTION OF

10  THE LAW IN THE NINTH CIRCUIT WAS -- OR AT LEAST VIA THE

11  NINTH CIRCUIT BAP COURT EVEN THAT THE PREFILING ORDERS

12  WERE -- WERE APPROPRIATE, THEY WERE JUSTIFIED UNDER CERTAIN

13  CIRCUMSTANCES, AND --

14         JUDGE DUNN:  AND THAT WASN'T CHANGED.

15         JUDGE TAYLOR:  THAT HASN'T CHANGED.

16         JUDGE DUNN:  WE REVIEWED THEM FOR ABUSE OF

17  DISCRETION, BUT THE NINTH CIRCUIT SEEMS TO HAVE SAID THAT

18  MAYBE WE HAVE HEIGHTENED SCRUTINY WITH REGARD TO THESE

19  ORDERS, AND THE STANDARDS IN TERMS OF THE PROOF AND SUPPORT

20  BOTH OF THE MOVING PARTY AND THE COURT IN ENTERING THE

21  ORDER MAY BE SOMETHING OF A HIGHER ORDER THAN WE

22  TYPICALLY ASSOCIATE WITH ABUSE OF DISCRETION.

23         MR. HAES:  WELL, YOUR HONORS, WHETHER OR NOT YOU

24  DISCOUNT SOME OF THE PLEADINGS OR SOME OF THE FILINGS IN

25  OUR LIST OF FILINGS, THERE ARE PLENTY OF THEM THERE TO LOOK

26  AT AND SAY THESE ARE THE SAME ARGUMENTS.  THEY ARE ARGUING

1  THE SAME THING OVER AND OVER, ARGUMENTS THAT HAVE BEEN

2  UNIVERSALLY REJECTED ALL THE WAY UP ON APPEAL.  THIS IS --

3       JUDGE TAYLOR:  ONE THING WE WILL SAY IS SHE DOESN'T

4  MAKE THOSE FINDINGS WITH ANY CRISPNESS.  YOU KNOW, I --

5  HAVING PERSONALLY TRIED TO GO THROUGH AND FIND THE

6  DUPLICATIVE ARGUMENTS, I SHOULDN'T HAVE HAD TO PERSONALLY

7  GO THROUGH AND FIND THE DUPLICATIVE ARGUMENTS, AND I FOUND

8  SOME.  I THINK THE BIG -- TELL ME IF I'M WRONG, BUT I THINK

9  THE THEME OF, "I'VE PAID EVERYBODY, YOU GUYS SHOULD JUST GO

10 AWAY," IS THE -- THE -- SOME VARIATION ON THAT IS -- IS

11 CLEARLY DUPLICATED.

12      MR. HAES:  THAT'S NOT THE ONLY THEME, YOUR HONOR.

13 THERE ARE MANY THEMES.  IT'S JUST -- IT'S NOT ONLY THAT ALL

14 CREDITORS HAVE BEEN PAID, IT'S THAT THE TRUSTEE DIDN'T SIGN

15 THE INITIAL COMPLAINT IN THIS ADVERSARY PROCEEDING.  THAT'S

16 BEEN REPEATED OVER AND OVER AND OVER AGAIN.

17      JUDGE DUNN:  ALL RIGHT.  AT THIS POINT, I THINK THAT,

18 YOU KNOW, WE'RE GETTING INTO REPETITION, AND YOU'VE

19 EXCEEDED YOUR TIME BY ALMOST FIVE MINUTES.  WE'VE BEEN

20 QUITE LIBERAL ON THAT.

21           BUT I THINK ALL GOOD THINGS OR NOT SO GOOD

22 THINGS HAVE TO COME TO AN END.  SO THANK YOU VERY MUCH FOR

23 YOUR PRESENTATION.

24      MR. HAES:  THANK YOU, YOUR HONORS.

25      JUDGE DUNN:  MR. SUI?

26      MR. YAN SUI:  YES, YOUR HONOR.  AS YOUR HONORS HAS

1    SEE THAT THE TRUSTEE'S MAKING UNFOUNDED AND ALSO SOME

2    SELF-CONFLICTING STATEMENTS, ARGUMENTS.  ON THE EQUITY --

3    EQUITABLE (INAUDIBLE), THIS CHAPTER 7 SHOULD HAVE BEEN

4    CLOSED LONG TIME AGO AND --

5         JUDGE DUNN:  BUT, YOU KNOW, THAT'S AN EVIDENTIARY

6    MATTER THAT'S NOT BEFORE US.

7         MR. YAN SUI:  OKAY.

8         JUDGE DUNN:  SO YOU CAN MAKE THOSE ARGUMENTS

9    ELSEWHERE.

10        JUDGE TAYLOR:  YOU APPARENTLY HAVE MADE THOSE

11   ARGUMENTS EVERYWHERE AND UNSUCCESSFULLY.

12        MR. YAN SUI:  ALL I'M ASKING WHEN WERE THE CASE STOP.

13   RIGHT?  LOOKS LIKE THE TRUSTEE DID NOT WANT TO STOP THIS,

14   EVEN AFTER DISCHARGE.  THE THREE -- TRUSTEE WAS DISCHARGED

15   ON --

16        JUDGE DUNN:  THAT DOESN'T MATTER.  THAT IS NOT THE

17   MATTER THAT IS BEFORE THIS COURT.

18        MR. YAN SUI:  ANYWAY, I BELIEVE THE ORDER IS A

19   VERY -- IS A VERY HARSH PUNISHMENT AGAINST ME BECAUSE I

20   WILL FIND -- OUR (INAUDIBLE) TO BE FORCED RESPONSE TO

21   MARSHACK'S FEES AND MOTIONS.

22        JUDGE TAYLOR:  WELL, HE POINTS OUT -- I THINK THE

23   ORDER IS SOMEWHAT AMBIGUOUS BUT HE POINTS OUT THAT YOU --

24   HAS THIS ORDER STOPPED YOU FROM DOING ANYTHING?

25        MR. YAN SUI:  YEAH, HAS INTERFERED TO SOMETHING.  FOR

26   EXAMPLE, BECAUSE THEY -- THEY FILED THEIR SECOND LAWSUIT

http://www.yeslaw.net/help

1    AFTER THE DISCHARGE TO SELL THE HOUSE.  I FILED THE MOTION

2    TO ASK FOR AN ORDER TO INJUNCTION FROM -- TO PREVENT THE

3    TRUSTEE TO SELL THE HOUSE BECAUSE OF THE DIS -- DISCHARGE.

4    BUT THE -- THE COURT REJECT THE FILING.

5         JUDGE DUNN:  WELL, YOU KNOW, WHETHER THEY REJECTED IT

6    OR NOT, THAT ARGUMENT IF THAT'S WHAT YOU'RE RAISING IS

7    WRONG AS A MATTER OF LAW.  SO GOOD-BYE ON THAT ONE.

8              THE QUESTION THOUGH IS TRUSTEE'S COUNSEL SAYS

9    TO THE EXTENT THEY FILED SOMETHING AND YOU FILE A RESPONSE,

10   YOU'RE NOT PROHIBITED FROM DOING THAT.

11        MR. YAN SUI:  YEAH, I UNDERSTAND THAT, YEAH.

12        JUDGE DUNN:  ALL RIGHT.

13        MR. YAN SUI:  I UNDERSTAND, BUT OUR MOTION TO -- FOR

14   (INAUDIBLE) ORDER TO BAR THE TRUSTEE TO SELL HOUSE HAS

15   GROWN BECAUSE THE TRUSTEE'S SECOND LAWSUIT TO

16   COMPEL THE SALE OF HOUSE IS BROUGHT BY THE DISCHARGE

17   INJUNCTION, SO IF IT IS --

18        JUDGE DUNN:  NO, IT IS NOT.  THE TRUSTEE ADD

19   ADMINISTERS ASSETS OF THE ESTATE.  YOUR DISCHARGE IS

20   IRRELEVANT TO THE EXTENT THAT THERE ARE ASSETS THAT REMAIN

21   TO BE ADMINISTERED.  SO THAT IS JUST LEGALLY WRONG, AND

22   IT'S NOT RELEVANT TO THE MATTER BEFORE US ON THIS APPEAL.

23   BUT YOU'RE NOT HELPING YOURSELF BY ARGUING SOMETHING THAT

24   IS CLEARLY LEGALLY WRONG.

25        JUDGE TAYLOR:  AND I THINK THE POINT IS -- THAT WE'VE

26   MADE WITH HIM IS THAT EVEN -- AND YOU NEED TO UNDERSTAND

1   THIS.  EVEN IF WE DETERMINE THAT THERE IS A

2   TECHNICAL PROBLEM WITH THE ORDER AS IT IS WRITTEN, SHE CAN

3   FIX THAT PROBLEM.

4           AND ONE OF THE THINGS SHE CAN CLEARLY DO IS

5   TELL YOU STOP MAKING SPECIFIC ARGUMENTS BECAUSE YOU'RE ONLY

6   ENTITLED TO MAKE THEM AND LOSE THE ARGUMENT AND TAKE IT UP

7   ON APPEAL AND LOSE THE APPEAL.

8           AND ONCE YOU PERSIST IN MAKING THE SAME

9   ARGUMENT THROUGH THAT CHAIN, YOU BECOME SUBJECT CORRECTLY

10  TO SOME SORT OF CORRECTIVE ACTION.  AND SHE CAN SANCTION

11  YOU AND DO THINGS THAT ARE ARGUABLY WORSE THAN TELLING YOU,

12  "I'VE HEARD IT AND I DON'T WANT TO HEAR IT AGAIN."

13          SO I THINK THAT -- THAT UNLESS YOU HAVE AN

14  ARGUMENT THAT DOESN'T REQUIRE US TO LOOK AT THE MERITS OF

15  THE CASE IN GENERAL, THAT FOCUSES JUST ON THE MERITS OF

16  THIS, YOU PROBABLY SHOULD SIT DOWN.  BUT KEEP IT IN MIND --

17      MR. YAN SUI:  I WANT TO MAKE ONE POINT.

18      JUDGE TAYLOR:  OKAY.

19      MR. YAN SUI:  TRUSTEE RUNS THINGS TOGETHER.  HE SAYS

20  I FILE LIKE TWO MOTIONS TO DISMISS A CHAPTER 7.

21  BUT THESE TWO MOTIONS ARE FILED AT DIFFERENT TIME.  ONE

22  MOTION IS TWO AFTER I PAID TWO OF THE THREE, I FILE, ONE

23  DENIED.  AFTER I PAID ALL THREE -- AFTER I PAID ALL THREE

24  CHAPTER 7 CREDITORS, I FILE ANOTHER MOTION TO DISMISS A

25  CHAPTER 7.  DENIED AGAIN.

26          SO THESE TWO MOTIONS ARE NOT REPETITIVE

1    ALTHOUGH TWO TIMES BECAUSE SITUATION DIFFERENT.  THE SECOND

2    MOTION ARE FILED AFTER ALL OF THE CHAPTER 7 CREDITORS WERE

3    PAID.  OF COURSE I WANT TO GET OUT OF THE CHAPTER 7 TO

4    PROTECT MY ESTATE IN THE STATE COURT ALSO AGAINST HOA SO IT

5    IS NOT FRIVOLOUS OR REPETITIVE MOTIONS.  BECAUSE ACCORDING

6    TO IN THE (INAUDIBLE) --

7          JUDGE DUNN:  THAT'S NOT BEFORE US.  AND THAT'S

8    IRRELEVANT TO WHAT WE HAVE TO DECIDE.

9          MR. YAN SUI:  OKAY, YOUR HONOR.

10         JUDGE DUNN:  YOU MAY DO WHAT YOU WISH IN OTHER

11   LAWSUITS, BUT WE ARE NOT INTERESTED IN HEARING ABOUT THEM.

12         MR. YAN SUI:  YEAH, YOUR HONOR, I'M JUST RESPONDING

13   TO THEIR COUNSEL'S ARGUMENT THAT HE SAYS THAT I --

14         JUDGE DUNN:  WELL, HE SAYS THERE ARE THESE VARIOUS

15   THINGS THERE.  THAT'S A MATTER THAT CAN BE DEALT

16   WITH IN FURTHER PROCEEDINGS BEFORE THE BANKRUPTCY COURT.

17         MR. YAN SUI:  ALSO THE TRUSTEE'S FILE -- TRUST CLAIM

18   THEIR MULTIPLE CLAIMS, THEY ARE TOTALLY FALSE.  BECAUSE TWO

19   OF THE CLAIMS ON THE BASIS ON THE BANKRUPTCY COURT IS FROM

20   THE TRUSTEE AND FROM HIS COUNSEL.  THEY WAS THROWN OUT OF

21   THIS COURT AFTER MY APPEAL.

22             AND THAT TWO -- ONE CLAIM FILED BY THE

23   HOMEOWNER ASSOCIATION HAS BEEN OBJECTED.  ALSO THE CLAIM

24   FILED BY THE INSURANCE COMPANY HAS BEEN OBJECTED.  SO THE

25   ONLY THING LEFT OVER IS THE WELLS FARGO 30-YEAR MORTGAGE

26   BALANCE.  WE ARE PAYING ON TIME WITH --

1      A VOICE:  AGAIN --

2      MR. YAN SUI:  -- (INAUDIBLE) POINT.

3      A VOICE:  AGAIN YOU'RE STRAYING INTO THE MERITS OF

4  YOUR OTHER ARGUMENTS.  WE'RE ONLY HERE TO DETERMINE THIS

5  APPEAL AND NOT THE -- THE SUBSTANCE OF THE OTHER -- THE

6  OTHER LAWSUITS.  SO I THINK YOU'RE BEGINNING TO REPEAT

7  YOURSELF AS THE OTHER JUDGES HAVE SAID.

8      MR. YAN SUI:  SO -- SO BASICALLY WHAT MY CONTENTION

9  IS THAT THE JUDGMENT DID NOT GO INTO THE SPECIFIC FILINGS

10  IN ALL THE TRUSTEE'S SUBMITTED.  THEY JUST DO A

11  CONCLUSIVE STATEMENT, CONSIDERING ALL THESE CASES WITHOUT

12  ANALYZING IF MY CASE IS OF CONTENTIOUS AND THOSE FILINGS

13  ARE MERITORIOUS OR MERITLESS.  THERE'S NO SUCH ANALYZING,

14  AND THIS MEANS THEY DID NOT ARTICULATING THE FACTS AND THE

15  LAWS IN GOVERNING AND DETERMINING THE VEXATIOUS LITIGANTS.

16      BEFORE VEXATIOUS LITIGANTS DETERMINE --

17  DETERMINED, YOU HAVE NO GROUND TO ORDER THAT WE HAVE THE

18  PREFILING RULE BECAUSE THE VEXATIOUS LITIGANT MUST BE

19  DETERMINED FIRST BY KIND OF A LAW STANDARD.  THEN YOU CAN

20  REQUIRE THAT WE NEED TO GET KIND OF A PREFILING ORDER.

21  OTHERWISE, IT'S ABSURD RESULT, THAT WE CANNOT FILE ANY

22  MOTION WITH THE COURT FOR SOME RELIEF.  THAT JUST NOT

23  RIGHT.

24      AND I BELIEVE THE DEBTOR IS ENTITLED TO FRESH

25  START, A FRESH START BY THE CONGRESSIONAL CONTENT AFTER THE

26  BANKRUPT ESTATE IS DISTRIBUTED AMONG THE CREDITORS.  SINCE

1  THE 7 -- SINCE THE THREE CHAPTER 7 CREDITORS ARE GONE SO

2  THAT --

3         JUDGE DUNN:  MR. SUI, YOU KIND OF MISS THE POINT

4  HERE.  THERE'S ALSO AN ADMINISTRATIVE CLAIM BECAUSE THE

5  TRUSTEE AND HIS COUNSEL HAVE HAD TO DO VARIOUS THINGS IN

6  YOUR ESTATE.  SO THEY HAVE TO BE PAID TOO.

7         A VOICE:  IN LARGE PART, THAT INCLUDES RESPONDING TO

8  THE MATERIALS THAT YOU PUT FORTH.  SO IN SOME INSTANCE,

9  THIS IS A SELF-DEFEATING PROCESS FROM YOUR POINT OF VIEW

10 BECAUSE YOU CONTINUE TO WANT TO FILE THINGS WHICH ARE GOING

11 TO NECESSARILY REQUIRE THE TRUSTEE AND HIS COUNSEL TO

12 RESPOND, WHICH WILL CREATE ADMINISTRATIVE EXPENSES, AND YOU

13 WON'T GET OUT OF THERE UNTIL THOSE ADMINISTRATIVE EXPENSES

14 ARE -- THE ESTATE WILL NOT BE CLOSED UNTIL EITHER THE

15 ADMINISTRATIVE EXPENSES ARE PAID OR THE TRUSTEE ABANDONS

16 AND CLOSE THE CASE.

17        MR. YAN SUI:  I UNDERSTAND, YEAH, IN ORDER TO

18 ESTABLISH THEIR ADMINISTRATIVE CLAIMS, THEY MUST

19 ESTABLISH --

20        A VOICE:  WE'RE NOT TALKING -- THIS IS JUST IN THE

21 THEORETICAL BECAUSE IT DOES NOT NECESSARILY IMPACT THE

22 SPECIFIC ISSUE BEFORE THE COURT.

23        MR. YAN SUI:  YES, YOUR HONOR, BUT --

24        JUDGE TAYLOR:  SO I UNDERSTAND YOUR POINT, THOUGH,

25 THAT THE FINDINGS WERE NOT COMPLETE.

26        MR. YAN SUI:  THEY ARE --

1        JUDGE TAYLOR:  THAT ARGUMENT, ALL RIGHT.

2        A VOICE:  THAT WAS ON POINT.

3        MR. YAN SUI:  MY CONDITION, THEY HAVE NO (INAUDIBLE)

4   BECAUSE AFTER THE DISCHARGE, SO YOU NEED TO PROVE --

5        JUDGE DUNN:  YOU KNOW, MR. SUI, WE'VE GOT YOUR

6   ARGUMENTS.  THANK YOU VERY MUCH FOR YOUR ARGUMENTS.  THIS

7   APPEAL WILL STAND SUBMITTED.

8        MR. HAES:  THANK YOU.

9             (AUDIOTAPED PROCEEDINGS CONCLUDED.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1                        REPORTER'S CERTIFICATE

2

3

4

5              THE UNDERSIGNED CERTIFIED SHORTHAND REPORTER

6    LICENSED IN THE STATE OF CALIFORNIA DOES HEREBY CERTIFY:

7              THAT THE FOREGOING PROCEEDINGS WERE TAKEN BY ME

8    FROM A CD-R PROVIDED TO ME BY THE DEBTOR/APPELLANT YAN SUI;

9              THAT THE PROCEEDINGS TRANSPIRING HEREIN WERE

10   RECORDED STENOGRAPHICALLY BY ME TO MY BEST ABILITY TO HEAR

11   SAID CD-R, AND WERE THEREAFTER TRANSCRIBED, SAID TRANSCRIPT

12   BEING A TRUE COPY OF MY SHORTHAND NOTES THEREOF.

13             IN WITNESS WHEREOF, I HAVE SUBSCRIBED MY NAME

14   THIS DATE:  JULY 20, 2015.

15

16

17   _____

18                    LINDA A. SIMPSON, CSR #2266
                         RMR, CRR, CCRR
19

20

21

22

23

24

25

26

LINDA A. SIMPSON, CSR #2266, RMR, CRR

Exh. List 11

FILED

NOT FOR PUBLICATION

NOV 10 2014

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

UNITED STATES BANKRUPTCY APPELLATE PANEL

OF THE NINTH CIRCUIT

In re:                          )    BAP No. CC-13-1572-TaSpD
                                )
YAN SUI,                        )    Bk. No. 11-20448-CB
                                )
              Debtor.           )
_____)
                                )
YAN SUI; PEI-YU YANG,           )
                                )
              Appellants,       )
                                )
v.                              )    MEMORANDUM*
                                )
RICHARD A. MARSHACK, Chapter 7  )
Trustee,                        )
                                )
              Appellee.         )
_____)

Argued and Submitted on September 18, 2014
at Pasadena, California

Filed - November 10, 2014

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Catherine E. Bauer, Bankruptcy Judge, Presiding
_____

Appearances:    Yan Sui, appellant, argued pro se; Chad V. Haes of
                Marshack Hays LLP argued for appellee Richard A.
                Marshack, Chapter 7 Trustee.
                _____

Before: TAYLOR, SPRAKER** and DUNN, Bankruptcy Judges.

_____

        *  This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8013-1.

        ** The Honorable Gary A. Spraker, Chief Bankruptcy Judge
for the District of Alaska, sitting by designation.

### INTRODUCTION

Chapter 7[1] debtor Yan Sui and non-debtor Pei-yu Yang,[2] both pro se, appeal jointly from an order that bars each of them from filing "initiating documents" in the bankruptcy case without advance review by the bankruptcy court and a determination that such documents are meritorious. The order also requires Mr. Sui and Ms. Yang to obtain leave from the bankruptcy court before filing suit in any forum against the chapter 7 trustee, appellee Richard A. Marshack, or his professionals. We determine that entry of an order regulating certain aspects of the Appellants' filings in the bankruptcy court is appropriate. We VACATE and REMAND, however, for the bankruptcy court to modify the order consistent with recent Ninth Circuit authority.

### FACTS[3]

On July 27, 2011, Mr. Sui filed a bare-bones chapter 7 petition that listed a total of three creditors. When Mr. Sui filed his schedules and statement of financial affairs, he disclosed ownership of $12,549.83 in personal property, no real property or secured debt, unsecured debt totaling $23,418.30, and

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2] The record is unclear as to whether Ms. Yang is Mr. Sui's current or former spouse.

[3] We exercise our discretion to take judicial notice of documents electronically filed in the underlying bankruptcy case and related adversary proceedings. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1989); Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 392 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

one pending federal court lawsuit initiated by Mr. Sui.

As the case progressed, Mr. Sui paid certain creditors directly and without leave of the bankruptcy court. In Mr. Sui's mind, these payments resolved all bankruptcy issues and required termination of the case. To say that he is fixated on this point is, perhaps, an understatement. The impetus for Mr. Sui's payments and the cause for his insistence on dismissal was likely the fact that the Trustee identified a prepetition transfer from Mr. Sui to Ms. Yang and initiated an adversary proceeding to set it aside.

**Trustee's motion for pre-filing order.**

A little over two years later, Trustee filed his Motion for: (1) Pre-Filing Order; and (2) Order Requiring Leave to Sue Trustee Richard A. Marshack and his Professionals ("Motion"),[4] seeking relief against Appellants. Without differentiating between Mr. Sui and Ms. Yang, Trustee alleged that Appellants "filed over 30 meritless pleadings, actions and appeals, nearly all of which have been decided against them." Motion, Dkt. 17 at 8:4-5. He argued that such filings constituted an abuse of the judicial process and evidenced the Appellants' intent to harass, thus warranting a pre-filing order. In addition, Trustee alleged that the Appellants repeatedly threatened to sue Trustee and his professionals, thus warranting an order requiring Appellants to seek leave from the bankruptcy court before filing such a suit in

---

[4] The Trustee filed an earlier motion, barely two months into the case, seeking an order requiring that Mr. Sui seek leave from the bankruptcy court before filing suit against Trustee and his professionals. The bankruptcy court denied the first motion without prejudice.

- 3 -

any forum, including the bankruptcy court.

In support of the Motion, the Trustee first requested that
the bankruptcy court take judicial notice of 13 cases/appeals
that Trustee alleged were initiated by the Appellants against the
Appellants' homeowners association and other defendants in the
seven years prepetition.[5]  Trustee generally alleged that all were
adjudicated adversely to the Appellants, although Trustee also
alleged that postpetition he settled two of the actions on behalf
of the estate.  Trustee did not specifically articulate if or how
any of the 13 identified matters were frivolous, harassing, or
without merit.

Next, Trustee asked the bankruptcy court to take judicial
notice of papers filed in the bankruptcy court by Mr. Sui and/or
Ms. Yang – nearly all of which the Trustee alleged were decided
against the Appellants.  The few matters allegedly not decided
against them were appeals still pending.  Trustee did not
articulate if or how any of the filings were frivolous,
harassing, or without merit.

As to Mr. Sui, the filings included Mr. Sui's initial
chapter 7 petition, which he subsequently converted to chapter 13
in January 2012, and Mr. Sui's two motions to dismiss his case
after he converted to chapter 13.[6]  Mr. Sui also opposed the

---

[5]  The Trustee also alleged that the Superior Court of
California, County of Orange, found Mr. Sui a vexatious litigant
in 2011, and he argued that the bankruptcy court should adopt the
state court's findings.  Indeed, the Trustee argued that the
state court's finding was binding on the bankruptcy court,
pursuant to 28 U.S.C. § 1728.

[6]  The bankruptcy court denied dismissal and re-converted
the case to chapter 7.  It also denied Mr. Sui's reconsideration
(continued...)

- 4 -

Trustee's motion for approval of settlement of four state court lawsuits to which Mr. Sui was a party.[7]  And finally, Trustee listed Mr. Sui's filed opposition to dismissal of a state court lawsuit that he initiated against the Trustee postpetition, after removal by the Trustee.[8]

As to Ms. Yang, Trustee identified Ms. Yang's two motions to dismiss the adversary proceeding Trustee filed against her to avoid and recover as an alleged fraudulent conveyance the transfer by Mr. Sui of his interest in a residential property.[9] In addition, Trustee filed a second adversary proceeding against Ms. Yang seeking to sell the real property that she co-owned with the estate, the Trustee having prevailed in his fraudulent conveyance action.  Ms. Yang responded with a motion to dismiss the complaint (and a subsequent amended motion to dismiss), and

---

[6](...continued)
motion.  Mr. Sui appealed to the BAP.  The BAP affirmed re-conversion but dismissed as interlocutory a related appeal from an order awarding administrative fees to Trustee and his counsel in the chapter 13 case upon reconversion.  Mr. Sui then appealed to the Ninth Circuit.  As of the date of the Motion, the appeal remained pending.

[7]  The bankruptcy court overruled the opposition and Mr. Sui appealed to the BAP.  The BAP dismissed the appeal based on mootness, and Mr. Sui appealed to the Ninth Circuit.  As of the date of the Motion, the appeal remained pending.

[8]  The bankruptcy court overruled Mr. Sui's opposition. Mr. Sui appealed to the district court, which affirmed.  Mr. Sui appealed to the Ninth Circuit.  As of the date of the Motion, the appeal remained pending.

[9]  The bankruptcy court denied the first motion. Ms. Yang appealed to the district court, which affirmed.  Ms. Yang filed a second motion to dismiss, which as of the date of the Motion, was set for hearing. In addition, Ms. Yang appealed to the Ninth Circuit from a district court order adopting the bankruptcy court's report and recommendation granting summary judgment in favor of Trustee.  As of the date of the Motion, the appeal remained pending.

1  Mr. Sui filed a motion to intervene.[10]

2      The Trustee also asked the bankruptcy court to take judicial

3  notice of six state court actions or appeals filed by the

4  Appellants postpetition, which Trustee alleged were all without

5  merit.  Of the six matters: the Trustee settled two; the Ninth

6  Circuit dismissed one appeal for lack of jurisdiction; and three

7  appeals filed with the Ninth Circuit remained pending as of the

8  date of the Motion.  Again, Trustee did not articulate if or how

9  any of the matters was frivolous, harassing, or without merit.

10     Trustee brought his request for a general pre-filing order

11 under § 105(a), 28 U.S.C. § 1651(a), and Ninth Circuit case law

12 authority, alleging that it was warranted by Appellants'

13 repetition of non-meritorious legal arguments and persistence in

14 pursuing claims regardless of their lack of merit.  Trustee also

15 sought a provision in the pre-filing order requiring leave to

16 file suit against the Trustee and his professionals under

17 § 105(a) and based on quasi-immunity under the Barton doctrine.

18 Trustee argued for a preemptive order to discourage frivolous

19 litigation by Appellants and to save the estate unnecessary

20 expense that would be incurred to respond.

21 **Opposition to the Motion**.

22     Mr. Sui filed written opposition to the Motion.[11]  The record

23 _____

24     [10]  As of the date of the Motion, both Ms. Yang's amended
    motion to dismiss and Mr. Sui's motion to intervene had not yet
25 been heard by the bankruptcy court.

26     [11]  We are cognizant of our obligation to "make reasonable
    allowances for pro se litigants and . . . [to] construe pro se
27 papers and pleadings liberally."  In re Kashani, 190 B.R. 875,
    883 (9th Cir. BAP 1995).  Mr. Sui misdirected much of his
28 opposition to argument that the Trustee's settlement of
                                              (continued...)

- 6 -

does not include a written opposition filed by Ms. Yang.[12]
Mr. Sui first argued that the bankruptcy court lacked
jurisdiction to rule on the Motion.  He generally argued that the
Motion was meritless, factually and legally unfounded, and a
waste of time.  He more specifically argued that Trustee failed
to show that the state courts required him to seek pre-filing
approval of litigation, or that his suits against civil
defendants were frivolous, and that the bankruptcy court could
not consider Mr. Sui's state court actions against the civil
defendants.

As to Trustee's request to require pre-filing leave of court
to sue Trustee or his professionals, Mr. Sui argued that the
Barton doctrine did not apply to Trustee's actions because
Trustee acted outside the scope of his duties and violated
constitutionally protected property rights.  In his declaration
in support of opposition, Mr. Sui disclosed that he and Ms. Yang
filed an action against Trustee and his professionals in the
district court that very same day.

**The bankruptcy court's findings, conclusions, and order.**

Neither Mr. Sui nor Ms. Yang appeared at the hearing on the
Motion on November 12, 2013.  After hearing from counsel for the

---

[11](...continued)
litigation originally initiated by Mr. Sui was improper.  We were
able to discern specific arguments made by Mr. Sui, however, that
addressed the relief requested in the Trustee's Motion, and we
summarize them accordingly.

[12] We note, however, that upon issuance of the Pre-Filing
Order, the bankruptcy court stated in its conclusions of law that
Ms. Yang opposed the Motion.  This conclusion is important to our
determination that Ms. Yang did not waive her right to appeal, as
discussed below.

Trustee, the bankruptcy court granted the Motion and stated its grounds for doing so on the record.  The bankruptcy court did not articulate the legal grounds upon which it based its ruling, but likened the applicable analysis to that required when restricting petition filings by a serial filer.

The bankruptcy court stated that: "given the egregious nature of the filings over and over, the same arguments, they've lost on appeal at every level, we've got to stop it . . . there's not going to be any money left for anyone . . . it's an abuse of the system."  Hr'g Tr. (Nov. 12, 2013) at 14:18-23.  The bankruptcy court also found "both Yang and Sui are vexatious in the scheme of this bankruptcy case; that they have participated together to file all these different pleadings . . . and they're obviously acting in concert."  Id. at 16:10-15.  "So I will find that both of them have been involved in the tremendous amount of work that has been required by the Court and by the trustee in this matter."  Id. at 16:16-18.

Trustee lodged a proposed form of order and findings of fact and conclusions of law, and filed notice of lodgment on November 14, 2013.  Appellants filed a notice of appeal to the BAP on November 27, 2013 and a motion for leave to appeal.  The bankruptcy court entered the order granting the Motion on December 19, 2013 (the "Pre-Filing Order"), along with the separate Findings of Fact and Conclusions of Law ("FF&CL") prepared by Trustee's counsel.[13]

---

[13]  Appellants' notice of appeal filed after announcement of the bankruptcy court's decision, but before entry of the order, is treated as filed after such entry and on the day thereof.  See (continued...)

In the FF&CL, the bankruptcy court specifically concluded
that both Mr. Sui and Ms. Yang were vexatious litigants who,
since late 2009 either individually or jointly filed at least "37
meritless actions, appeals, motions, and other papers," all of
which were "frivolous," "harassing," and "abusive," and most of
which were "repetitive."  FF&CL, Dkt. 17 at 10.  The bankruptcy
court also found that both Appellants opposed the Motion, but
that the written opposition contained: "only irrelevant factual
assertions," "irrelevant legal arguments," "unintelligible legal
arguments," and "conclusory statements of law."  Id. at 11.  The
bankruptcy court determined that "[e]ach of the four elements
required for entry of a pre-filing order against the [Appellants]
have been met by the Trustee pursuant to the Motion"; and that
the proposed order was sufficiently narrow to address the
Appellants' abuses but to allow them to be heard.  Id.  Because
Appellants failed to appear at the hearing on the Motion the
bankruptcy court deemed them to consent to the relief sought in
the Motion.  Id. at 12.

The bankruptcy court also specifically found that "[t]he
clear and present danger of needless litigation by the
[Appellants] warrants a preemptory order requiring that the
[Appellants] obtain leave of the Court before filing suit against
the Trustee and his professionals."  Id. at 11.

The Pre-Filing Order provides, in part, as follows:

> 2.  The Clerk of the Bankruptcy Court for the
> Central District of California will accept no further
> initiating documents for filing from Yan Sui ("Sui") or

---

[13](...continued)
Rule 8002(a).

Pei-Yu Yang ("Yang") in this case, including but not limited to complaints, motions and objections to claims.  Any pleadings received from Sui and Yang shall be stamped received after which time they will be forwarded to the Court for review.  If in fact the pleadings are deemed meritorious, they will be returned to the Clerk for filing, after which time either Sui or Yang shall cause the same to be served upon attorneys for the Trustee, Richard A. Marshack, all creditors, and the United States Trustee.  If after review, the pleadings are not found to be meritorious, the same shall be returned to Sui or Yang, shall not be filed of record, and the receipt copy shall be removed from the court file.

3.  It is further ordered that this Order shall not apply to any pleadings presented by Sui or Yang designated as an "appeal" of any of this Court's Orders whether such appeal be directed to the United States District court, the Bankruptcy Appellate Panel, or the Ninth Circuit Court of Appeals.

4.  It is further ordered that Sui and Yang are required to obtain leave of this Court before filing suit in this Court or in any other forum against the Trustee and or professionals hired by the Trustee for acts regarding administration of the bankruptcy case.

5.  It is further ordered that if Sui or Yang disobey this Order and the instructions contained in this Order, he or she will be subject to immediate sanctions and will be ordered to appear to show cause why he or she should not be held in contempt of this Court's Orders.

Id. at 2.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (O).  On appeal, Appellants include an argument titled "Bankruptcy Court Lacks Jurisdiction to Make the Order."  Appellants argue, as they repeatedly argued before the bankruptcy court, that because Mr. Sui allegedly paid his creditors within the initial months of the chapter 7 case, no adjustment of the debtor-creditor relationship remained for the bankruptcy court to restructure.  Mr. Sui believes that his

1  payment of creditors mooted the chapter 7 case, the estate ceased

2  to exist, Trustee's actions became "irrelevant" to the case, and

3  the bankruptcy court lost all jurisdiction to act.  We disagree.

4  Even assuming, for the sake of argument only, that Mr. Sui paid

5  all his prepetition debts, until such time as the bankruptcy case

6  is dismissed or closed, the estate continues to exist, and the

7  bankruptcy court's jurisdiction continues.  See §§ 349, 350, and

8  541.

9        We have jurisdiction under 28 U.S.C. § 158.[14]

10                              **ISSUE**

11        Whether the bankruptcy court abused its discretion when it

12  granted the Motion and entered the Pre-Filing Order.[15]

13                       **STANDARD OF REVIEW**

14        We review for an abuse of discretion a bankruptcy court's

15  decision to issue pre-filing orders.  See Ringgold-Lockhart v.

16  Cnty. of Los Angeles, 761 F.3d 1057, 1062 (9th Cir. 2014)

17  (district court's compliance with procedural and substantive

18  standards for issuance of pre-filing restrictions against

19  _____

20      [14]  On February 19, 2014, the Panel entered an order denying
    Appellants' Motion for Leave to Appeal, which was opposed by

21  Trustee.  The Panel based denial on its conclusion that the order
    on appeal is final, thus leave to appeal was unnecessary.

22  Notwithstanding, the Panel also granted leave to appeal, to the
    extent necessary.

23      [15]  As discussed below, on appeal Appellants raise a number

24  of arguments, including unsupported factual allegations, not
    raised before the bankruptcy court.  We recognize that Appellants

25  represent themselves pro se; nonetheless we decline to address
    arguments and off-record factual allegations not presented to the

26  bankruptcy court.  See Samson v. Western Capital Partners, LLC
    (In re Blixseth), 684 F.3d 865, 872 n.12 (9th Cir. 2012)

27  (appellate court may decline to address argument not raised
    before bankruptcy court) (citation omitted).  Our consideration

28  of this appeal is also limited, as discussed later herein, based
    on Appellants' deemed waiver and consent.

                              - 11 -

1   vexatious litigants reviewed for abuse of discretion); see Moy v.

2   United States, 906 F.2d 467, 469 (9th Cir. 1990) (district

3   court's order restricting filing of meritless claims reviewed for

4   abuse of discretion); and see Richardson v. Melcher

5   (In re Melcher), 2014 Bankr. LEXIS 1586 at *28 (9th Cir. BAP

6   Apr. 11, 2014)(bankruptcy court's sanctions order in the form of

7   a bar to filings reviewed for abuse of discretion).  A bankruptcy

8   court abuses its discretion if it applied the wrong legal

9   standard or its findings are illogical, implausible, or without

10  support in the record.  TrafficSchool.com, Inc. v. Edriver Inc.,

11  653 F.3d 820, 832 (9th Cir. 2011).

12                              **DISCUSSION**

13       Before we discuss the Pre-Filing Order, we must address two

14  preliminary issues.

15  **A.   Trustee's motion to strike documents.**

16       Trustee objects to Appellants' excerpts numbered 6-a, 6-b,

17  6-c, 6-d, 6-e, 7 through 9, and 10-a and 10-b as unrelated to the

18  appeal and not presented to, or considered by, the bankruptcy

19  court when it ruled on the Motion.  The proper record in this

20  appeal consists of papers and exhibits filed and considered by

21  the bankruptcy court in connection with its ruling on the Motion,

22  along with the Pre-Filing Order and the FF&CL.  See Barcamerica

23  Int'l USA Trust v. Tyfield Imps., Inc., 289 F.3d 589, 593-94 (9th

24  Cir. 2002); Kirshner v. Uniden Corp. of Am., 842 F.2d 1074, 1077

25  (9th Cir. 1988).

26       Trustee himself included excerpt number 8 in a judicial

27  notice request in support of the Motion and in his supplemental

28  excerpts of record on appeal.  We determine, however, that other

than excerpt number 8 none of the documents to which Trustee objects are included among the documents of which the bankruptcy court took judicial notice or which it considered in connection with its ruling on the Motion and issuance of the Pre-Filing Order. Therefore, we deny the motion to strike as to excerpt number 8 and grant it as to the other documents.

**B.    Ms. Yang's failure to file written opposition and Appellants' failure to appear at the hearing on the Motion do not constitute their waiver of all arguments on appeal.**

Trustee argues on appeal that we should disregard all arguments in Appellants' opening brief because Appellants failed to appear at the hearing held by the bankruptcy court on the Motion.[16] Further, Trustee argues that Ms. Yang should not be allowed to participate in this appeal at all because she filed no written opposition to the Motion. As to Mr. Sui, Trustee contends that he did not properly raise any intelligible arguments, and, therefore, none of his arguments on appeal should be heard.[17] In effect, Trustee argues that Appellants waived their right to appeal. We disagree in part.

As to Ms. Yang, the bankruptcy court found that she opposed the Motion. We were not able to locate a written opposition

---

[16]   The bankruptcy court itself, pursuant to local bankruptcy rule, held the Appellants' nonappearance to be deemed consent to the relief requested in the Motion. In the FF&CL, the bankruptcy court also found that Yang did not file opposition to the Motion, but then inconsistently held that both Appellants opposed the Motion.

[17]   Trustee argues that Mr. Sui's opposition "contained only irrelevant factual assertions and legal arguments, unintelligible legal arguments, and conclusory statements of law. . . ." Appellee's Brief at 4. The FF&CL contained the same assessment of Mr. Sui's written opposition. We reached a different conclusion, as summarized above.

- 13 -

1  filed by or on behalf of Ms. Yang but defer to the bankruptcy
2  court and its superior knowledge of the case; in its view,
3  opposition existed.  This determination also is consistent with
4  its conclusion that Mr. Sui and Ms. Yang acted in concert
5  throughout the case.  Mr. Sui filed written opposition; the
6  Trustee cannot credibly assert that Appellants jointly filed all
7  documents except the opposition.

8      The problem, however, is that neither Mr. Sui nor Ms. Yang
9  appeared at the final hearing.  Pursuant to Rule 9013-1(j) of the
10 Local Rules of the United States Bankruptcy Court for the Central
11 District of California, a pro se party's failure to appear at a
12 properly noticed hearing, unless excused by the court in advance,
13 may be deemed consent to an adverse ruling on the matter being
14 heard.  The bankruptcy court was entitled to exercise its
15 discretion to find waiver and consent; and it did so.

16     This determination, however, does not end the inquiry.  The
17 right of access to the courts is one of constitutional origin,
18 and the Trustee bore a heavy burden.  Similarly, the bankruptcy
19 court's discretion to bar access has limits even in the absence
20 of opposition.  And finally, the Ninth Circuit issued its opinion
21 in Ringgold-Lockhart subsequent to the entry of the Pre-Filing
22 Order, which requires us to review the Pre-Filing Order using
23 metrics not available to the bankruptcy court at the hearing.

24     We, thus, conclude that Appellants waived their right to
25 argue that a pre-filing order is not appropriate, and we consider
26 only whether the content of the order is appropriate.

27 **C.   Ninth Circuit standard for issuance of a pre-filing order.**

28     Given the constitutional underpinnings of the general right

1  to court access, "'pre-filing orders should rarely be filed,' and
2  only if courts comply with certain procedural and substantive
3  requirements." Ringgold-Lockhart v. Cnty. of Los Angeles,
4  761 F.3d at 1062 (quoting De Long v. Hennessey, 912 F.2d 1144,
5  1147 (9th Cir. 1990)).  "Courts should not enter pre-filing
6  orders with undue haste because such sanctions can tread on a
7  litigant's due process right of access to the courts." Molski v.
8  Evergreen Dynasty Corp., 500 F.3d 1047, 1057 (9th Cir. 2007)
9  (internal citation omitted).  Nonetheless, "[f]ederal courts can
10 'regulate the activities of abusive litigants by imposing
11 carefully tailored restrictions under . . . appropriate
12 circumstances.'" Ringgold-Lockhart, 761 F.3d at 1061 (citation
13 omitted).  "Pursuant to the All Writs Act, 28 U.S.C. § 1651(a),
14 'enjoining litigants with abusive and lengthy [litigation]
15 histories is one such . . . restriction' that courts may impose."
16 Id. (citation omitted); and see In re Melcher, 2014 WL 141235 at
17 *9 (the All Writs Act applies to bankruptcy courts as Article I
18 courts, by its terms).

19     Before issuing a pre-filing injunction "it is incumbent on
20 the court to make 'substantive findings as to the frivolous or
21 harassing nature of the litigant's actions.'" Id. at 1064.  This
22 requires review of both the number and content of the litigant's
23 claims – to determine whether frivolous – or the alternate
24 finding that the filings "'show a pattern of harassment.'" Id.
25 "Litigiousness alone is not enough," the claims also must be
26 meritless. Id. (quoting Molski, 500 F.3d at 1059 (citation
27 omitted)).  Moreover, use of pre-filing orders against pro se
28 litigants should be approached with particular caution.  See

- 15 -

1  <u>Pavilonis v. King</u>, 626 F.2d 1075, 1079 (1st Cir. 1980) (cited

2  with approval in <u>De Long</u>, 912 F.2d at 1147).

3       In <u>Ringgold-Lockhart</u>, the Ninth Circuit reviewed a district

4  court's order declaring Ringgold and her son Ringgold-Lockhart

5  vexatious litigants and imposing a pre-filing order.  761 F.3d at

6  1061.  The District Court based its order primarily on law and

7  motion practice in two cases.  <u>Id.</u>

8       The Circuit initially noted that "two cases is far fewer

9  than what other courts have found 'inordinate.'"  <u>Id.</u> at 1064-65

10  (citing <u>e.g.</u>, <u>Molski</u>, 500 F.3d at 1060; <u>Wood v. Santa Barbara</u>

11  <u>Chamber of Commerce, Inc.</u>, 705 F.2d 1515, 1523, 1526 (9th Cir.

12  1983); <u>In re Oliver</u>, 682 F.2d 443, 444 (3d Cir. 1982);

13  <u>In re Green</u>, 669 F.2d 779, 781, 215 U.S. App. D.C. 393 (D.C. Cir.

14  1981) (per curiam)).  Although it criticized the district court's

15  assessment of certain filings as baseless or frivolous, the

16  Circuit found "[m]ost troubling" that the list of vexatious

17  filings included the Ringgolds' response to the district court's

18  tentative order finding them vexatious, a response for which

19  Ringgold had a due process right to be heard.[18]  <u>Id.</u> at 1065.

20       Of particular importance here, the Circuit found error in

21  the district court's failure to consider alternative sanctions as

22  to Ringgold, such as costs or fees pursuant to Civil Rule 11.

23  <u>Id.</u>  In addition, the court held that the district court failed

24

25       [18]  The Ninth Circuit declined to decide whether "a
    litigant's motions practice in two cases could ever be so
26  vexatious as to justify imposing a pre-filing order against a
    person."  761 F.3d at 1065.  The Court opined, however, that
27  "[s]uch a situation would at least be extremely unusual, in light
    of the alternative remedies available to district judges to
28  control a litigant's behavior in individual cases."  <u>Id.</u>

to tailor the order narrowly to the problem before it.  Id. at 1066.  The court found the screening order "unworkable" because it provided for review of pleadings for merit -- reasoning that "courts cannot properly say whether a suit is 'meritorious' from pleadings alone."  Id.  And it found the breadth of the restrictions unjustified - risking extension to "factual scenarios entirely unrelated to the dispute" at issue.  Id. at 1067.

In Ringgold-Lockhart, the Ninth Circuit set out a very clear roadmap that emphasizes the careful review a court must conduct before restricting such important constitutional rights to court access, especially in cases involving pro se litigants.  Prior to issuance of a pre-filing order, the bankruptcy court was required to: "(1) give litigants notice and 'an opportunity to oppose the order before it [is] entered'; (2) compile an adequate record for appellate review, including 'a listing of all the cases and motions that led the [bankruptcy] court to conclude that a vexatious litigant order was needed'; (3) make substantive findings of frivolousness or harassment; and (4) tailor the order narrowly so as 'to closely fit the specific vice encountered.'"  Id. at 1062 (citing De Long, 912 F.2d at 1147-48).

Because Appellants here are deemed to have consented to issuance of some form of pre-filing order,[19] we necessarily focus

---

[19]  We note in passing that Appellants do not question notice and the opportunity for hearing or the adequacy of the record made available to the bankruptcy court.  On appeal, however, Mr. Sui argues that Trustee failed to support his Motion with anything more than conclusory statements that the bankruptcy court accepted without question.  As Mr. Sui is deemed to have waived this argument by failing to appear at the hearing on the
(continued...)

- 17 -

our review on whether the relief provided in the Pre-Filing Order comports with the standards articulated in Ringgold-Lockhart.[20]

**D.   Contrary to Ringgold-Lockhart, the Pre-Filing Order improperly requires a merits review by the bankruptcy court.**

On its face, the Pre-Filing Order fails to comport with Ringgold-Lockhart because it provides that Appellants cannot file initiating documents unless the bankruptcy court reviews them and finds them to be meritorious.  As the Ninth Circuit determined, such relief is "in fact unworkable."  761 F.3d at 1066.  The bankruptcy court cannot properly determine merit in all cases from an initiating document.  See id.  Our adversarial system requires both input from the opposing party and an opportunity for the plaintiff or movant to respond to any argument that the request for relief lacks merit.  Because the Pre-Filing Order requires merits review, it is not narrowly tailored and modification is appropriate.  See id.

**E.   The bankruptcy court's failure to make sufficient substantive findings as to the specific frivolous or harassing nature of Appellants' actions hampers our review of the problem before it, and thus, of the appropriate tailoring of the Pre-Filing Order.**

Here, the bankruptcy court found the Appellants to be vexatious primarily on the basis of their motion practice and related appeals in the bankruptcy case, but it also "[took] note

---

[19](...continued)
Motion, we consider this argument solely in the context of the adequacy of the findings regarding the "specific vice encountered," and, thus, whether the Pre-Filing Order was narrowly tailored to fit.

[20]   The Trustee requested judicial notice of 54 documents, which the bankruptcy court granted.  We base our review of the merits of the content of the bankruptcy court's order on these documents to the extent possible.  See id. at 1064.

of the tremendous amount of litigation not only in federal court
but also in state court." Hr'g Tr. (Nov. 12, 2013) at 18:21-23.
At the hearing, the bankruptcy court stated that it was "used to
doing this in bankruptcy petition filings" and "given the
egregious nature of the filings over and over, the same
arguments, they've lost on appeal at every level, we've got to
stop it . . . [or] there's not going to be any money left for
anyone." Id. at 14:12-23. Neither in its oral ruling, nor in
the FF&CL, however, did the bankruptcy court identify or discuss
what filings were made "over and over," or what the "same
arguments" consisted of.

The FF&CL[21] contains blanket findings that Appellants'
filings, defined to include all of the papers identified in the
Motion, were "frivolous," "harassing," and "abusive," and most
were "repetitive." FF&CL, Dkt. #17 at 10. Yet, neither the
Trustee nor the bankruptcy court articulated any basis to reach
such global conclusions. Our review of the record provides no
enlightenment.

The only argument we found that was repeated by Appellants
unsuccessfully in multiple documents filed in the bankruptcy
court, and again in this appeal, is the argument that Mr. Sui's
payment of allegedly all his creditors within the first few
months after he filed bankruptcy legally resulted in the
bankruptcy court's loss of jurisdiction, Trustee's lack of

---

[21]    The filed FF&CL reflects very few, and primarily
non-substantive, revisions to the initial form of FF&CL prepared
by Trustee's counsel and lodged with the bankruptcy court. The
FF&CL also contains internal inconsistencies, such as the factual
finding that Ms. Yang did not file any opposition versus the
legal conclusion that both Appellants opposed the Motion.

standing, and the cessation of the chapter 7 estate.  Let it suffice to say that Appellants' argument lacks legal merit.  And after oral argument before the Panel we acknowledge Mr. Sui's fixation on this point.  Nonetheless, we conclude that Mr. Sui's repetition of this one non-meritorious argument does not warrant the global restrictions contained in the Pre-Filing Order.  Nor does the balance of the record do so.  We acknowledge that the bankruptcy court may have knowledge or other support for its conclusions based on its experience with the case; however, our review is necessarily limited to the specific findings and record in this appeal.

While we question the adequacy of the findings to support the relief provided by the Pre-Filing Order, given the Appellants' waiver of issues below, we do not question that some form of relief is appropriate.  On remand, the bankruptcy court must take the following into account.

**F.    The Pre-Filing Order does not narrowly address the only problem evident on this record.**

The Appellants initiated little before the bankruptcy court. They did not file any adversary proceedings, and between them they filed few motions.  Instead, they exercised their due process rights and opposed motions, sought reconsideration of rulings, and appealed.  And they did so on far fewer occasions than is often the case with highly litigious pro se filers.

Based on our review the problem is not the numerosity of the Appellants' filings, it is Mr. Sui's fixation on his alleged payment of all creditors, his erroneous view of the status of this case as a result, and the threat of litigation against the

Trustee in other courts.  There may be other arguments that he
repeats, but we cannot identify them from the record before us.
Thus, from our vantage point, the Pre-Filing Order is not
narrowly tailored, as required by Ninth Circuit authority, to
address the "specific vice encountered."[22]

**G.    Leave required to file suit against Trustee and his
        professionals.**

The Barton doctrine, as applied in the Ninth Circuit,
"requires 'that a party must first obtain leave of the bankruptcy
court before it initiates an action in another forum against a
bankruptcy trustee or other officer appointed by the bankruptcy
court for acts done in the officer's official capacity.'"
Harris v. Wittman (In re Harris), 590 F.3d 730, 741 (9th Cir.
2009) (quoting In re Crown Vantage, Inc., 421 F.3d 963, 970 (9th
Cir. 2005)).  Without leave from the bankruptcy court, as the
court that appointed the trustee, "the other forum lack[s]
subject matter jurisdiction over the suit." Id. (citation
omitted).  Thus, in the Ninth Circuit, even without the Pre-
Filing Order, Appellants must obtain leave of the bankruptcy
court before filing lawsuit against the Trustee and his
professionals for acts done in their official capacities or be
subject to dismissal for lack of subject matter jurisdiction.

---

[22]  The bankruptcy court may want to consider barring
Mr. Sui (or Ms. Yang) from repeating the arguments they
unsuccessfully asserted at all levels of litigation and to
establish a coercive monetary sanction if they violate the order.
In so doing, Appellants' rights of access to the court remain
unfettered; they have already had a full and fair opportunity to
present these arguments.  It is plainly inappropriate, vexatious,
and harassing for arguments to be repeated without cessation.  On
remand, the bankruptcy court can consider modification in this
regard.

1  Thus, at least in part, the provision in the Pre-Filing Order is

2  duplicative of existing law.

3      Moreover, the leave requirement in the Pre-Filing Order, in

4  effect, turns violation of the <u>Barton</u> doctrine into contempt of

5  court and places the bankruptcy court in the position of

6  sanctioning the Appellants for actions they take before another

7  court.  We question the propriety of such relief on this record.

8      When the bankruptcy court entered the Pre-Filing Order here,

9  Appellants already had an action pending against the Trustee and

10 his professionals in district court.  During the pendency of this

11 appeal, that action was dismissed by the district court for lack

12 of subject matter jurisdiction based on the <u>Barton</u> doctrine.  <u>See</u>

13 <u>Yan Sui et al. v. Marshack et al.</u>, 2014 U.S. Dist. LEXIS 100590

14 at *10, *18 (C.D. Cal. June 20, 2014), rep. and recom. accepted

15 <u>Yan Sui v. Marshack</u>, 2014 U.S. Dist. LEXIS 100520 (C.D. Cal.

16 July 23, 2014).  The magistrate judge's recommendations, adopted

17 by the district court, included dismissal of Appellants' claims

18 against Trustee and his professionals in their entirety without

19 prejudice to Appellants' ability to refile the claims, "provided

20 [Appellants] first obtain written leave to do so from the

21 Bankruptcy Court. . . ."  Arguably, if Appellants fail to seek

22 leave from the bankruptcy court before filing another such action

23 in the district court, they will be in contempt of the district

24 court's dismissal order.

25     Of course, any action filed in the bankruptcy court would

26 not require such advance approval under the <u>Barton</u> doctrine, but

27 the effect of the Pre-Filing Order is to require that the

28 bankruptcy court potentially conduct two reviews of the same

pleadings.  The bankruptcy court should consider alternative and less judicially inefficient means to address the possibility that Appellants might, in the future, file frivolous or harassing claims against the Trustee and his professionals.

**CONCLUSION**

For the foregoing reasons, we VACATE the Pre-Filing Order and REMAND for further proceedings consistent with this Memorandum.

Exh. List 12

Re: Judgment collection; engine oil spill; expired license plate etc.
Yahoo Mail/Goodrich

**Yan Sui**

**dancalm@sbcglobal.net**

**From:**dancalm@sbcglobal.net

**To:**dgoodrich@marshackhays.com

Sun, Jun 30, 2013 at 9:35 PM

Mr. Goodrich;

You need to identify the Chapter 7 creditor not paid. I have seen trustee's
unfounded contention, which will be defeated at the Courts. Trustee has no
probable cause to keep the Chapter 7 open. The bankrupt estate should be closed.

Trustee's summary adjudication over an invalid complaint is under appeal to the
Ninth Circuit.

All your misleading and false statements will be used against you and the trustee in
the future legal proceedings.

Rgds.

Yan Sui

**From:** David Goodrich <DGoodrich@marshackhays.com>
**To:** Yan Sui <dancalm@sbcglobal.net>
**Cc:** "ericgarcia66@yahoo.com" <ericgarcia66@yahoo.com>; James Harkins
<jharkins@linkline.com>; "lylasmom@sbcglobal.net"
<lylasmom@sbcglobal.net>; Michelle Matteau <sailbad1111@sbcglobal.net>;
Richard Marshack <RMarshack@MarshackHays.com>; Tracy Royan
<tracyroyan@gmail.com>; Robert A. Zermeno <rzermeno@bonnebridges.com>
**Sent:** Sunday, June 30, 2013 1:19 PM
**Subject:** Re: Judgment collection; engineoilspill; expired license plate etc.

Dear Mr. Sui:


While it is true you have received a discharge, the trustee still has a duty to liquidate your assets and pay your creditors in full - the two are not tied together and the entry of your discharge does not relieve the trustee of his obligations.  As a result, we are a long way from a completion of your bankruptcy case.


As always, we remain interested in discussing a resolution of your case with you. To that end, however, any resolution will require delivery of funds by you to the trustee in an amount sufficient to pay all creditors, all professionals and the trustee in full.  Without an agreement, your assets will be sold (including assets recovered by the trustee) to pay your creditors, professionals and the trustee.

Thanks,

Dave


On Jun 30, 2013, at 8:57 AM, "Yan Sui" <dancalm@sbcglobal.net> wrote:

Mr. Goodrich;

Now the Chapter 7 is at its end - the discharge of debtor. Have you or Mr. Marshack filed motion for fees?

Don't you have a time limit?

I am  ready for your motions. Just send me a copy and I will respond.

Thanks.

Yan Sui

Exh. List 13

**From:** Yan Sui [mailto:dancalm@sbcglobal.net]
**Sent:** Thursday, December 04, 2014 6:35 PM
**To:** Chad Haes; Robert A. Zermeno; Richard Marshack; Ed Hays;
ustpregion16.sa.ecf@usdof.gov; Park Richard (USACAC);
kyandell@allenmatkins.com; dgoodrich@sulmeyerlaw.com
**Cc:** KEN.LIANG@KENZL.COM
**Subject:** Re: Sui – Good Faith Meet&Confer Inquiry Before Lawsuit Be Filed

Mr. Haes;

These claims are legally impermissible. Otherwise, why are you afraid of an
appeal?

We have prepared an emergency application with U.S. Supreme Court to stay
order pending appeal under 14-5738.

The same motion will be filed at BAP.

I am sending you the email version of the one to Supreme Court. A paper copy will
be mailed tomorrow.

We will not attached exhibits under Yang's Request for Judicial Notice because
you have those records.

Rgds.

Yan Sui & Pei-yu Yang

---

**From:** Chad Haes <chaes@marshackhays.com>
**To:** Yan Sui <dancalm@sbcglobal.net>; Robert A. Zermeno
<rzermeno@bonnebridges.com>; Richard Marshack
<RMarshack@MarshackHays.com>; Ed Hays <EHays@MarshackHays.com>;
"ustpregion16.sa.ecf@usdof.gov" <ustpregion16.sa.ecf@usdof.gov>; Park Richard
(USACAC) <Richard.Park@usdoj.gov>; "kyandell@allenmatkins.com"
<kyandell@allenmatkins.com>; "dgoodrich@sulmeyerlaw.com"
<dgoodrich@sulmeyerlaw.com>
**Cc:** "KEN.LIANG@KENZL.COM" <KEN.LIANG@KENZL.COM>
**Sent:** Thursday, December 4, 2014 2:42 PM
**Subject:** Sui - GoodFaithMeet&ConferInquiryBeforeLawsuitBeFiled

Mr. Sui and Ms. Yang:

Please note, you will need to seek leave from the bankruptcy court before filing
suit against the Trustee or any of his professionals in any other forum. Otherwise,
you will be subject to sanctions, which we will vigorously pursue. That said, the
Trustee's responses to your questions are as follows:

1. The current allowed administrative and unsecured claims associated with
   Mr. Sui's Chapter 7 bankruptcy estate ("Estate") is approximately
   $381,550.65, which consists of:

-    $293,308.93 - Marshack Hays LLP – Allowed administrative claim
pursuant to the Court's order granting application for compensation entered
8/20/14. (The claim amount has and will continue to increase based on work
performed and costs incurred);

-    $51,720.38- McKenna Long Aldridge LLP - Allowed administrative claim
pursuant to the Court's order granting application for compensation entered
8/20/14. (The claim amount has and will continue to increase based on work
performed and costs incurred);

-    $205.80 - Quantum3 Group LLC as agent for Capio Partners LLC pursuant
to proof of claim number 1-1;

-    $14,650.20 - Goodrich Law Corporation pursuant to administrative proof of
claim number 2-1;

-    $17,305.00 - 2176 Pacific Homeowners Association pursuant to proof of
claim number 5-1;

-    $4,360.34 - Scottsdale Insurance Company pursuant to proof of claim
number 6-1.

The above-referenced amount does not include the administrative claim of the
Chapter 7 trustee, which will be calculated at the conclusion of the case pursuant to
the formula set forth in 11 U.S.C. § 326. It also does not include the approximate
$118,093.23 secured by your residence which we anticipate will be paid from a
sale of the property. Also, as stated above, the administrative claims of the
Trustee's professionals have and will continue to increase based on work
performed and costs incurred in responding to all of your filings and appeals. As
such, the amounts owed to Marshack Hays LLP and McKenna Long Aldridge LLP

will actually be more than what is listed above. Pursuant to 11 U.S.C. § 726, property of the estate is distributed to administrative, unsecured creditors, and the other specified parties before any funds are returned to the debtor as surplus.

2. The Estate consists of the claims listed above in paragraph 1;
3. The creditors of the Estate are the claimants listed above in paragraph 1;
4. No, $6,100 is not enough to satisfy all allowed administrative and unsecured claims against the Estate;
5. In order to avoid the residence being sold, the Trustee must recover approximately $400,000 to pay all claims and projected claims in full; and
6. The amount recovered by the Trustee will be used to satisfy the claims against the Estate.

We strongly urge you to refrain from initiating additional needless litigation. Your baseless assertion that there are no allowed claims that must be paid by the Estate has been argued and defeated at every level. The Ninth Circuit BAP panel of judges has even taken the time to explain to Mr. Sui at oral argument on two separate occasions that legitimate creditors exist and that administrative fees owed to the Trustee and his professionals continue to increase exponentially with more litigation. Commencing additional litigation will serve no purpose other than to force the Trustee and his professionals to again needlessly expend legal fees that we fully intend to establish and collect. Judgments against Ms. Yang can be satisfied from her interest in the property. In fact, the BAP advised counsel for the Trustee at the last oral argument to sell your residence as quickly as possible, which is exactly what the Trustee intends to do. Sadly, your litigious behavior has unnecessarily increased administrative claims. We urge you to cooperate in the sale of the residence while there are still funds to pay to Ms. Yang.

Please "reply all" to advise if you would like to further discuss a settlement which will result in payment of all allowed administrative and unsecured claims. Unless you have significant cash resources, payment of these claims likely will have to come from the proceeds of a sale of your residence. If this is the case, at least there will still be funds at this time to pay to Ms. Yang. Continued litigation may eliminate the possibility that she can receive some portion of the sale proceeds. Although you have previously declined working with the Trustee towards an efficient resolution of your case and instead objected to and appealed every order

entered, hopefully you will now reconsider this strategy so that we can be in a position to pay something to Ms. Yang.

Chad

**From:** Yan Sui [mailto:dancalm@sbcglobal.net]
**Sent:** Wednesday, December 03, 2014 3:35 PM
**To:** Robert A. Zermeno; Richard Marshack; Chad Haes; Ed Hays; ustpregion16.sa.ecf@usdof.gov; Park Richard (USACAC); kyandell@allenmatkins.com; dgoodrich@sulmeyerlaw.com
**Cc:** KEN.LIANG@KENZL.COM
**Subject:** GoodFaithMeet&ConferInquiryBeforeLawsuitBeFiled

Good afternoon To:

Counsel for 2176 Pacific HOA; Marshack Hays Individuals; Nancy Goldberg of Office of U.S. Trustee Santa Ana; Richard Park of Office of U.S. Trustees Los Angeles; Wells Fargo Counsel; David M. Goodrich - former counsel for Chapter 7 trustee:

Today, we have received "Motion for Entry of Order Authorizing Issuance of Writ of Assistance;" "Application for Order Setting Hearing on Shorten Notice [LBR9075-1(b)]" in relationship of selling our house under 8:13-ap-01246-CB to benefit the "estate."

We believe that we have the right to know:

1) how much is the Chapter 7 debt after the discharge on 3/29/2013;

2) what is the "estate" consisted of?

3) who is the Chapter 7 creditor?

4) is $6,100 estate in the trust not enough to pay the Chapter 7 debt?

5) how much Sui/Yang need to pay to avoid the house to be sold?

6) if that is the case, what would Sui/Yang be paying for?

Your application is an empty-shell and skeletal one without any Chapter 7 debt and creditor. You don't even establish how much you deserve to be paid in the context of Chapter 7.

We advise you desist what you are attempting or new lawsuit will be filed against the releted entities who caused Sui to file Chapter 7 etc.

Rgds.

Yan Sui & Pei-yu Yang

Exh. List 14

Fw: StipulationToStayEvictionB4FinalDeterminationOfYourClaim/8:13-ap-01246-CB

**Yan Sui**

**From:** dancalm@sbcglobal.net

**To:** usms.wanted@usdoj.gov
**Cc:** stephen11688@aol.com

Fri, Dec 26, 2014 at 8:04 AM

Dear U.S. Marshals Services;

Please keep this email in file. This summarizes trustee's unlawful acts and we don't want you to be involved.

Rds

Yan Sui & Pei-yu Yang

----- Forwarded Message -----
**From:** Yan Sui <dancalm@sbcglobal.net>
**To:** Chad Haes <chaes@marshackhays.com>; Richard Marshack
<rmarshack@marshackhays.com>; Ed Hays <ehays@marshackhays.com>; Robert
A. Zermeno <rzermeno@bonnebridges.com>; James Harkins
<jharkins@linkline.com>; Jess Bressi <jbressi@mckennalong.com>;
"USTP.Region16@usdoj.gov" <ustp.region16@usdoj.gov>;
"usms.wanted@usdoj.gov" <usms.wanted@usdoj.gov>
**Cc:** Ken Liang <ken.liang@kenzl.com>
**Sent:** Monday, December 22, 2014 10:02 AM
**Subject:** StipulationToStayEvictionB4FinalDeterminationOfYourClaim/8:13-ap-01246-CB

To: Counsel of Chapter 7 Trustee-Richard A. Marshack; Defense attorneys of 2176
Pacific HOA;Defense attorney of Marshack in District Court case of 8:13-cv-01607-JAK; Nancy Goldberg, U.S. Trustees Office in Santa Ana; U.S. Marshals'
Services for Central District of California

We are offering to stipulate with trustee to stay the proposed eviction before a final
determination of your "claims."

At this moment, there is no final determination on even if you are entitled to any claim as you stated. At this moment, any claims are meaningless in lieu of the discharge on 3/29/2013 after payment of all Chapter 7 debts under 8:11-bk-20448-CB.

Therefore, requesting us to turn over the property for you to sell is baseless because you don't even know: 1) the amount of your final amount of admin claim; 2)when you will file for your final admin claim; 3)how much you will finally claim from the sale of the house; 4) how much would the house sell for; 5) what is the bankrupt estate for the sale to benefit from.

Based on your pleadings at the bankruptcy court, your tactics are:1) filing 8:13-ap-01246-CB after the discharge with no Chapter 7 claim; 2) apply to bankruptcy court to employ a real estate agent to list the house for sale based on the Wells Fargo's mortgage loan balance; 3) after you are sued at district court under 8:13-cv-01607-JAK, abandon Wells Fargo's mortgage loan balance; 4) filling the lack of Chapter 7 claim vacancy with your uncertain, unknown, future but unlawful admin claims; 5) keep filing for your admin claims under "interim" label so that we can never appeal; 6) continue to request that the property be turned over because of your admin claims as stated above.

Here is the frivolity of your acts:

1) claiming your admin claims as bankrupt estate; 2) administer such admin claims as "bankrupt estate" to make addition admin claims; 3) add the newly made admin claims atop the old admin claims; 4) repeat this cycle without forseeable end; 5)

never file for your final admin claims; 6) evict us out from the house without a forseeable date that we can claim the house back.

There is no law to permit you to act this way.

You shall understand that the 2176 Pacific HOA cause Sui to file for Chapter 7 and there is state court action under 30-2012-00592626 lingering and they will be eventually liable for all the damages. Responsible parties will be sued under either existing district court or a new lawsuit.

Rgds

Yan Sui & Pei-yu Yang

Exh. List 15

StipulationToStayEvictionB4FinalDeterminationOfYourClaim/8:13-ap-01246-CB

**Yan Sui**

**dancalm@sbcglobal.net**

**From:**dancalm@sbcglobal.net

**To:**chaes@marshackhays.com,rmarshack@marshackhays.com,ehays@marshackhays.com,rzermeno@bonnebridges.com,jharkins@linkline.comand 3 more...

**Cc:**ken.liang@kenzl.com

Mon, Dec 22, 2014 at 10:02 AM

To: Counsel of Chapter 7 Trustee-Richard A. Marshack; Defense attorneys of 2176 Pacific HOA;Defense attorney of Marshack in District Court case of 8:13-cv-01607-JAK; Nancy Goldberg, U.S. Trustees Office in Santa Ana; U.S. Marshals' Services for Central District of California


We are offering to stipulate with trustee to stay the proposed eviction before a final determination of your "claims."

At this moment, there is no final determination on even if you are entitled to any claim as you stated. At this moment, any claims are meaningless in lieu of the discharge on 3/29/2013 after payment of all Chapter 7 debts under 8:11-bk-20448-CB.

Therefore, requesting us to turn over the property for you to sell is baseless because you don't even know: 1) the amount of your final amount of admin claim; 2)when you will file for your final admin claim; 3)how much you will finally claim from the sale of the house; 4) how much would the house sell for; 5) what is the bankrupt estate for the sale to benefit from.


Based on your pleadings at the bankruptcy court, your tactics are:1) filing 8:13-ap-01246-CB after the discharge with no Chapter 7 claim; 2) apply to bankruptcy court to employ a real estate agent to list the house for sale based on the Wells

Fargo's mortgage loan balance; 3) after you are sued at district court under 8:13-cv-01607-JAK, abandon Wells Fargo's mortgage loan balance; 4) filling the lack of Chapter 7 claim vacancy with your uncertain, unknown, future but unlawful admin claims; 5) keep filing for your admin claims under "interim" label so that we can never appeal; 6) continue to request that the property be turned over because of your admin claims as stated above.

Here is the frivolity of your acts:

1) claiming your admin claims as bankrupt estate; 2) administer such admin claims as "bankrupt estate" to make addition admin claims; 3) add the newly made admin claims atop the old admin claims; 4) repeat this cycle without forseeable end; 5)

never file for your final admin claims; 6) evict us out from the house without a forseeable date that we can claim the house back.

There is no law to permit you to act this way.

You shall understand that the 2176 Pacific HOA cause Sui to file for Chapter 7 and there is state court action under 30-2012-00592626 lingering and they will be eventually liable for all the damages.Responsible parties will be sued under either existing district court or a new lawsuit.

Rgds

Yan Sui & Pei-yu Yang

Exh. List 16

1  Pei-yu Yang
2  2176 Pacific Ave. #C
   Costa Mesa CA92627
3  Tel: 949-645-5292
4  Email:dancalm@sbcglobal.net
   Defendant in pro se



FILED

SEP 23 2011

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY_____ Deputy Clerk

5

6

7

8              UNITED STATES BANKRUPTCY COURT
9               CENTRAL DISTRICT OF CALIFORNIA
                      SOUTHERN DIVISION
10

11 In re                          | **Case No. 8:11-bk-20448-RK**
                                   | **Chapter 7**
12 YAN SUI                         | **Assigned to Hon. Judge Robert N. Kwan**
13           Debtor,

14 Richard A. Marshack, Chapter 7 Trustee,

15           Plaintiff,            | **DEFENDANT PEI-YU YANG'S ANSWER**
16 vs.                             | **TO THE COMPLAINT**

17 Pei-yu Yang, an individual,     | **Complaint filed: Aug. 23, 2011**
18
                                   | **(filed concurrently with Motion to Dismiss**
19           Defendant,            | **the Adverse Proceeding)**
20

21    Pei-yu Yang, Defendant (hereafter called – "Yang") respectively answers the complaint
22 by Richard A. Marshack, the Chapter 7 Trustee (hereafter called - "Trustee" or "Plaintiff")
23 for the bankruptcy estate ( "Estate") of Yan Sui (hereafter called – "Sui") as follows:

24              **DENIAL OF THE GENERAL ALLEGATIONS**
25    1.  Yan Sui and Pei-yu Yang were not legally married.
26    2.  "Husband and Wife as Joint Tenants" is not a proof or admission of a legal
27        marriage according to California Family Code.
28    3.  On June 10, 2009, Yan Sui quit his interest in the subject property for the exchange

--------------------------------------------------------1--------------------------------------------------------

DEFENDANT , PEI-YU YANG'S ANSWER TO THE COMPLAINT

1    of Pei-yu Yang's interest in her property interest in China. Such quit of interest is for

2    paying back the debt owed to Yang family.

3    4.  "Pei-yu Yang, a married woman" is a mere reflection of the description in the deed.

4        It is not a proof or admission of a legal marriage.

5

6    ### DENIAL OF THE ALLEGATIONS IN FIRST CLAIM FOR RELIEF

7    5.  Defendant denies each and every allegation contained in paragraphs 16 through 24

8        for

9    6.   being factually groundless, legally untenable and in violation of California

10       Supreme Case law of *Mejia v. Reed* (2003) 31 Cal. 4th 657.

11   7.  Plaintiff's action based on 11 U.S Code 548 is time barred for being over two years

12       from the date of the quit of interest on 6/10/2009 to the filing of the petition on

13       7/27/2011. Plaintiff's action under the U.S code to enforce an unrelated state court

14       judgment is improper according to the federal case law of *In the Matter of: AFI*

15       *Holding, Inc. Debtor Carolyn A. Dye, Former Chapter 7 Trustee v. J. Gregory Brown;*

16       *Cecilia A. Brown.*

17   ### DENIAL OF THE ALLEGATIONS IN SECOND CLAIM FOR RELIEF

18   8.  Defendant denies each and every allegation contained in paragraphs 25 through 30

19       for being factually groundless, legally untenable and in violation of California

20       Supreme Case law of *Mejia v. Reed* (2003) 31 Cal. 4th 657.

21   9.  Plaintiff's action based on 11 U.S Code 548 is time barred for being over two years

22       from the date of the quit of interest on 6/10/2009 to the filing of the petition on

23       7/27/2011. Plaintiff's action under the U.S code to enforce an unrelated state court

24       judgment is improper according to the federal case law of *In re: Douglas Ray – Battle*

25       *Ground Plaza, LLC v. Douglas Ray* No. 09-60005BAP No. WW-08-1104-KaJuPa (9th

26       Circuit 2010) .As of 9/10/2011, Capital One and American Express have been fully

27       paid. Kenny Kean Tan is not a creditor according to the Federal Fair Debt Collection

28       Practices Act § 803 (4) and shall be removed from the creditor's list.

---

2

### DEFENDANT , PEI-YU YANG'S ANSWER TO THE COMPLAINT

Defendant accepted the transfer in a good faith to avoid a costly court battle over an
unrealistic sale of the subject property, which would disrupt children's schooling.

### PLAINTIFF'S THIRD UNJUST ENRICHMENT CLAIM FAILS FOR NOT BEING AN INDEPENDENT CAUSE OF ACTION

10. Defendant denies each and every allegation contained in paragraphs 31 through 35
    for being factually groundless, legally untenable and in violation of California
    Supreme Case law of *Mejia v. Reed* (2003) 31 Cal. 4th 657.

11. The exchange of Sui's US property interest to Yang for Yang's China property
    interest is the performance of the parenting contract so that the children will have a
    stable housing to finish their schooling. It is a mutual performance on the con-tract.

12. Unjust enrichment is not a cause of action according to the California case law of
    *Hill v. Roll Internat. Corp.* (2011) 195 Cal. App.4th 1295. Plaintiff's unjust enrichment
    claim fails for not being an independent cause of action, just a restitution claim.

### PLAINTIFF'S FOURTH CLAIM FOR DECLARATORY RELIEF FAILS

13. With the two credit cards fully paid and Tan's judgment falling out of the 11 U.S
    code scope, there is no controversy existing between Sui and two creditor cards, while
    Tan's judgment can be enforced through the state court system. Tan's judgment is not
    "arising in," "arising under" or "related to" this bankruptcy proceeding according to
    the case law of *In re: Douglas Ray – Battle Ground Plaza, LLC v. Douglas Ray*, No.
    09-60005 BAP No. WW-08-1104-KaJuPa (9th Cir 2010).

    Tan's judgment has no "close nexus" to the bankruptcy proceedings required by
    the *Ray* case law. Tan does not fit the "creditor" definition by Fed. Trade Commission
    Staff Commentary on the Fair Debt Collection Practices Act Section 803(4). Tan was
    mistakenly included in the creditor's list by Sui. Sui has requested the removal.

    As a result, Plaintiff's fourth claim for declaratory relief fails.

It is a basic and plain legal principle that the court should not substitute and replace

---

3

DEFENDANT , PEI-YU YANG'S ANSWER TO THE COMPLAINT

the roles of the contracting parties to a contract and impose the court's will onto the con-

tracting parties. It is especially true when a marriage dissolution agreement is involved

according to the California Supreme Court case law of *Mejia v. Reed* (2003) 31 Cal. 4th

657.

Although Sui and Yang were not legally married, the marital dissolution, which was

decreed on Sept. 14, 2011 served to separate the respective rights and obligations of both

parties in the future. It also affirmed some of the agreements between Sui and Yang.

## PLAINTIFF'S FIFTH CLAIM FOR DECLARATORY RELIEF FAILS

14.   Plaintiff fails to present any evidence that Yan Sui & Pei-yu Yang were legally

married, when Sui quit his interest on 6/10/2009. Hence, his community property

assertion fails.

Plaintiff fails to identify the form, the amount of the consideration entitled to Sui

under the circumstances. Plaintiff fails to prove that Sui did not receive consideration

from Yang.  Plaintiff fails to indicate how much should Sui receive from Yang to be "

reasonable." Plaintiff fails to state that Sui would have been solvent on 7/27/2011 even if

Sui would otherwise receive some money from Yang on 6/10/2009.

Two years after Sui and Yang have filed for divorce and some dissolution agreements

reached by multiple parties, the Plaintiff jumps into the picture and made his claim.

It is a basic and plain legal principle that the court should not substitute and replace the

roles of the contracting parties to a contract and impose the court's will onto the contracting

parties. It is especially true when a marriage dissolution agreement is involved according to

the California Supreme Court case law of *Mejia v. Reed* (2003) 31 Cal. 4th 657.

## THE LAWSUIT IS NOT AUTHORIZED AND PREMATURE

15. Goodrich Law Firm is not authorized by this Court to represent the trustee in bringing

the instant lawsuit. Sui has submitted the opposition to the trustee's application to employ

Goodrich Law firm due to its pecuniary relationship with the trustee. While the application

4

DEFENDANT , PEI-YU YANG'S ANSWER TO THE COMPLAINT

1  is still pending, Goodrich Law Corp. has not standing to file this lawsuit. Therefore, the

2  lawsuit is not authorized.

3      Further, both the trustee and Goodrich Law Corp. knew that two credit cards have been

4  fully paid. They refused to extend the time for defendant to answer the complaint until the

5  Court approves the application for the employment of Goodrich Law Corp.

6      Furthermore, the trustee could not preclude a possible settlement between Sui and Kenny

7  Kean Tan in the upcoming 341 meeting.

8      Trustee's action violates 11 U.S. Code § 546. The action was motivated by the possible

9  attorney fees for Goodrich so the trustee can benefit from a secure rent income. Based on

10  the current financial condition of the trustee, this lawsuit is of substantial benefit to him.

11      Therefore, the lawsuit is self-interest driven and is unauthorized and premature. It is

12  further unwarranted.

13

14                          **JURY TRIAL DEMANDED**

15      Defendant would demand a jury trial and move the case to the United States District

16  Court after the pre-trial matters settled in pursuant to Local Rule 9015-2(b).

17

18                              **PRAYER**

19      WHEREFORE, the Defendant respectfully prays that the Court dismiss the

20      unauthorized and premature lawsuit.

21  16. Award Defendant the costs of the suit incurred, including attorney fees as provided by

22      applicable case law, and California Code of Civil Procedure 1033.5 and;

23  17. For such other and further relief as the Court deems just and proper.

24  DATED: Sept. 23, 2011

25

26

27                                          _Pei-yu Yang_

28                                          Pei-yu Yang, Defendant in pro se

---

5

DEFENDANT , PEI-YU YANG'S ANSWER TO THE COMPLAINT

## PROOF OF SERVICE BY U.S MAIL

I am a resident in the County of Orange, State of California. I am over the age of 18 and not a party of the action. My residence address is: 2176 Pacific Ave. Costa Mesa CA92627.

The following document described as "DEFENDANT PEI-YU YANG'S ANSWER TO THE COMPLAINT" will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

SERVED BY U.S MAIL OR OVERNIGHT MAIL
On Aug. 31, 2011, I served the following person (s) and/or entities at the last known addresses in the bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/pr with an overnight mail service addressed as follows. *Listing the judge here constatutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.*

<u>Trustee</u> + <u>David Goodrich</u>          <u>Judge's Copy</u>
Richard  A. Marshack              Hon. Robert Kwan
870 Roosevelt                    United States Bankruptcy Court-
Irvine                           Central District of California
CA92620                          411 W. 4th Street, Suite 5165
                                 Santa Ana CA92701

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 09/23/2011, at Costa Mesa, California 92627

Annie Sui

_____

DEFENDANT , PEI-YU YANG'S ANSWER TO THE COMPLAINT